Kenneth Green, SBN 24036677
kgreen@snowspencelaw.com
Blake Hamm, SBN 24069869
blakehamm@snowspencelaw.com
Carolyn Carollo, SBN 24083437
carolyncarollo@snowspencelaw.com
Snow Spence Green LLP
2929 Allen Parkway, Suite 2800
Houston, TX  77019
Telephone: (713) 335-4800
Facsimile:  (713) 335-4848

PROPOSED COUNSEL FOR OFFICIAL COMMITTEE
OF UNSECURED CREDITORS

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **CASE NO. 15-70098-rbk** |
| **Arabella Petroleum Company, LLC,** | § | |
| | § | **CHAPTER 11** |
| **Debtor.** | § | |

## NOTICE OF RULE 2004 EXAMINATION OF THE DEBTOR

**TO:** **Arabella Petroleum Company, LLC, Debtor, by and through its attorney, Mr. Bernard R. Given II, Loeb & Loeb LLP, 10100 Santa Monica Blvd., Ste. 2200, Los Angeles, CA  90067**

PLEASE TAKE NOTICE that, pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure, Rule 2004 of the Local Rules for the United States Bankruptcy Court of the Western District of Texas, and the Bankruptcy Court's ORDER GRANTING MOTION, IN PART, attached hereto, the undersigned counsel for the Official Committee of Unsecured Creditors in the above-referenced bankruptcy case (the "Committee") intends to examine the designated representative(s) of Debtor-in-Possession Arabella Petroleum Company, LLC (the "Debtor") on the matters set forth in **Exhibit A**, attached hereto, and matters related to the documents requested in **Exhibit B**, attached hereto.  The designated representative of Debtor shall be the individual or individuals with the most knowledge as to matters described below and the

1

documents requested.

The examination will occur on **August 14, 2015 at 9:00 a.m. (CST)**.  The examination will take place at the law offices of **Kelly Hart & Hallman LLP, 201 Main St., Fort Worth, TX  76102** and will continue from day to day until completed or adjourned by mutual consent of the parties.  The examination will be taken before a court reporter authorized by law to administer oaths and may be videotaped.

Examination Topics:  The Committee intends to examine Debtor on the topics set forth in Rule 2004(b) of the Federal Rules of Bankruptcy Procedure and the topics set forth in Exhibit A

Document Production:  The Committee requests that Debtor produce the original or a copy of all Documents listed and defined on Exhibit B at the law offices of **Snow Spence Green LLP, 2929 Allen Parkway, Ste. 2800, Houston, TX  77019** on or prior to **9:00 a.m. (CST) on August 7, 2015**.

In addition to the examination described above, the Committee anticipates a targeted examination regarding the documents produced by the Debtor.

DATE:  8/3/2015                              Respectfully submitted,

                                             By:   /s/ Kenneth Green
                                             Kenneth Green
                                             State Bar No. 24036677
                                             kgreen@snowspencelaw.com
                                             Blake Hamm
                                             State Bar No. 24069869
                                             blakehamm@snowspencelaw.com
                                             Carolyn Carollo
                                             State Bar No. 24083437
                                             carolyncarollo@snowspencelaw.com
                                             Snow Spence Green LLP
                                             2929 Allen Parkway, Suite 2800
                                             Houston, TX  77019
                                             Telephone: (713) 335-4800
                                             Facsimile:  (713) 335-4848

                                             **PROPOSED COUNSEL FOR OFFICIAL
                                             COMMITTEE OF UNSECURED
                                             CREDITORS**


<u>**CERTIFICATE OF SERVICE**</u>

     I certify that a true and correct copy of the above and foregoing was served upon all parties via the Court's electronic case filing system (ECF) on the 3rd day of August 2015.


                                             /s/ Kenneth Green
                                             Kenneth Green



The relief described hereinbelow is SO ORDERED.

Signed July 29, 2015.

_____
Ronald B. King
Chief United States Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ARABELLA PETROLEUM COMPANY, LLC, | § | CASE NO. 15-70098-RBK |
| | § | |
| | § | |
| DEBTOR | § | CHAPTER 11 |

**ORDER GRANTING MOTION, IN PART**

On July 29, 2015, came on to be heard the "Emergency Motion to Shorten Rule 2004 Examination Deadlines and Order Rule 2004 Examinations" filed by the ***Official Committee of Unsecured Creditors*** (Court document #57), and it appears to the Court that the Motion should be granted, in part.

It is, therefore, **ORDERED, ADJUDGED, AND DECREED** that the 2004 exam notice is shortened such that the examinations may be scheduled during the week of August 10, 2015, at a date, time, and place agreeable to the parties.

# # #

## EXHIBIT A

The Examination Topics for Debtor Arabella Petroleum Company, LLC shall include:

- Debtor's property, liabilities, and financial condition from July 10, 2011 through the present;

- Debtor's operation of its business;

- Transfers of Debtor's interests in mineral properties since July 10, 2011 and consideration Debtor received in return;

- Contracts to which Debtor is or was a party since July 10, 2011 including, but not limited to, (i) joint operating agreements, (ii) assignments, (iii) farmout agreements, (iv) exploration and development agreements, (v) participation agreements, and (vi) lease acquisition agreements;

- Accounts receivable owed to Debtor including, but not limited to, joint interest billings owed for Debtor's operation of oil and gas leases;

- The desirability of Debtor's continuance as a going concern;

- The source of any money or property acquired or to be acquired by Debtor for purposes of consummating a plan and the consideration given or offered therefor;

- Ownership, management, and organization of Debtor;

- Compensation of Debtor's officers and management; and

- Other matters relevant to this case or the formulation of a plan.

# EXHIBIT B

Requests for Production of Documents to Debtor Arabella Petroleum Company, LLC:

## INSTRUCTIONS AND DEFINITIONS

1.      THE REQUESTING PARTY HEREBY OFFERS TO PAY THE PRODUCING PARTY ITS REASONABLE COSTS OF COMPLYING WITH THESE REQUESTS FOR PRODUCTION.  UPON RECEIPT OF THESE REQUESTS, PLEASE CONTACT THE ATTORNEY ISSUING THIS SUBPOENA TO INFORM THEM OF YOUR REASONABLE COSTS SO THAT THE REQUESTING PARTY MAY MAKE ACCOMMODATIONS TO PAY YOUR REASONABLE COSTS OF COMPLYING WITH THE SUBPOENA BEFORE YOU COMPLY WITH THE SUBPOENA.

2.      The items specified in the Requests for Production (a) shall be produced as they are kept in the usual course of business, or (b) shall be organized and labeled to correspond to the categories specified in the requests.  If a Document exists only in electronic or magnetic form, please indicate that in Your response and produce the Document in PDF form on a CD, DVD, or flash drive.

3.      For each Document or other requested information that You assert is privileged (privilege as used herein shall include work product) or is not discoverable, please identify that Document or other requested information.  State the specific grounds for the claim of privilege or other grounds for exclusion.  Also, for each item or Document You claim is not discoverable, state the date of the Document, the name, job title, and address of the Person who prepared it; the name, address, and job title of the Person to whom it was addressed, circulated, or who saw it; the name, job title, and address of the Person now in possession of the Document; a description of the subject matter of the Document; the present location and the custodian for the Document. Furthermore, each item, if any, that is withheld from production pursuant to a claim of privilege should be segregated and maintained for possible in-camera submission to the Court.

4.      For any requested information about a Document that no longer exists or that cannot be located, identify the Document, state how and when it passed out of existence, or when it could no longer be located, and the reasons for the disappearance.  Also, identify each Person having knowledge about the disposition or loss of the Document, and identify any other Document evidencing the lost Document's existence or any facts about the lost Document.

5.      Each page of each item produced in response to the Requests for Production may be copied and numbered during inspection with a consecutive numbering machine.  The items produced in response to this request may be copied by microfilm, photography, xerography, or comparable process, or some combination thereof.

6.      A question that seeks information contained in or information about or identification of any Documents may be answered by providing a copy of such Document for inspection and copying or by furnishing a copy of such Document without a Request for Production.

1

7.      You must produce the designated Documents that are under Your care, custody, or control, including Your constructive possession where You have a right superior to the Requesting Party's rights, if any, to compel production of said Documents from a third party.

8.      If You are relying upon any attorney/client or attorney/work product privilege, then as to each Communication or Document for which such a privilege is claimed, state the following:

> a.      the exact privilege relied upon;
>
> b.      the name of the attorney and the name of the client;
>
> c.      the date the attorney/client relationship was established and the date it was terminated, if it has been terminated; and
>
> d.      the matter for which the attorney was retained.

## Definitions

The following definitions shall have the following meanings, whether capitalized or not, plural and singular, unless the context requires otherwise:

1.      A party's full or abbreviated name or a pronoun referring to a party, means the party, and where applicable, the party's agents, representatives, officers, directors, employees, partners, corporate agents, subsidiaries, Affiliates, or any other Person acting in concert with the party or under the party's control, whether directly or indirectly, including any attorney.

2.      "Affiliate" means "Affiliate" as defined in 11 U.S.C. § 101(2) and 17 CFR § 230.405 (Reg. C Rule 405) and shall refer to, among other affiliated entities, (i) Arabella Exploration, LLC, (ii) Arabella Exploration, Inc., (iii) Arabella Operating, LLC, (iv) Arabella Midstream, LLC, (v) Masterson Royalty Fund, and (vi) any other company in which Jason Hoisager is an officer and/or an owner.

3.      "Bankruptcy Case" means Case No. 15-70098-rbk, *In re Arabella Petroleum Company, LLC,* filed in the United States Bankruptcy Court for the Western District of Texas.

4.      "Communication" or "Communications" means any transfer of information or language between or among two or more Persons, whether written or oral, hard copy or electronic.

5.      "Debtor" means Arabella Petroleum Company, LLC

6.      The term "Document" or "Documents" as used herein shall mean the original and each non-identical copy or draft of any written material, recording, or tangible thing, including without limitation, papers, books, writings, drawings, graphs, charts, photographs, letters, correspondence, Communications, memoranda, telegrams, cables, telexes, messages, typed or handwritten notes, work papers, transcripts, minutes, reports, recordings or records of telephone conversations or other interviews, conferences, plans, specifications, diagrams, affidavits, statements, statistical records, lists, tabulations, summaries, computer printouts, slides, movies, films, videotapes, sound recordings, data processing input or output, microfilm, microfiche, interoffice Communications, electronically stored information, electronic mail records, electronic

2

files, computer files, computer disks, and any data compilation from which information can be obtained, translated, if necessary, by the respondent to this request through appropriate devices into reasonable and usable form.  The term "Document" or "Documents" also includes copies when originals are not in the possession, custody, and control of You, as well as copies bearing notations or containing information in addition to that contained on the originals.

7.      "Insider" shall have the meaning defined by 11 U.S.C. § 101(31) and shall refer to, among other Insiders, Jason Hoisager.

8.      The term "or" means both "or" and "and."

9.      "Person" means any natural Person, corporation, firm, association, partnership, joint venture, proprietorship, governmental body, or any other organization, business, or legal entity, and all predecessors or successors-in-interest.

10.      "Petition Date" means July 10, 2015.

11.      "Property of the Estate" shall have the meaning defined by 11 U.S.C. § 541.

12.      "Relating to" means evidencing, discussing, averring or referring to, Related to, referencing, mentioning, noting, or regarding any items or matters described in a Request for Production.

13.      "Subject Leases" means oil and gas leases scheduled for sale under the Subject Sale Agreement, attached hereto, plus any other oil and gas leases which Debtor has owned since July 10, 2011.

14.      "Subject Sale Agreement" means that certain proposed Purchase and Sale Agreement between Arabella Exploration, Inc. and a "third party buyer, dated July 1, 2015, and a letter agreement with McCabe Petroleum Corporation, dated as of April 15, 2015 pursuant to which Arabella will sell its ownership interest in certain of its properties for cash and properties with a potential value totaling approximately $47 million," which is referenced in the press release attached hereto as **Exhibit B-1**.

15.      "Transfer" shall have the meaning defined by 11 U.S.C. § 101(54).

# REQUESTS FOR PRODUCTION

## Agreements/Transactions

1.    All Documents evidencing any agreements between Debtor and Jason Hoisager, which were in force and effect during the period July 10, 2011 to the present.

2.    All Documents evidencing any agreements between Debtor and any Affiliate or Insider which were in force and effect during the period July 10, 2011 to the present.

3.    All Documents which identify, constitute, refer to, or Relate to a transaction between the Debtor and Jason Hoisager during the period July 10, 2011 to the present.

4.    All Documents which identify, constitute, refer to, or Relate to a transaction between the Debtor and any Affiliate or Insider of the Debtor during the period July 10, 2011 to the present.

5.    All Documents evidencing any agreements between Debtor and any Person who lent Debtor money or other assets which were in force and effect during the period July 10, 2011 to the present.

6.    All Documents evidencing any agreements between Debtor and any Person to whom Debtor lent money or other assets which were in force and effect during the period July 10, 2011 to the present.

7.    Any promissory notes to which Debtor is a party.

8.    All Documents evidencing any agreements between Debtor and any bank which were in force and effect during the period July 10, 2011 to the present.

## Indebtedness

9.    All Documents evidencing any indebtedness of Debtor to an Affiliate or Insider owed during the period July 10, 2011 to the present.

10.    All Documents evidencing any indebtedness to Debtor by an Affiliate or Insider at any point during the period July 10, 2011 to the present.

## Transfers of Property

11.    All Documents evidencing each Transfer of any form of property from the Debtor to any Affiliate or Insider during the period July 10, 2011 until the present including, but not limited to, assignments, loans, advances of money, or repayments of money.

12.    All Documents evidencing any consideration received by the Debtor in exchange for any Transfer identified in any Document produced in response to the foregoing Request for Production.

13. All monthly bank statements, cleared checks, wire transfer documents and any other Document evidencing any transfer of cash from the Debtor to any Person during the period July 10, 2011 to the present.

14. All Documents Relating to or evidencing any consideration received by the Debtor in exchange for any Transfer identified in any Document produced in response to the foregoing Request for Production.

15. All Documents Relating to or evidencing any transfer, sale, assignment or conveyance by Debtor of any oil and gas interest during the period July 1, 2011 to the present.

16. All Documents evidencing any consideration received by the Debtor in exchange for any Transfer identified in any Document produced in response to the foregoing Request for Production.

17. All Documents evidencing Debtor's receipt of oil and gas production revenue attributable to any oil and gas leasehold interests owned by Debtor during the period July 10, 2011 to the present.

18. All Documents Relating to or evidencing any consideration received by the Debtor in exchange for any Transfer identified in any Document produced in response to the foregoing Request for Production.

19. All Documents evidencing any Transfers from Debtor to any other third-party which satisfied debts guaranteed by an Insider of Debtor made during the one-year period prior to the Petition Date.

20. All Documents evidencing any Transfers from Debtor to any third-party which satisfied debts owed by an affiliate of Debtor made during the four-year period prior to the Petition Date.

**Transfers of Property to the Debtor**

21. All Documents Relating to any capital contributions Jason Hoisager made to the Debtor.

22. All monthly bank statements, cleared checks, wire transfer documents, and any other Document evidencing any Transfer of cash to the Debtor during the period July 10, 2011 to the present.

**Accounting Records**

23. Debtor's general ledger from July 10, 2011 to the present.

24. All Documents Relating to accounts receivable owed to the Debtor from July 10, 2011 to the present.

25. All Documents Relating to accounts payable owed by the Debtor from July 10, 2011 to the present.

26.    All statements of account related to any accounts receivable owed to Debtor.

27.    All Documents Relating to or showing Transfers made from the Debtor to any Person from July 10, 2011 to the present which Documents include the following information: (i) the date of each Transfer, (ii) the amount of each Transfer, (iii) the account from which each Transfer was made, (iv) to whom each Transfer was made, and (v) the nature of the debt for which each Transfer was made.

28.    All Documents describing Debtor's net worth for the years 2011 through the present.

29.    All Documents Relating to any financial audits of Debtor conducted by independent third parties.

## Banking Records & Tax Returns

30.    Debtor's tax returns for the years 2011 through 2015.

31.    All Documents Relating to bank accounts held by Debtor from July 10, 2011 through the present to include, but not limited to, (i) bank statements, (ii) withdrawal requests, (iii) cancelled checks, (iv) wire requests, and (v) deposit statements.

## Oil & Gas Assets and Documents

32.    All assignments, farmout agreements, joint operating agreements, exploration and development agreements, participation agreements, and lease acquisition agreements which (i) Debtor is a party to, and (ii) were in force and effect at any time subsequent to July 10, 2011.

33.    All Documents Relating to or evidencing any interest of Debtor directly or indirectly in any oil and/or gas leases during the period July 10, 2011 to the present including, but not limited to, the Subject Leases.

34.    All Documents Relating to division orders to which Debtor is a party or which were proposed by other working interest owners in the Subject Leases.

35.    All Documents Relating to title opinions regarding oil and gas properties in which Debtor has an interest.

36.    All Documents reflecting any interests Debtor owned or owns in oil and gas properties from July 10, 2011 to the present including, but not limited to decks.

37.    All Documents Relating to valuations of the Debtor's interest in oil and gas properties.

38.    All Documents Relating to sales of oil and/or gas produced from oil and gas leaseholds in which the Debtor owned or owns an interest during the time period July 10, 2011 to the present.

39.    All Documents constituting or Relating to joint interest billings, statements of account, or AFEs issued by Debtor which reflect debts currently owed to Debtor.

40.     All Documents Relating to Debtor's efforts to collect outstanding joint interest billings.

**Correspondence/Communications**

41.     All Documents constituting, referring to, or Relating to any Communication between Debtor and any other Person during the period July 10, 2011 to the present referring or Relating to the operations of the Debtor, the Debtor's property, or the Property of the Estate.

42.     All Documents constituting, referring to, or Relating to any Communication between Debtor and any other Person during the period July 10, 2011 to the present referring or Relating to any Transfer of an interest the Debtor owned in any the oil and gas properties.

July 22, 2015



# Arabella Exploration Announces Sale of Certain Properties for Approximately $47 Million in Cash and Assets

FORT WORTH, TX -- (Marketwired) -- 07/22/15 -- Arabella Exploration, Inc. (OTC PINK: AXPLF) *("Arabella" or the "Company")*, an oil and gas E&P company focused on the Permian Basin, today announced that it has entered into a Purchase and Sale Agreement with a third party buyer ("Buyer"), dated as of July 1, 2015, and a letter agreement with McCabe Petroleum Corporation ("McCabe"), dated as of April 15, 2015, pursuant to which Arabella will sell its ownership interest in certain of its properties for cash and properties with a potential value totaling approximately $47 million. Pursuant to the agreements, the transactions will close simultaneously and Arabella will transfer its Locker State, Graham, Woods, Jackson and Emily Bell prospects to the Buyer and will receive cash from the Buyer and certain properties from McCabe. Arabella will receive the following in connection with the two transactions:

- $15 million in cash, subject to certain closing adjustments
- Producing property in the Southern Delaware Basin with net production of approximately 88 BOE/Day. Arabella estimates the value of this property to be approximately $6 million
- A participation agreement covering 20,000 undeveloped acres (gross and net) in the Midland Basin, valued by Arabella at approximately $1,000/acre or $20 million total
- An option to purchase approximately 1,000 net acres of royalty interests underlying the 20,000 acres in the Midland Basin valued by Arabella at approximately $3 million, net of the option cost
- The return of 1,003,597 of Arabella's ordinary shares and the rights to certain earn-out shares valued at approximately $3 million; the 1,003,597 shares will be canceled upon receipt (provided that such shares may be reissued in the event that Arabella does not drill at least one well on its new property within one year from the closing date)

Use of Proceeds

Pending agreement with the holders of its Senior Secured Notes, Arabella will repay $10 million of the $16 million outstanding. The remainder of the cash proceeds will be used for the development of properties, the repayment of other amounts owing and general corporate purposes.

Overview of Transition

The following chart summarizes the changes to Arabella's properties, production and capital structure as a result of the two deals:

| | Arabella Pre-Transactions | Removed | Added | Arabella Post-Transactions |
|---|---|---|---|---|
| Gross Wells(1) | 18 | 6 | 4 | 16 |
| Net BOE/Day(2) | 78 | 76 | 88 | 90 |
| Gross Acres | 34,921 | 2,560 | 20,844 | 53,205 |
| Net Acres | 4,972 | 1,314 | 20,140 | 23,798 |
| Senior Secured Notes | $16,000,000 | $10,000,000 | - | $6,000,000 |
| Shares Outstanding | 5,020,303 | 1,003,597 | - | 4,016,706 |

(1) Includes ten wells currently producing on Arabella's back in acreage

(2) BOE/Day estimated pre-transaction production is for the six months ended June 30, 2015, post-transaction estimate includes new producing property; neither amount includes production from Arabella's back in acreage

Closing Timing & Conditions

Arabella is targeting and anticipates that the transactions will close on or about July 31, 2015. The closing of the transactions are subject to certain closing conditions.

Update Call

Arabella anticipates holding an update conference call following the close of the transactions, details will be announced.

**About Arabella Exploration**

Arabella Exploration, Inc. (OTC PINK: AXPLF) is an independent oil and natural gas company focused on the acquisition, development and exploration of unconventional, long life, onshore oil and natural gas reserves in the Permian Basin in West Texas. The Company has an experienced management team with experience drilling multi-lateral wells and is primarily focused on the formations that the industry refers to as the Wolfbone play, which includes the Wolfcamp and Bone Spring shales. The Wolfbone play is characterized by high oil content and liquids rich natural gas, multiple vertical and horizontal target horizons, extensive production history, long-lived reserves and high drilling success rates.

**Safe Harbor**

This press release contains forward-looking statements within the meaning of Section 27A

of the Securities Act of 1933, as amended, and Section 21E of the Securities Exchange Act of 1934, as amended. These statements are subject to known and unknown risks, uncertainties and other factors that may cause actual results, performance or achievements to be materially different from any future results, performance or achievements expressed or implied by such forward-looking statements. Statements preceded or followed by or that otherwise include the words "believes," "expects," "anticipates," "intends," "projects," "estimates," "plans," and similar expressions or future or conditional verbs such as "will", "should", "would", "may" and "could" are generally forward-looking in nature and not historical facts. Forward-looking statements in this release also include statements about business and economic trends. Investors should also consider the areas of risk described under the heading "Forward Looking Statements" and those factors captioned as "Risk Factors" in the Company's periodic reports under the Securities Exchange Act of 1934, as amended, or in connection with any forward-looking statements that may be made by the Company.

The Company also disclaims any duty to comment upon or correct information that may be contained in reports published by the investment community.

For further information please contact:

William B. Heyn
Arabella Exploration, Inc.
Tel: (432) 279-0790
Email: william.heyn@arabellaexploration.com

Source: Arabella Exploration, Inc.