# EXHIBIT A



110 West 7th Street
Suite 2000
Tulsa, Oklahoma 74119
USA
918.879.0279
Fax 918.878.8379

Writer's Direct Phone: 918-879-9821
Writer's Direct Fax: 918-878-8321
srowland@samsonco.com

January 17, 2017

**Morris D. Weiss**
**Chapter 11 Trustee for Arabella Petroleum Company, LLC**
100 Congress Avenue, Suite 1800
Austin, Texas 78701

RE: Participation Agreement: Screaming Eagle Prospect—Pecos County, Texas dated effective January 1, 2012 between ExL Energy II LP and TRO-X, L.P. et al. (the "*Participation Agreement*")

Dear Mr. Weiss:

Samson Exploration, LLC ("*Samson*"), as successor to a portion of the interest of ExL Energy II LP in the captioned Participation Agreement, has entered into an agreement dated January 18, 2017 ("*PSA*") for the sale of all of Samson's interests in Pecos and Reeves Counties, Texas, including but not limited to Samson's interests that are subject to the captioned Participation Agreement. Samson has negotiated into the PSA a provision whereby the owners of the Tag Along Rights under the Participation Agreement may elect to sell all of their rights, interests and claims in, to and under the Participation Agreement along with Samson, as further explained in the attached Sales Terms and §9.4 of the enclosed redacted copy of the PSA. The buyer has agreed to buy the interests of the Tag Along Rights owners only on a fully reverted (after Project Payout) basis. Accordingly, any election to sell will also constitute your election to accelerate your share of Project Payout under the Participation Agreement and for your share of sales proceeds to be reduced by your share of the Project Payout balance as of (or prior to) the effective date of the sale. By electing to sell, you are agreeing to sell all of your rights, interests and claims in, to and under the Participation Agreement on the terms set forth in this letter (including, without limitation, your back-in working interest following Project Payout), the enclosed Sales Terms, and the enclosed PSA, all of which are incorporated herein. Please execute and deliver this notice and election letter to me on or before January 31, 2017. **If you do not return to me your proper election to sell by January 31, 2017 you will not be able to sell along with Samson under the PSA (and you will be deemed to have elected not to exercise your Tag Along Rights and sell your interests)**, in which case your reversionary interest will continue and your Tag Along Rights will be applicable if the buyer should ever sell its interests in the future.

The buyer has required Samson to keep its identity confidential until January 24th, at which time we would be free to advise you of their name. Feel free to give me a call if you have any questions or would like to discuss this matter.

Very truly yours,

SAMSON EXPLORATION, LLC

Scott Rowland
*Vice President – Business Development*
Enclosures

cc:     Arabella Petroleum Company, LLC
        500b W. Texas Ave., Suite 1450
        Midland, Texas 79701
            w/enclosures

# SALES TERMS UNDER JANUARY 18, 2017 ELECTION LETTER

Each owner of a reversionary interest under the Participation Agreement ("*Reversionary Interests*") who properly elects to sell ("*TAR Seller*") hereby agrees to sell all of their interests, rights and claims in, to and under the Participation Agreement on a reverted (after Project Payout) basis (including, without limitation, the Reversionary Interests) on the following terms and conditions.

1. Governing Documents. The TAR Seller's transaction is governed by the terms of the election letter, these Sales Terms, and the PSA, including Section 9.4 thereof (collectively, the "*Election Agreement*"). To the extent of any conflict between the provisions of Section 9.4 and the other provisions of the PSA, the provisions of Section 9.4 shall govern and control as to the TAR Seller's transaction. All capitalized terms not defined herein shall have the meaning ascribed thereto in the other documents constituting the Election Agreement.

2. Acceleration of Project Payout. TAR Seller agrees to accelerate Project Payout as of November 1, 2016, as set forth in Section 4 and Section 12 of the Participation Agreement and as required by the terms of the PSA.

3. TAR Pref Right. Within the timeframe set forth in §9.4(d) of the PSA, the TAR Sellers shall issue a Pref Right notice to Samson (who owns 75% of the total working interests burdened by the Reversionary Interests ("*Burdened WI*")) and Oxy (who owns 25% of the Burdened WI) in the form enclosed herewith with respect to the portion of the Reversionary Interest owned by the TAR Sellers. Each TAR Seller hereby appoints TRO-X, L.P. as its agent for purposes of sending such notice and receiving all elections thereunder. Regardless of whether or not Samson timely delivers an election, Samson is hereby deemed to exercise such Pref Right.

4. Allocated Value and Project Payout. The Base Purchase Price (as defined in the PSA) allocated to the aggregate Reversionary Interest for all owners of Reversionary Interests associated with Samson's Burdened WI is **$82,164,628** as reflected on Exhibit "E" to the PSA. Said Exhibit "E" also includes a hypothetical allocated value that would be attributable to the aggregate Reversionary Interest associated with Oxy's Burdened WI, in the amount of **$22,252,957**. Therefore, the base purchase price under the Sales Agreement to be attributed to the aggregate Reversionary Interests for all owners of Reversionary Interests associated with the combined Burdened WI of Samson and Oxy is **$104,417,585** ("*TAR Base Purchase Price*"). The Project Payout balance under the Participation Agreement applicable to the aggregate Reversionary Interest for all owners of Reversionary Interests associated with 100% of the Burdened WI as of November 1, 2016 is **$40,633,154** as reflected on Schedule 5.22 of the PSA ("*Project Payout Balance*"). As reflected on said Schedule 5.22, Samson and Oxy have agreed to allocate the Project Payout Balance disproportionately among themselves and have incurred differing costs based on their own respective elections and activities.

5. Closing. All aspects of pre-Closing, Closing, payment, conveyance, and post-Closing shall be handled as set forth in the PSA, including the special provisions applicable to the TAR Sellers as set forth in Section 9.4 thereof and as follows. The sales proceeds to be paid to each TAR Seller shall be determined by (i) applying, proportionately, the applicable purchase price adjustments pursuant to Section 3.3 of the PSA to the TAR Base Purchase Price, then (ii) subtracting 1.25% of the TAR Base Purchase Price (prior to any adjustments thereto) for the brokerage fee owed to Jefferies, then (iii) subtracting the Project Payout Balance, then (iv) multiplying that difference by the applicable TAR Seller's percentage ownership of the aggregate Reversionary Interest. As an example, assuming solely for the purposes of this example that there are no purchase price

adjustments pursuant to Section 3.3 of the PSA and that all owners of Tag Along Rights Participated, the proceeds applicable to the entirety of the Reversionary Interest would be **$62,479,211** (the TAR Base Purchase Price of $104,417,585, minus $1,305,220 for the 1.25% Jefferies fee, minus the Project Payout Balance of $40,633,154). Based on this example, each TAR Seller's sales proceeds would be approximately as follows:



Arabella Petroleum Company, LLC    10.000000%    $ 6,247,921

TOTAL    100.000000%    $62,479,211

6. <u>Representations</u>. By electing to sell and making the conveyances hereunder, each TAR Seller represents the following with respect to its respective portion of the Reversionary Interest (and their other rights, claims and interests in, to and under the Participation Agreement):

   a. Neither the Reversionary Interest, nor any other right, claim or interest in, to or under the Participation Agreement, has not been sold, conveyed, or assigned, is not subject to any agreement for same to be sold, conveyed, or assigned, and is not subject to any lien, encumbrance, mortgage, adverse claim, or dispute of any kind.

   b. The person signing the election letter has the full authority to execute this Election Agreement on behalf of the applicable TAR Seller, and that upon such execution this Election Agreement shall be fully binding and effective upon such TAR Seller. All approvals and authorities, of any and every kind whatsoever, whether internal corporate authority, bankruptcy court authority, or otherwise, have been obtained for the execution and performance of this Election Agreement.

   c. TAR Seller's entity type and state of formation or residence are accurately listed on the signature blocks of the election letter and are hereby incorporated into Section 5.1 of the PSA as applicable to TAR Seller.

   d. The Reversionary Interest (and their other rights, claims and interests in, to and under the Participation Agreement) is currently owned in proportions set forth in Section 5 above, and is accurately reflected in the after Project Payout working interests and net revenue interests attributed to TAR on Exhibit "E" to the PSA.

7. <u>Condition</u>. The obligations of Samson to pay any funds to TAR Sellers for any transaction under the Election Agreement are expressly conditioned upon closing of Samson's sale to Buyer. If the PSA is terminated as set forth in Section 19.1(b) thereof or for any other reason then Samson

shall reconvey to the TAR Sellers all Reversionary Interests conveyed to Samson pursuant hereto and Samson shall have no further obligation to pay the TAR Sellers or take any other action with respect to the transaction contemplated by the Election Agreement.

8. Notices. TAR Seller's address listed on the signature blocks of the election letter are incorporated into Article 18 of the PSA with respect to the Election Agreement, and shall be used for all communications and notices between Samson and each TAR Seller required or permitted hereunder.

9. Release. **TAR Sellers hereby release Samson, Oxy, and the Buyer, their respective successors and assigns, and the officers, directors, managers, members, employees, agents, and representatives of any of the foregoing from and against any and all claims, suits, liabilities, losses, and obligations of any and every kind whatsoever arising out of or related to the Participation Agreement with respect to actions or events arising or occurring after Closing of the transactions pursuant to the Election Agreement, regardless of the sole, joint, concurrent negligence, strict liability or other legal fault or responsibility of Samson, Oxy, the Buyer or any other person.**

10. Counterpart. Each TAR Owner has a separate election under the Election Letter. The terms and conditions of the election letter, these Sales Terms, and the PSA shall have no impact on those TAR Owners who affirmatively elect to not sell or who fail to properly and timely elect to sell.

# ELECTIONS UNDER JANUARY 18, 2017 ELECTION LETTER

___ SELL as set forth in this letter, its attached Sales Terms, and the PSA.
___ NOT SELL as set forth in this letter.

By: _____
Name:
Title:
Entity Type:
State of Formation:
Notice Address


**The Bankruptcy Estate of**
**ARABELLA PETROLEUM COMPANY, LLC** hereby elects to:

✓ SELL as set forth in this letter, its attached Sales Terms, and the PSA.
___ NOT SELL as set forth in this letter.

By: */s/ Morris D. Weiss, Trustee*
Name:                Morris D. Weiss
Title:               Trustee
Entity Type:         Limited Liability Company
State of Formation:  Texas
Notice Address       ~~500b W. Texas Ave., Suite 1450, Midland, Texas 79701 and~~
                     c/o Morris D. Weiss, Trustee, Waller Lansden Dortch & Davis, LLP,
                     100 Congress Avenue, Suite 1800, Austin, Texas 78701


___ SELL as set forth in this letter, its attached Sales Terms, and the PSA.
___ NOT SELL as set forth in this letter.

Name:
Entity Type:
Residence State:
Notice Address