**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT AND IS SUBJECT TO THE QUALIFICATIONS SET FORTH HEREIN IN ALL RESPECTS.**

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| ARABELLA PETROLEUM | § | |
| COMPANY, LLC, | § | CASE NO. 15-70098-TMD |
| | § | |
| Debtor. | § | CHAPTER 11 |

**JOINT DISCLOSURE STATEMENT OF CHAPTER 11 TRUSTEE AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN SUPPORT OF CHAPTER 11 PLAN OF REORGANIZATION, DATED JUNE 22, 2018**

Eric J. Taube
State Bar No. 19679350
Mark C. Taylor
State Bar No. 19713225
WALLER LANSDEN DORTCH & DAVIS, LLP
100 Congress Ave., 18th Floor
Austin, Texas 78701
Telephone: (512) 685-6400
Facsimile: (512) 685-6417
eric.taube@wallerlaw.com
mark.taylor@wallerlaw.com

ATTORNEYS FOR CHAPTER 11 TRUSTEE

-and-

Kenneth Green
State Bar No. 24036677
Blake Hamm
State Bar No. 24069869
Carolyn Carollo
State Bar No. 24083437
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, TX 77019
Telephone: (713) 335-4800
kgreen@snowspencelaw.com
blakehamm@snowspencelaw.com
carolyncarollo@snowspencelaw.com

ATTORNEYS FOR OFFICIAL COMMITTEE OF
UNSECURED CREDITORS

Dated: June 22, 2018

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN AND RELY UPON CERTAIN PUBLICLY AVAILABLE DOCUMENTS AND OTHER INFORMATION THAT THE TRUSTEE AND THE COMMITTEE HAVE BEEN ABLE TO DETERMINE BASED ON INFORMATION PROVIDED TO THEM. THE DELIVERY OF THIS DISCLOSURE STATEMENT SHALL NOT CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION STATED SINCE THE DATE HEREOF REGARDLESS OF THE DATE OF ACTUAL DELIVERY OF THE DISCLOSURE STATEMENT.

HOLDERS OF CLAIMS SHOULD CAREFULLY READ THIS DISCLOSURE STATEMENT IN ITS ENTIRETY, INCLUDING THE EXHIBITS, PRIOR TO VOTING ON THE PLAN. FOR THE CONVENIENCE OF HOLDERS OF CLAIMS AND EQUITY INTERESTS, THIS DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN. IF ANY INCONSISTENCY EXISTS BETWEEN THE PLAN AND THE DISCLOSURE STATEMENT, THE TERMS OF THE PLAN ARE CONTROLLING. THE DISCLOSURE STATEMENT MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN, AND NOTHING STATED HEREIN SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR, OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON THE DEBTOR, OR HOLDERS OF CLAIMS OR EQUITY INTERESTS.

CERTAIN OF THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL BE REFLECTIVE OF ACTUAL OUTCOMES. ALL HOLDERS OF CLAIMS SHOULD CAREFULLY READ AND CONSIDER FULLY THE RISK FACTORS SET FORTH IN THIS DISCLOSURE STATEMENT BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

SUMMARIES OF CERTAIN PROVISIONS OF AGREEMENTS REFERRED TO IN THIS DISCLOSURE STATEMENT DO NOT PURPORT TO BE COMPLETE AND ARE SUBJECT TO, AND ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO, THE FULL TEXT OF THE APPLICABLE AGREEMENTS

IRS CIRCULAR 230 NOTICE: TO ENSURE COMPLIANCE WITH IRS CIRCULAR 230, HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY HOLDERS OF CLAIMS AND EQUITY INTERESTS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THEM UNDER THE INTERNAL REVENUE CODE ("IRC"); AND (B) HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD SEEK ADVICE

BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

CAUTIONARY STATEMENTS CONCERNING TRUSTEE'S OR DEBTOR'S PROJECTIONS, VALUATION OF ASSETS, ESTIMATION OF CLAIMS, FINANCIAL STATEMENTS, AND FORWARD-LOOKING STATEMENTS:

CERTAIN INFORMATION CONTAINED HEREIN, INCLUDING THE TRUSTEE'S OR COMMITTEE'S VALUATION OF ASSETS, ESTIMATION OF CLAIMS, AND FINANCIAL STATEMENTS WERE OBTAINED BY THE TRUSTEE FROM INFORMATION PUBLICLY DISCLOSED BY THE DEBTOR IN THE DEBTOR'S PUBLIC FILINGS OR WERE OBTAINED FROM THE DEBTOR'S BUSINESS RECORDS WITHOUT ANY ABILITY TO CONFIRM THE ACCURACY OF SUCH RECORDS ON A HISTORICAL BASIS.

ALTHOUGH THE TRUSTEE, THE COMMITTEE AND THEIR REPRESENTATIVES AND ADVISORS CONDUCTED A REVIEW AND ANALYSIS OF THE DEBTOR'S BUSINESS, ASSETS AND LIABILITIES, THEY RELIED UPON THE ACCURACY AND COMPLETENESS OF ALL SUCH INFORMATION PUBLICLY FILED BY THE DEBTOR AND/OR READILY ASCERTAINABLE IN THE DEBTOR'S BOOKS AND RECORDS, AND HAVE ASSUMED THAT SUCH INFORMATION WAS REASONABLY PREPARED IN GOOD FAITH AND ON A BASIS REFLECTING THE DEBTOR'S MOST ACCURATE CURRENTLY AVAILABLE INFORMATION.

THE TRUSTEE, THE COMMITTEE AND THEIR ADVISORS AND REPRESENTATIVES DID NOT INDEPENDENTLY VERIFY OR SEEK INDEPENDENT VALUATIONS OF SUCH INFORMATION IN CONNECTION HEREWITH.  THE INCLUSION OF SUCH INFORMATION HEREIN SHOULD NOT BE REGARDED AS AN INDICATION THAT THE TRUSTEE, THE COMMITTEE OR ANY OF THEIR ADVISORS OR REPRESENTATIVES CONSIDER SUCH INFORMATION TO BE AN ACCURATE PREDICTION OF FUTURE EVENTS OR A COMPLETE AND ACCURATE REFLECTION OF THE DEBTOR'S CURRENT FINANCIAL CONDITION AND SUCH INFORMATION SHOULD NOT BE RELIED ON AS SUCH. NEITHER THE TRUSTEE, THE COMMITTEE NOR ANY OF THEIR ADVISORS OR REPRESENTATIVES ASSUME ANY RESPONSIBILITY FOR THE REASONABLENESS, COMPLETENESS, ACCURACY OR RELIABILITY OF SUCH INFORMATION AND DO NO INTEND TO UPDATE OR OTHERWISE REVISE SUCH INFORMATION TO REFLECT CIRCUMSTANCES EXISTING AFTER THE DATE WHEN MADE OR TO REFLECT THE OCCURRENCE OF FUTURE EVENTS EVEN IN THE EVENT THAT ANY OR ALL OF THE ASSUMPTIONS ARE SHOWN TO BE IN ERROR.

CERTAIN MATTERS DISCUSSED HEREIN ARE FORWARD-LOOKING STATEMENTS THAT ARE SUBJECT TO CERTAIN RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL RESULTS TO DIFFER MATERIALLY FROM THE STATEMENTS INCLUDED HEREIN AND SHOULD BE READ WITH CAUTION. THESE STATEMENTS INCLUDE, BUT ARE NOT LIMITED TO: ESTIMATED

**VALUE OF THE DEBTOR'S ASSETS AND THE AMOUNT OF ALLOWED UNSECURED CLAIMS. THESE STATEMENTS REFLECT CURRENT VIEWS AND ASSUMPTIONS THAT MAY BE AFFECTED BY VARIOUS FACTORS, INCLUDING THE TRUSTEE'S ABILITY TO CONFIRM AND CONSUMMATE THE PLAN AND DISCHARGE OR SETTLE CLAIMS DURING THE CHAPTER 11 CASE AND MONETIZE CERTAIN ASSETS, SOME OF WHICH MAY NOT BE SOLD UNTIL POST-CONFIRMATION, ACCORDINGLY, THERE CAN BE NO ASSURANCE THAT THESE STATEMENTS WILL PROVE ACCURATE, AND ACTUAL RESULTS MAY BE MATERIALLY DIFFERENT THAN THOSE CONTAINED HEREIN.**

## DISCLOSURE STATEMENT[1]

Morris D. Weiss (the "**Trustee**"), chapter 11 trustee for Arabella Petroleum Company, LLC, the debtor in the above-referenced bankruptcy proceeding ("**APC**," or the "**Debtor**") and the Official Committee of Unsecured Creditors for APC (the "**Committee**"), as co-plan proponents (collectively, the "**Plan Proponents**") provide this Disclosure Statement to all known creditors and equity interest holders of the Debtor in order to disclose the information deemed to be material, important, and necessary for creditors and equity interest holders to arrive at a reasonably informed decision in exercising their right to vote for acceptance or rejection of the Plan of Reorganization filed by the Plan Proponents (hereinafter, the "**Plan**"). A copy of the Plan accompanies this Disclosure Statement.

| **PLAN** |
| --- |
| **UNCLASSIFIED CLAIMS - ADMINISTRATIVE CLAIMS** |
| On the Effective Date, or as soon thereafter as is reasonably practicable, except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a less favorable treatment, each holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to the Allowed amount of such Claim, or such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code. |
| **CLASS 1 – PRIORITY CLAIMS** |
| Holders of Allowed Class 1 Priority Claims will be paid in full on the Effective Date. |
| **CLASS 2 – OTHER SECURED CLAIMS** |
| Holders of Allowed Class 2 Other Secured Claims will retain their liens until paid in full upon the sale of any property securing their liens, and shall receive a Class 4 General Unsecured Claim to the extent of any deficiency.  The Trustee is unaware of any such claims at this time. |
| **CLASS 3 – SECURED M&M LIEN CLAIMS** |
| Holders of Allowed Class 3 Secured M&M Lien Claims will retain their liens until paid in full upon the sale of any property securing their liens, and shall receive a Class 4 General Unsecured Claim to the extent of any deficiency.  The Trustee is unaware of any such claims at this time. |

---

[1] Any capitalized term not defined herein shall have the meaning ascribed to it in the Plan.

| **PLAN** |
|---|
| **CLASS 4 – GENERAL UNSECURED CLAIMS** |
| Holders of Allowed Class 4 General Unsecured Claims shall receive a prorata share of interests in the Liquidating Trust, in the percentage that the dollar amount of their individual claim bears to the dollar amount of all Allowed Class 4 Claims. |
| **CLASS 5 – SUBORDINATED CLAIMS** |
| Holders of Allowed Class 5 Subordinated Claims shall receive a pro rata share of interests in the Liquidating Trust, in the percentage that the dollar amount of their individual claim bears to the dollar amount of all Allowed Class 5 Claims, to be calculated and paid only after all senior Classes are paid in full. |
| **CLASS 6 – EQUITY INTERESTS** |
| On the Effective Date, all Equity Interests shall be canceled, and Holders of Class 6 Equity Interests shall receive any remaining funds or assets from the Liquidating Trust in the event all senior classes are paid in full. |
| **OTHER** |
| Liquidating Trust created with the Trustee appointed as the trustee to pursue Causes of Action. |

The Bankruptcy Court has set a hearing on confirmation of the Plan on _____, 2018 at _____ [a/p].m. (the "**Confirmation Hearing**"). The Confirmation Hearing will take place in Courtroom No. 1 at the United States Bankruptcy Court, Homer J. Thornberry Federal Judicial Building, 903 San Jacinto Blvd., Austin, Texas, before the Honorable Tony M. Davis, United States Bankruptcy Judge. Creditors, as defined in 101(1) of title 11 of the United States Code, 11 U.S.C. §§ 101 (the "**Bankruptcy Code**"), may vote on the Plan by filling out the accompanying ballot form and mailing it to it to the Plan Proponents, c/o Waller Lansden Dortch & Davis, LLP, 100 Congress Avenue, 18th floor, Austin, Texas 78701, or via facsimile to (512) 685-6417. In order to be counted, your ballot must be received at the above address or fax number by the close of business on _____, 2018. As a Creditor, your vote is important. In order for a particular class of creditors designated under the Plan to be deemed accepted, of the ballots cast, Creditors that hold at least 2/3 in amount and more than 1/2 in number of the allowed claims of impaired Classes must accept the Plan. However, you are advised that the Plan Proponents may be afforded the right under the Bankruptcy Code to have the Plan confirmed over the objections of dissenting creditors consistent with the limitations set forth in the Bankruptcy Code.

## I.      INTRODUCTION

This is the Disclosure Statement (the "**Disclosure Statement**") in the Chapter 11 case of Arabella Petroleum Company, LLC. This Disclosure Statement contains information about the Debtor and describes the Chapter 11 Plan of Reorganization of Arabella Petroleum Company, LLC as jointly proposed by the Trustee and the Committee, dated June 22, 2018.

*YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THE PLAN AND THIS DISCLOSURE STATEMENT CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.*

The Plan contemplates that there will be an initial distribution of cash to the holders of Allowed Claims. The remaining assets or entitlement to receive funds or proceeds will be placed into the Liquidating Trust and monetized over time by the initial trustee of the Liquidating Trust (the "**Liquidating Trustee**").  It is anticipated that the Liquidating Trustee will make distributions from time to time to the holders of Allowed Claims pursuant to the terms of the Liquidating Trust.

### A.      Purpose of this Document

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case;

- How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed);

- Who can vote on or object to the Plan;

- What factors the United States Bankruptcy Court for the Western District of Texas (the "**Bankruptcy Court**") will consider when deciding whether to confirm the Plan;

- Why the Trustee and the Committee believe the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation;

- What Causes of Action (as defined below) the Liquidating Trustee will be empowered to pursue; and

- The effect of confirmation of the Plan.

Be sure to read the Plan as well as this Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights. All terms used herein shall have the meaning set forth herein or, if not defined herein, shall have the

meaning set forth in the definitions section of the Plan. A copy of the Plan is attached hereto as **Exhibit A.**

### B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Bankruptcy Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

#### 1. *Time and Place of the Hearing to Approve This Disclosure Statement and Confirm the Plan*

The hearing at which the Bankruptcy Court will determine whether to approve this Disclosure Statement and confirm the Plan will take place on _____, 2018, at __ [a/p].m., at Courtroom No. 1 at the United States Bankruptcy Court, Homer J. Thornberry Federal Judicial Building, 903 San Jacinto Blvd., Austin, Texas, before the Honorable Tony M. Davis, United States Bankruptcy Judge.

#### 2. *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to Waller Lansden Dortch & Davis, LLP, Attn: Arabella Tabulation, 100 Congress Avenue, 18th Floor, Austin, Texas 78701. See **Section IV.A** below for a discussion of voting eligibility requirements.

Your ballot must be received by _____ or it will not be counted.

#### 3. *Deadline For Objecting to the Adequacy of the Disclosure Statement and Confirmation of the Plan*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed no later than _____.

#### 4. *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact Eric J. Taube or Mark C. Taylor, Waller Lansden Dortch & Davis, LLP, 100 Congress Avenue, 18th Floor, Austin, Texas 78701, Phone: (512) 685-6400, Fax: (512) 685-6417, E-mail: eric.taube@wallerlaw.com or mark.taylor@wallerlaw.com,

### C. Disclaimer

*The Bankruptcy Court has not yet approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Bankruptcy Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Bankruptcy Court may approve this Disclosure Statement does not constitute an endorsement of the Plan by the Bankruptcy*

*Court, or a recommendation that it be accepted. This Disclosure Statement is subject to final approval at the hearing on confirmation of the Plan.*

## II.      BACKGROUND

### A.      Factors Leading to Chapter 11 Filing

The chapter 11 filing was necessitated by an absence of liquidity and numerous claims. As of the Petition Date, APC had transferred substantially all of its assets to Arabella Exploration, LLC ("**AEX**"), and was unable to pay its creditors.  A discussion of the events leading to the bankruptcy filing is contained in **Section II(E)** below.

### B.      This Chapter 11 Case

On July 10, 2015 (the "**Petition Date**"), the Debtor commenced this bankruptcy case (the "**Chapter 11 Case**") by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code [Doc. 1], in the United States Bankruptcy Court for the Western District of Texas.

On July 24, 2015, the United States trustee appointed the Committee, consisting of Buckeye, Inc., Baker Hughes Oilfield Operations, Inc. ("**Baker Hughes**"), Jet Specialty, Inc., and Crossfire, LLC [Doc. 37]. On August 10, the Committee filed its Application to Retain Snow Spence Green LLP as Counsel for the Committee [Doc. 100], which was granted by an order dated September 4, 2015 [Doc. 178].

The Debtor initially operated as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtor sought to retain the law firm of Loeb & Loeb ("**Loeb**") as its counsel [Doc. 24] and to retain CohnReznick LLP ("**CohnReznick**") to provide "crisis management" services [Doc. 25].

The Committee (among others) opposed both retentions, including on the grounds that Loeb was conflicted by virtue of its previous and/or current representation of and association with other entities and individuals whose interests were opposed to the Debtor's interests [Docs. 81, 102].

In light of these same concerns, Baker Hughes filed a motion to appoint an examiner [Doc. 17], and the Committee filed a motion to appoint a Chapter 11 Trustee [Doc. 101].  At the request of the Committee [Doc. 57], and over the Debtor's objection [Doc. 62], the Bankruptcy Court ordered limited, expedited discovery to be conducted [Doc. 67].

The Bankruptcy Court held a hearing on August 18, 2015 and on that same day, ordered that a Chapter 11 Trustee be appointed [Doc. 141].  On August 20, 2015, the United States trustee requested appointment of the Trustee in this matter, and the Bankruptcy Court approved such appointment [Doc. 153].[2]

---

[2] The application to employ CohnReznick was withdrawn [Doc. 144], and the application to employ Loeb was approved [Doc. 146] with certain provisos stated on the transcript available at Doc. 165, pp. 66-68.

The Trustee sought, and the Bankruptcy Court approved, the retention of the law firm of Taube Summers Harrison Taylor Meinzer Brown LLP ("**Taube Summers**") as counsel to the Trustee. The attorneys of Taube Summers subsequently joined the firm of Waller Lansden Dortch & Davis LLP ("**Waller**"). The appointment of Waller as counsel to the Trustee was thereafter approved by the Bankruptcy Court [Doc. 244]. The Bankruptcy Court also approved the Trustee's retention of the firm of Lain, Faulkner & Co., P.C., as accountants for the estate [Doc. 195]. At the Trustee's request, this case was designated as a "Complex Case" [Doc. 166] under the local rules of this district.

The Trustee has filed two reports pursuant to Section 1106(a)(5) of the Bankruptcy Code [Docs. 258 and 304].

### 1. The Tag-Along Action

On January 24, 2017, the Trustee filed a *Motion to Approve and Ratify Actions by Trustee* in the Chapter 11 Case (the "**Trustee Tag-Along Motio**n"), seeking the Bankruptcy Court's approval of his exercise of tag-along rights associated with certain back-in interests in operating wells operated by (i) Samson Exploration, LLC and (ii) Brigham Resources Operating. LLC (collectively, the "**APC Tag-Along Rights**"). Arabella Exploration, LLC ("**AEX**") objected to the Trustee Tag-Along Motion arguing that ownership of the APC Tag-Along Rights was not clear and any determination of ownership of such rights or the use of any proceeds from exercise thereof should be determined at a future time. Ultimately an agreed order approving the Trustee Tag-Along Motion was entered in the Chapter 11 Case on January 31, 2017 (the "**APC Tag-Along Order**") [Doc. 295], which authorized the Trustee to exercise the APC Tag-Along Rights, but preserved the issue of ownership of the APC Tag-Along Rights and any related proceeds for future determination. The APC Tag-Along Order further required that any funds received by the Trustee on account of the APC Tag-Along Rights must be held in trust pending resolution of any disputes regarding ownership.

On February 3, 2017, AEX filed a *Motion to (A) Approve and Ratify Exercise of Tag-Along Rights or in the Alternative Assume Tag-Along Letter and (B) Approve and Ratify Exercise of Lease Acquisition Offering* (the "**AEX Tag-Along Motion**"), seeking approval from the United States Bankruptcy Court for the Northern District of Texas (the "**TXNB Court**") of the exercise of two tag-along options by Chip Hoebeke ("**Hoebeke**") regarding interests in certain wells operated by Brigham Resources Operating, LLC and Brigham Midstream, LLC (the "**AEX Tag-Along Rights**" and together with the APC Tag-Along Rights, the "**Tag-Along Rights**"). The Trustee objected to the AEX Tag-Along Motion arguing that ownership of the AEX Tag-Along Rights was vested in APC.

On February 17, 2017, the TXNB Court entered an order granting the AEX Tag- Along Motion [Doc. 97] (the "**AEX Tag-Along Order**" and together with the APC Tag-Along Order, the "**Tag-Along Orders**"), which authorized Hoebeke's exercise of the AEX Tag-Along Rights, but preserved the issue of ownership of such AEX Tag-Along Rights and any related funds received in respect thereof for future determination.

Subsequent to the entry of the Tag-Along Orders, the Trustee received approximately $6.2 million in respect of the Samson Exploration, LLC Tag-Along Rights. The Trustee received

approximately $2.7 million with respect to the Brigham Resources Operating, LLC Tag-Along Rights.

APC timely exercised its Tag Along Rights[3] in the Samson[4] and Brigham[5] Properties. As of the Petition Date, the only recorded interests in the underlying properties were in the name of APC. AEX asserted rights in the properties on the basis of an unrecorded assignment. The Trustee asserted that pursuant to section 544(a)(3) of the Bankruptcy Code, the Trustee's rights in such properties prevail and AEX had no interest in such properties.

The Settlement Agreement resolved all matters with respect to the Tag Along Rights between the Settlement Parties. *See* **Section II.B.2** for additional details regarding the mediation and Settlement Agreement.

> 2. *Mediation and Settlement Agreement*

At the hearing on Tag Along Motion, the parties announced an agreement to go to mediation and shortly thereafter filed an *Agreed Motion to Refer Matters to Mediation* [Doc. 306]. An order approving that motion was entered on February 21, 2017 [Doc. 310].

On March 27 and 28, 2017 (1) APC and the Trustee, (2) Committee, (3) AEX and Arabella Operating, LLC ("**AO**"), (4) Platinum Partners Credit Opportunities Master Fund LP ("**Platinum Trustee**"), Platinum Long Term Growth VIII, LLC ("**Platinum Beneficiary**," and together with Platinum Trustee, "**Platinum**") and the SEC Receiver for Platinum, (5) Arabella Exploration, Inc. ("**AEI**") and (6) Jason Hoisager ("**Hoisager**") (collectively, the "**Mediation Parties**") took part in a mediation of their outstanding disputes before United States Bankruptcy Judge H. Christopher Mott, sitting in the United States Bankruptcy Court for the Western District of Texas (the "**Mediator**"). All parties other than Hoisager settled. In that connection, the Trustee filed that certain *Motion to Approve Compromise and Settlement Pursuant to Rule 9019* [Doc. 331] (the "**Settlement Motion**"). A hearing to consider the Settlement Motion was conducted on May 18, 2017 and it was approved. On May 18, 2017, the Bankruptcy Court entered the *Order Granting Motion to Approve Compromise and Settlement Pursuant to Rule 9019* [Doc. 358] (the "**Settlement Order**"). Pursuant to the Settlement Order, the Trustee was authorized to enter into the Mediation Settlement Agreement (the "**Settlement Agreement[6]**").

---

[3] APC owns certain back-in interests in various oil and gas properties. Included in those interests are certain "Tag-Along Rights."

[4] APC is a participant pursuant to a Participation Agreement in the Screaming Eagle Prospect-Pecos County, Texas, dated effective January 1, 2012. Samson Exploration, LLC ("**Samson**") is the successor to a portion of the interest of ExL Energy II, LP under the Participation Agreement and negotiated for a sale of its interest in the properties covered by the Participation Agreement. As a participant, APC had a right to exercise its Tag-Along rights under the Participation Agreement and sell its interest as well.

[5] On a pre-petition basis, APC held certain rights pursuant to a Letter Agreement dated September 4, 2013, by and between Piedra Energy II, LLC and Brigham Operating, LLC ("**Brigham**"). Brigham and an affiliate initiated a purchase and sale of Brigham's interest under the Letter Agreement, which triggered APC's Tag-Along rights.

[6] Pursuant to the terms of the Settlement Agreement, it also needs to be approved by the court presiding over the SEC Receivership and the TXNB Court for the chapter 11 cases for AEX and AO. The Settlement Agreement has been approved by the TXNB Court in the chapter 11 cases for AEX and AO, and the SEC Receivership Court.

<u>Summary of Key Terms of the Settlement Agreement</u>

       The Settlement Agreement was the product of the mediation before the Mediator. The parties to the Settlement Agreement are the Trustee, the Committee, AEX and AO, the SEC Receiver, and Platinum (collectively. the "**Settlement Parties**"). The key terms of the Settlement Agreement are as follows[7]:

| Division of Proceeds of Tag-Along Rights | Proceeds of the Tag-Along Rights ("**TAR Proceeds**'') shall be divided as follows: 77.5% of the TAR Proceeds shall be disbursed to APC and 22.5% of the TAR Proceeds shall be disbursed to AEX and AO, within 10 days after the effective date of the Settlement Agreement. |
|---|---|
| DIP Loan[8] | Out of APC's share of the TAR Proceeds, APC will make available to AEX and AO a Debtor-In-Possession loan of up to $1 million ("**DIP Loan**") for the purpose of resolving any claims of Founders Oil & Gas, LLC ("**Founders**") arising on or before February 28. 2017. The DIP Loan will be secured by a first priority priming lien on all assets of AEX and AO (excluding causes of action under Chapter 5 of the Bankruptcy Code), and may be used solely for the purpose of paying Founders. Beginning on the date that APC funds the DIP Loan, the DIP Loan will bear interest at a rate of 2% per annum for the first 180 days. Any amount of the DIP Loan outstanding after 180 days shall bear interest at a rate of 5% per annum. The DIP Loan will be due and payable in full upon the earlier of the (a) sale of the Oil and Gas Assets (defined below), to be paid from AEX and AO's allocation of net proceeds of sale at closing; or (b) 12 months after APC funds the DIP Loan. |
| Sale Process for Oil and Gas Assets | APC and AEX and AO agree to fully cooperate and use their reasonable best efforts to file companion motions |

---

[7] The summary contained herein is qualified in its entirely with reference to the Settlement Agreement and is not an exhaustive restatement of the terms thereof. A copy of the Settlement Agreement is available through PACER attached to the Settlement Motion, or upon written request to counsel to the Trustee. In the event of any inconsistency between the summary contained herein. and the terms of the Settlement Agreement, the terms of the Settlement Agreement shall be controlling.

[8] As of the date hereof, AEX has not requested APC make a DIP Loan to AEX/AO.

| | to sell Oil and Gas Assets under 11 U.S.C. § 363 ("**363 Sale**[9]") in the Chapter 11 Case and the chapter 11 cases for AEX and AO. "**Oil and Gas Assets**'' is defined as (y) all mineral interests owned by APC, AEX, and AO that are specifically identified by APC, AEX, AO or their agents to be included in the 363 Sale; and (z) the JIB receivables owned by APC with operator liens (excluding those JIB receivables owed by AEX to APC, which claims and liens shall be released promptly upon the direction of the SEC Receiver). Oil and Gas Assets do not include any causes of action held by any party.<br><br>Any decisions about whether to sell certain Oil and Gas Assets shall be finally determined by the debtor that has record title to such assets. In the event that a debtor with record title removes any Oil and Gas Asset from sale, the net proceeds from any subsequent sale of the excluded asset shall be distributed in accordance with the section entitled "Division of Proceeds from Sale of Oil and Gas Assets'' set forth below.<br><br>Any material decision delegated to the Consulting Parties (defined below) under the orders approving bidding procedures for the sale of Oil and Gas Assets shall be first discussed in good faith by the Consulting Parties. If the Consulting Parties do not agree, the Debtors shall make the disputed decision. All other Consulting Parties shall have the right to object to the Debtors' decision, and the Parties agree to an expedited hearing on any such objections. The "**Consulting Parties**'' is defined as APC, the Committee, AEX and AO and the SEC Receiver. |
|---|---|
| Division of Proceeds from Sale of Oil and Gas Assets | Net proceeds from the sale of the Oil and Gas Assets will be distributed 65% to AEX and AO and 35% to APC. |
| Division of Sale Proceeds of Other Assets | Proceeds from the sale of mineral interests owned by APC or AEX and AO that are not specifically identified |

[9] On February 2, 2017, AEX filed its *Motion, Pursuant to Bankruptcy Code Sections 105(A), 363, and 365, and Bankruptcy Rules 2002, 6004, and 6006 for Entry of an Order (A) Approving Sale and Bidding Procedures In Connection With Sale of Assets of The Debtor (B) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, and (C) Granting Related Relief* (the "**AEX Sale Motion**''). After a hearing, an *Amended Order Approving Sale and Bidding Procedures in Connection with Sale of Assets of the Debtors and Granting Related Relief* [Doc. 195] was entered on May 5, 2017. On May 10, 2017, the Trustee filed his *Motion to Authorize Sale of Property of the Estate* [Doc. 344] (the "**Trustee's Sale Motion**''). The Trustee's Sale Motion was approved at a hearing held on May 18, 2017; the order was entered July 11, 2017 [Doc. 412].

|  | to be included in the 363 Sale will be paid in accordance with record title to such mineral interests. If record title to such mineral interests is held by APC, then APC will receive 77.5% of such proceeds, and AEX and AO will receive 22.5% of such proceeds. If record title to such mineral interests is held by AEX and AO, then APC will receive 35% of such proceeds, and AEX and AO will receive 65% of such proceeds. |
|--|--|

On April 11, 2017, the Trustee filed a *Motion to Approve Compromise and Settlement Pursuant to Rule 9019* [Doc. 331]. A limited response was filed by Founders Oil & Gas Operating, LLC ("**Founders Operating**") [Doc. 337], and after a hearing, an *Order Granting Motion to Approve Compromise and Settlement Pursuant to Rule 9019* [Doc. 358] was entered on May 24, 2017.

On April 13, 2017, the Trustee and the Committee jointly requested approval of their retention of Tex-Brit Corporation as Land Title Consultant [Doc. 334], which was approved on May 10, 2017 [Doc. 342]

On May 10, 2017, the Trustee filed his *Motion to Authorize Sale of Property of the Estate* [Doc. 344] (the "**Trustee's Sale Motion**"). The Trustee's Sale Motion was approved at a hearing held on May 18, 2017; the order was entered July 11, 2017 [Doc. 412].

### 3. *Adversary Proceedings*

Delaware Basin Resources v. APC and AO

On October 7, 2015, Delaware Basin Resources, LLC filed *Plaintiff's Original Complaint* against Arabella Petroleum Company, LLC and Arabella Operating, LLC, initiating Adversary Proceeding No. 15-07002. An *Order Granting Trustee's Motion to Dismiss and Dismissing Adversary Proceeding Without Prejudice* was entered on June 9, 2016 [Doc. 25].

Weiss v. AEX, et al. (the "Fraudulent Transfer Action")

On February 29, 2016, the Trustee filed *Plaintiff's Original Complaint* against Arabella Exploration Inc., Arabella Exploration LLC, Arabella Operating, LLC, Trans-Texas Land & Title, LLC, Platinum Partners Credit Opportunities Master Fund LP, Platinum Long Term Growth VIII, LLC, and Jason Hoisager, initiating Adversary Proceeding No. 16-07002. The Trustee filed his *Plaintiff's First Amended Complaint* on August 11, 2016 [Doc. 79] (the "**First Amended Complaint**").

The Trustee believes that Jason Hoisager, Arabella Exploration Inc. and Arabella Exploration, LLC were the beneficiaries of actual and constructive fraudulent transfers of cash and oil and gas properties belonging to APC, and that such transfers were made with the actual intent to hinder, delay, or defraud APC's various creditors and/or were made with APC receiving less than reasonably equivalent (and in most cases, no) value for the transfer and at a time when

APC (i) was insolvent or was rendered insolvent by the transfer; or (ii) was engaged in a business for which the debtor's remaining property was an unreasonably small capital.

The Settlement Agreement resolved all matters in the Fraudulent Transfer Action between APC and the Trustee, the Committee, AEX and AO, Platinum and the SEC Receiver, and AEI. *See* **Section II.B.2** for additional details regarding the mediation and Settlement Agreement. On May 26, 2017, the Trustee filed a *Stipulation of Partial Dismissal* to voluntarily dismiss his claims as to Trans-Texas Land & Title, LLC without prejudice. As of the date hereof, the only remaining defendant is Hoisager.

ETC Field Services v. APC, et al.

On April 25, 2016, ETC Field Services LLC filed its *Complaint in Interpleader* against Arabella Petroleum Company, LLC, Arabella Operating Company, LLC, Lynx Operating Co., Inc., Box Six Seven Four, L.C., Evan Energy Investments, LC, Craig L. Massey, Lynx Production Company, Inc., Cavalier Wahoo, LLP, Macfarlane Arabella, LLP, and EHI, LLC, initiating Adversary Proceeding No. 16-07005. An *Agreed Order Dismissing Adversary Proceeding Without Prejudice* was entered July 7, 2016 [Doc. 25]

Founders v. APC

On May 9, 2017, Founders Oil & Gas III, LLC and Founders Oil & Gas Operating, LLC (the "**Founders Plaintiffs**") filed their *Complaint and Request for Declaratory Judgment to Determine Interest in Property* against Arabella Petroleum Company, LLC, initiating Adversary Proceeding No. 17-07008. The Trustee filed an answer and counterclaim on behalf of the Debtor on June 8, 2017.

The parties attempted to mediate this case on October 13, 2017, but were unsuccessful in these efforts.

On January 4, 2018, the Founders Plaintiffs and the Trustee entered into that certain Stipulation of Dismissal which was approved by the Bankruptcy Court pursuant to which the referenced action was dismissed without prejudice.

Founders v. AEX, et al.

The Founders Plaintiffs also filed a *Complaint and Request for Declaratory Judgment to Determine Interest in Property* against AEX and AO in the TXNB Court on April 26, 2017. AEX and AO filed *Defendants' Answer and Counterclaim* on May 26, 2017.

Defendants filed a *Motion for Summary Judgment* on June 19, 2017, which the TXNB Court denied pursuant to its oral ruling on December 21, 2017. Founders and AEX have agreed to submit this matter to binding arbitration, filing an *Agreed Motion to Submit Adversary Proceeding to Binding Arbitration and Stay Proceedings* on March 16, 2018. The TXNB Court has approved the arbitration, which was scheduled to occur May 29, 2018 through June 1, 2018. Prior to the scheduled arbitration, Founders and AEX reached a settlement and AEX filed a motion to approve the compromise in the TXNB Court as of the date hereof. As of the date hereof, the motion remains pending.

Weiss v. Patterson-UTI Drilling Company, LLC

On March 15, 2018, the Trustee filed *Plaintiff's Original Complaint Against Patterson-UTI Drilling Company, LLC and Incorporated Objection to Proof of Claim* against Patterson-UTI Drilling Company, LLC, successor by merger to Nomac Drilling, L.L.C. ("**Patterson**"), initiating Adversary Proceeding No. 18-07002.  Patterson filed its *Answer and Counterclaim* on April 27, 2018.  .

Weiss v. Darrell Don Wilson and Founders

On August 25, 2017, the Trustee filed *Plaintiff's Original Complaint* against Darrell Don Wilson ("**Wilson**") and Founders Oil and Gas III, LLC ("**Founders III**"), initiating Adversary Proceeding No. 17-07023.  Following the Court's denial of Founders III's *Motion to Dismiss the Original Complaint*, Founders III filed its *Answer to Complaint* on January 19, 2018, and Wilson filed his *Answer to Complaint* on February 22, 2018.

Weiss v. Sunbelt Rentals Industrial Services, LLC

On August 10, 2017, the Trustee filed *Plaintiff Morris D. Weiss, Chapter 11 Trustee for Arabella Petroleum Company, LLC's Original Complaint* against Sunbelt Rentals Industrial Services, LLC ("**Sunbelt**"), initiating Adversary Proceeding No. 17-07002.  Sunbelt filed its *Original Answer and Affirmative Defenses to Plaintiff's Original Complaint* on August 4, 2017.  The parties reached a settlement and filed a *Motion to Approve Compromise and Settlement Agreement Pursuant to Bankruptcy Rule 9019* [Doc. 577] on March 6, 2018, which was approved by this Court by an order entered April 2, 2018 [Doc. 638].

Weiss v. Pyote Water Systems III, LLC

On July 7, 2017, the Trustee filed *Plaintiff Morris D. Weiss, Chapter 11 Trustee for Arabella Petroleum Company, LLC's Original Complaint* against Pyote Water Systems III, LLC ("**Pyote**"), initiating Adversary Proceeding No. 17-07021.  Pyote did not file an answer, and the *Clerk's Entry of Default* was entered on December 21, 2017.

Settlement with McCabe

The Trustee negotiated a settlement to resolve certain disputes with McCabe Petroleum Corporation and filed a *Motion to Approve Compromise and Settlement Pursuant to Bankruptcy Rule 9019* [Doc. 419] on July 26, 2017.  An order approving the settlement was entered on August 17, 2017 [Doc. 434].  Pursuant to the terms of the settlement, the Trustee received, for the benefit of the Estate, the sum of $2,100,000.00, of which 22.5% was paid to the AEX Estate pursuant to the Settlement Agreement with AEX and others.

### C.    AEX Case

#### 1.    Other Arabella Entities

On January 8, 2017, AEX filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the TXNB Court.  On April 4, 2017, AO filed its voluntary petition for relief

under chapter 11 of the Bankruptcy Code. The AEX case and the AO case are jointly administered under the AEX case number.

Chip Hoebeke of the Rehmann Turnaround and Receivership Group is the court-authorized chief restructuring officer of AEX and AO.

AEI commenced a liquidation proceeding pending in the Cayman Islands and a related chapter 15 case pending before the TXNB Court (the "**AEI Proceedings**") in respect of AEX and AO's parent company - AEI.

There is a receivership filed by the Securities and Exchange Commission pending in the District Court for the Eastern District of New York (Case No. 16-cv- 06848) (the "**SEC Receivership**") in respect of, among others, the Platinum Trustee and Platinum Beneficiary (collectively, "**Platinum**"). Platinum is the largest secured creditor of AEX, AEI and AO.

AEX and AO are wholly-owned subsidiaries of AEI. AEX is an oil and gas exploration company that owns working interests in a number of oil and gas properties and interests and other related assets. AEX's assets include, among other things, (i) working interests in six operating wells (the "**Operating Wells**") and (ii) working interests in 13 non-operating wells. Until approximately June 2016, AO was the operator of the Operating Wells, at which time, Founders Operating became the operator of the Operating Wells. Since that time, AO has had no meaningful operations.

AEX, AO and APC were, at different times, all formed by Jason Hoisager.

2. *AEX Sale Motion*

On February 2, 2017, AEX filed the AEX Sale Motion seeking approval of certain procedures for the sale of substantially all of AEX's assets, and ultimately, approval of the sale of substantially all of AEX's assets. Objections were filed by Founders Operating and the SEC Receiver for Platinum. After a hearing, an *Amended Order Approving Sale and Bidding Procedures in Connection with Sale of Assets of the Debtors and Granting Related Relief* [Doc. 195] was entered on May 5, 2017. AEX solicited bids for the purchase of the assets; however, disputes between AEX and Founders hampered the sales efforts.

On June 6, 2018, the AEX estate filed a motion under Bankruptcy Rule 9019 in its bankruptcy case to compromise and settle disputes with Founders. APC and AEX believe that approval of the settlement will allow the sale process for the AEX assets to proceed, and the Trustee is currently working with AEX and other interested parties to develop a sales process to allow the sale of the AEX assets to proceed in a timely and appropriate fashion. Once agreed upon, the Trustee will file a mirror sales procedure motion in this case in order to obtain appropriate approval of any sale by the Bankruptcy Court.

The Plan described herein will permit the Trustee to pursue all Causes of Action (as defined below) of the Debtor, including those at issue in the Fraudulent Transfer Action.

The Trustee believes that pursuit of such Causes of Action, and recovery of damages and properties in respect of such Causes of Action, is the primary means by which the Debtor may recover funds which may then be paid out to its creditors.

## D.    Schedules and Statements of Financial Affairs

On August 7, 2015, the Debtor filed its *Statement of Financial Affairs* and *Schedules of Assets and Liabilities*, subject to permitted amendments from time to time [Docs. 91, 92]. On August 13, 2015, the Debtor filed its *Amended Schedule B* [Doc. 119]. On August 13, 2015, the United States Trustee conducted a meeting of creditors pursuant to Section 341 of the Bankruptcy Code, as continued from time to time. The Trustee has timely filed all monthly operating reports and timely paid all statutory quarterly fees as required by the office of the United States Trustee. To the best of the Trustee's knowledge, information and belief, the Trustee, except to the extent the Bankruptcy Court has permitted otherwise, has complied with all other applicable requirements of the Bankruptcy Code and Bankruptcy Rules, as well as local Bankruptcy Court rules and deadlines of the office of the United States Trustee.

## E.    Description and History of the Debtor's Business

The Debtor's filings prior to the appointment of the Trustee reveal little about its financial situation. While the Trustee has ultimately gained access to certain of the Debtor's books and records, reconstructing the chaotic events that lead to the bankruptcy has been difficult, and certain pieces remain to be put in place, including through discovery.

In rough outline, and explained further below, the information available to the Trustee shows that the Debtor was denuded of its assets and any ability to generate revenue by its manager and sole equity owner, Jason Hoisager. As a result, the Debtor could not then pay its debts as they came due. It was sued by multiple creditors in multiple venues, and ultimately was pressured into filing for bankruptcy relief.

### 1.    The Formation and the Business of the Debtor, AEX, and AO

The Debtor was formed on February 13, 2007, as a Texas limited liability company. The Debtor is in the oil and gas business. It acquired and operated (for its own benefit and the benefit of numerous interest holders) a number of valuable oil and gas properties and interests (the "**Properties**"), primarily in Reeves County, Texas. The Properties include numerous producing wells, wells undrilled or uncompleted or still in development, and an extensive amount of undeveloped acreage. The Debtor was the operator of the wells pursuant to the terms of various joint operating agreements (the "**JOAs**"), memoranda of which were duly recorded in 2013.

On October 2, 2009, AEX was formed. On June 17, 2010, Lone Oak Acquisition Corporation ("**Lone Oak**"), the predecessor to AEI, was formed, under the laws of the Cayman Islands. Lone Oak was formed as a "blank check" company meaning that it had no business but

was created as a "shell" company for the purpose of raising capital and then identifying and merging with an operating company.[10]

AEX effected a "reverse merger" with Lone Oak, on December 24, 2013.  As a result of the merger, AEX's owners became the owners of Lone Oak, Lone Oak was renamed "Arabella Exploration, Inc.," and AEX became a subsidiary of AEI.  Lone Oak paid no consideration to the Debtor when it purported to "acquire" the tainted assets from AEX.

AO was formed in 2014, apparently for the purpose of assuming the role of operator from the Debtor under the JOAs.

### 2.    Assets and Rights Transferred Away From the Debtor

From 2011 through 2015, AEX and others plundered substantially all of the assets of the Debtor.  The detailed allegations supporting this statement are contained in Plaintiff's First Amended Complaint filed in the Fraudulent Transfer Action, together with the exhibits thereto.

As of the Petition Date, the Debtor had $500.50 in the bank—and millions of dollars in debt with hundreds of unpaid creditors.  Notably, substantially all of the Properties once owned by the Debtor were now in the name of AEX and its subsidiaries.

Some defendants in the Fraudulent Transfer Action, in particular Hoisager, AEX, and AO, simply transferred (or had transferred) to themselves large amounts of the Debtor's cash (the "**Cash**") and its interests in the Properties.

In specific, Hoisager received (personally or to third parties on his behalf) approximately $6.3 million in Cash from the Debtor within the relevant time frame.  A list of the known transfers of Cash to Hoisager or for his direct benefit, from July 12, 2011 to the Petition Date, is attached as Exhibit A to the First Amended Complaint.  Certain of these transfers were booked on APC's accounting system as member distributions to Molly Hoisager, Mr. Hoisager's wife, but the Trustee believes that at all relevant times only Hoisager owned membership interests in the Debtor and the payments were therefore made for his benefit and on account of his membership interests.

AEX took substantially all of the Debtor's interests in the Properties.  A list of the known transfers of property, which occurred in 2013, 2014, and 2015, is attached as Exhibit C to the First Amended Complaint.  Upon information and belief, AEX retains the Debtor's interest in certain of the Properties, but it has sold the Debtor's interest in certain others of the Properties— all without the Debtor having been paid any, or any sufficient, consideration in return.

In fact, the only consideration "paid" by AEX in respect of its receipt of APC's Properties was an increase in the amounts booked as due to the Debtor under the joint interest billings.  However, this paper obligation was later recharacterized in December 2013 as approximately three million dollars of equity in AEX issued *to Hoisager* and an approximately $3 million dollar promissory note issued from AEX *to Hoisager*.  In other words, APC received

---

[10] The traditional way that a company will go public is through undergoing the registration process.  In contrast, a "blank check" company goes public first and then looks for a business to acquire.

no consideration at all with respect to the transfers to AEX—such consideration as there was flowed directly to Hoisager.

Even if these payments to Hoisager are included as AEX's "cost" on its acquisition, AEX claimed in its public securities filings to have sold properties in 2014 for a total cash consideration of more than $5.6 million, and to have made a profit of more than $3 million. Those sales include several of the Properties, which were transferred from the Debtor to AEX in the months preceding AEX's subsequent sale. In fact, AEX's acknowledged profit attributable to the Debtor's Properties is itself more than $3 million.[11] For example, the Debtor's interest in the Johnson 44 well was purportedly transferred to AEX from APC by a transfer recorded on December 12, 2013. The Johnson 44 interest was then re-sold by AEX for *a profit of more than $1.2 million* on March 28, 2014. Another example is the Roark prospect, the transfer of which from APC to AEX was recorded on December 11, 2013, and which was then re-sold for *more than $1.5 million in profit* on June 24, 2014. The Trustee has asserted in the Fraudulent Transfer Action that all of AEX's ill-gotten gains with respect to these and any other subsequent sales of the Properties should be disgorged and repaid to the Debtor.[12]

In addition to its receipt of the Properties, AEX also received almost $6.2 million in Cash from the Debtor. A list of the known transfers of Cash, from July 2011 through the Petition Date, is attached as Exhibit D to the First Amended Complaint.

In 2014 and 2015, AO took over the Debtor's role as operator under several joint operating agreements.[13] Upon information and belief, the transfer of such operator status was yet another step taken to further Hoisager's plan to benefit himself and his affiliates at the expense of the Debtor and its creditors, in this case by ensuring that the Debtor had no leverage or control over the disposition of the Properties or over the various streams of funds with respect to the Properties (for instance, those payable to service providers and payable to and from other working interest holders). In addition to the transfer of operating rights, AO also received approximately $882,000 in Cash from the Debtor in 2015, for no consideration of which the Trustee is aware. A list of the known transfers of Cash, from January 2015 through the Petition Date, is attached as Exhibit E to the First Amended Complaint.

Throughout the course of action described above, the Debtor's principals looked the other way, for their own benefit and for the benefit of the other defendants.

### 3. *Granting of Tainted Liens to Platinum as Subsequent Transfers Subject to Avoidance*

In September of 2014, having already obtained possession of a significant part of the Debtor's assets, AEX went a step further, monetizing them further by encumbering the Properties with liens. The Trustee alleged in the First Amended Complaint that Platinum was the

---

[11] https://www.sec.gov/Archives/edgar/data/1506374/000121390015002772/f10k2014_arabellaexpl.htm.

[12] Furthermore, to the extent the transfers of the Properties from AEX to the third-party purchasers was not for value, were not taken in good faith and without knowledge of their avoidability by the transferees, or are otherwise avoidable, the Trustee reserves his rights to recover such Properties or the value thereof.

[13] The Trustee does not concede that the transfer of operating rights was undertaken properly under governing law or under the JOAs.

subsequent transferee of a fraudulent transfer. All matters related to Platinum were resolved pursuant to the Settlement Agreement as discussed in **Section II.B.2** above.

4.     *Hoisager's Mismanagement and Breaches of Duties*

In connection with and in addition to the activities specified above, Hoisager engaged in gross mismanagement of the Debtor, violating his fiduciary duties to the Debtor, in specific his duty of care and his duty of loyalty. Hoisager knowingly, willfully, and for his own benefit caused the Debtor to fail to perform its duties as operator and as owner of various oil and gas interests. Hoisager caused the Debtor to fail to pay debts that it owed and incurred both on its own behalf and on behalf of others. As a direct result of his recklessness and gross negligence, various of the Debtor's rights in property deteriorated or were lost and the Debtor incurred excessive and unnecessary debts and liabilities. In essence, Hoisager played the central role in a scheme pursuant to which he transferred the Cash and Properties at will so as to maximize the benefits to himself and his affiliates, to the detriment of the Debtor and its creditors.

**F.     Insiders and Management of the Debtor**

The Debtor has one equity security holder, Jason Hoisager, who holds a 100 percent (100%) interest (the "**Equity Interest**") in the Debtor. The Debtor does not pay any of its insiders a salary, nor has it made any distributions to its insiders since the Petition Date.

Pursuant to the Plan, the Equity Interest in the Debtor will be extinguished.

**G.     Management of the Debtor After the Plan Becomes Effective**

After the Effective Date of the order confirming the Plan, all of the Debtor's Property and Causes of Action will be transferred and conveyed to the Liquidating Trust. Liens on the Property will be terminated pursuant to the Plan or otherwise dealt with as prescribed in the Plan. The Plan and the distributions to be made thereunder are not dependent on upon the future operations of the Property. Management of the Debtor post-reorganization is not relevant because the recoveries under the Plan are not dependent upon future operations.

**H.     Projected Recovery of Avoidable Transfers and Other Causes of Action**

The Liquidating Trustee will pursue all causes of action of the Debtor (the "**Causes of Action**"). Causes of Action so far identified including those brought in the Fraudulent Transfer Action, causes of action (including without limitation those with respect to unpaid joint interest billings) against working interest holders in JOAs to which the Debtor is or was a party (the "**Working Interest Causes of Action**").

**Except as otherwise provided herein, the Plan does not, and is not intended to, release any Causes of Action or objections to claims. All such rights are specifically preserved in favor of the Debtor, the Trustee, and the Liquidating Trust.**

Creditors and Holders of Equity Interests are advised that legal rights, claims and rights of action the Debtor may have against them, if any exist, are retained under the Plan and will be transferred into the Liquidating Trust for prosecution, settlement or compromise by the

Liquidating Trustee unless a Final Order of the Bankruptcy Court authorizes the Debtor to release such claims. As such, Creditors and Holders of Equity Interests are cautioned not to rely on (i) the absence of the listing of any legal right, claim or Cause of Action against a particular Creditor in the Disclosure Statement, the Plan, the Schedules, or the Statement of Financial Affairs, or (ii) the absence of litigation or demand prior to the Effective Date as any indication that the Debtor, the Trustee, or the Liquidating Trustee does not possess or does not intend to prosecute a particular right, claim or Cause of Action if a particular Creditor or Holder of Equity Interests votes to accept the Plan. It is the expressed intention of the Plan to preserve rights, objections to claims, and rights of action of the Debtor, whether now known or unknown, for the benefit of the Liquidating Trust and the Debtor's Creditors. A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan or in the Disclosure Statement; nor shall the Liquidating Trustee nor the Liquidating Trust, as a result of such failure, be estopped or precluded under any theory from pursuing such Causes of Action. Nothing in the Plan operates as a release of any of the Causes of Action.

The Trustee does not presently know the extent of the Causes of Action and, for purposes of voting on the Plan, all Creditors are advised that the Liquidating Trustee will have substantially the same rights that a Chapter 7 trustee would have with respect to the Causes of Action. Accordingly, neither a vote to accept the Plan by any Creditor nor the entry of the Confirmation Order will act as a release, waiver, bar, or estoppel of any Cause of Action against such Creditor or any other Person or Entity, unless such Creditor, Person or Entity is specifically identified by name as a released party in the Plan, in the Confirmation Order, or in any other Final Order of the Bankruptcy Court. Confirmation of the Plan and entry of the Confirmation Order is not intended to and shall not be deemed to have any res judicata or collateral estoppel or other preclusive effect which would precede, preclude, or inhibit prosecution of such Causes of Action following Confirmation of the Plan.

The Debtor and the Liquidating Trustee reserve all rights under Section 506(c) of the Bankruptcy Code with respect to any and all Secured Claims. The Liquidating Trust shall remain open, even if the Chapter 11 Case shall have been closed, as to any and all Causes of Action until such time as the Causes of Action have been fully administered and the recoveries in respect of Causes of Action (the "**Causes of Action Recoveries**") have been received by the Liquidating Trustee.

The Causes of Action that may be pursued post-Confirmation by the Liquidating Trustee include the claims remaining in the Fraudulent Transfer Lawsuit, claims against working interest owners, all pending adversary proceedings, and any claims or causes of action of any nature whatsoever against Founders Oil & Gas Operating, LLC, Founders Oil & Gas III, LLC, or any of their affiliates, officers, directors or employees (the "**Founders Claims**"). The Liquidating Trustee will also pursue "**Avoidance Actions**," as defined in the following paragraph.

All claims, Causes of Action, and other legal and equitable rights that the Debtor or Trustee had (or had power to assert) immediately prior to Confirmation of the Plan, including actions for the avoidance and recovery of estate property under Bankruptcy Code Sections 329 and 550, or transfers avoidable under Bankruptcy Code Sections 544, 545, 547, 548, 549 or 553(b), will be transferred into the Liquidating Trust as of the Effective Date, and the

Liquidating Trustee may commence or continue, in any appropriate court or tribunal, any suit or other proceeding for the enforcement of such actions for the benefit of the beneficiaries under the Plan and the Trust established pursuant to it.

## I. Preservation of Causes of Action

### 1. Preservation of Causes of Action.

Except as otherwise provided in the Plan, or in relation to the Assigned Actions (as defined in Section II.I.2 below) or in the Confirmation Order, or in any contract, instrument, release, or other agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, following the Confirmation Date, the Liquidating Trustee shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Causes of Action which remain in the Fraudulent Transfer Action, all Causes of Action relating to the Founders Claims, and all Causes of Action against working interest owners based upon joint interest billings (except to the extent released under the Plan, that the Debtor or its Estate may hold against any Entity without further approval of the Bankruptcy Court whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Implementation Documents (as defined below), and the right of the Liquidating Trustee to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Liquidating Trustee may pursue such Causes of Action, as appropriate, in accordance with the best interests of the beneficiaries of the Liquidating Trust. Except for the Assigned Actions, the Liquidating Trustee shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. No Entity may rely on the absence of a specific reference in the Plan, the Plan Implementation Documents, or the Disclosure Statement to any Cause of Action against it as any indication that the Liquidating Trustee will not pursue any and all available Causes of Action against it. The Liquidating Trustee, as applicable, expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided, except as to the Assigned Actions, in the Plan. Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Liquidating Trustee expressly reserves all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation.

### 2. Preservation of Assigned Actions.

On the Effective Date, the Assigned Actions will include all Avoidance Actions shall be assigned to the Liquidating Trust. For the avoidance of doubt, and notwithstanding anything to the contrary herein, all Assigned Actions are preserved as they existed immediately before the Effective Date for the Liquidating Trustee to prosecute on behalf of the Liquidating Trust. The Liquidating Trust shall be vested with and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) the Assigned Actions of the Debtor or its Estate against any Entity

without further approval of the Bankruptcy Court whether arising before or after the Petition Date and the Liquidating Trust's rights to commence, prosecute, or settle such Assigned Action shall be preserved notwithstanding the occurrence of the Effective Date. The Liquidating Trustee shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Assigned Action and to decline to do any of the foregoing without the consent or approval of any third party (other than the Liquidating Trust Committee to the extent provided in the Plan) or further notice to or action, order, or approval of the Bankruptcy Court. The term "**Assigned Actions**" is defined in the Plan as follows: "means all Causes of Action of Debtor (including Avoidance Actions). A list of identified potential Causes of Action will be filed as a "**Plan Implementation Document**," which will be included in the Plan Supplement. The term "**Avoidance Action**" is defined in the Plan as "any actions commenced, or that may be commenced, before or after the Effective Date pursuant to section 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code."

No Entity may rely on the absence of a specific reference in the Plan, the Plan Implementation Documents, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtor, the Liquidating Trustee or the Liquidating Trust will not pursue any and all Assigned Action against it. The Liquidating Trustee expressly reserves all rights to prosecute any and all Assigned Actions against any Entity. The Liquidating Trust and Liquidating Trustee expressly reserves all Assigned Actions, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Assigned Action upon, after, or as a consequence of Confirmation of the Plan. As to the Assigned Actions contributed to the Liquidating Trust, the Liquidating Trustee shall constitute the representative of the bankruptcy Estate for purposes of retaining, selling and/or conforming claims or Assigned Actions under Section 1123(b)(3)(b) of the Bankruptcy Code.

**J.    Effectuating Documents; Further Transactions**

On and after the Effective Date, the Trustee is authorized to and may issue, execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents, including the Plan Implementation Documents, and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

**K.    RELEASE, INJUNCTION, AND RELATED PROVISIONS**

*1.    Term of Injunctions or Stays.*

Unless otherwise provided herein or in a Final Order, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 362 of the Bankruptcy Code or otherwise and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date set forth in the order providing for such injunction or stay.

2. *Exculpation.*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Claim, Cause of Action, obligation, suit, judgment, damage, demand, loss, or liability for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, filing, or termination of the Disclosure Statement, the Plan, the related agreements, instruments, and other documents, the solicitation of votes with respect to this Plan, or any contract, instrument, release or other agreement or document regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan, pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan, the related agreements, instruments, and other documents except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

None of the Exculpated Parties shall have or incur any liability to any person or any of their respective agents, employees, representatives, advisors, attorneys, affiliates, shareholders, or members, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the Disclosure Statement, the transactions contemplated by or described in the Plan or Disclosure Statement, the formulation, negotiation, or implementation of this Plan, the pursuit of Confirmation of this Plan, the Confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan.

Notwithstanding any other provisions of this Plan, no person, no person's agents, directors, managers, officers, employees, representatives, advisors, attorneys, affiliates, shareholders, or member and no person's successors or assigns shall have any right of action against any of the Exculpated Parties for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the Disclosure Statement, the transactions contemplated by or described in the Plan or Disclosure Statement, the formulation, negotiation, or implementation of this Plan, the pursuit of Confirmation of this Plan, the Confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan.

3. *Injunction.*

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests which are subject to exculpation pursuant to Section [     ] of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such entities or the property or the estates of such entities on

account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such entities or against the property of such entities on account of or in connection with or with respect to any such Claims; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims released or settled pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under the Plan or under any document, instrument, or agreement executed to implement the Plan from bringing an action to enforce the terms of the Plan or such document, instrument, or agreement executed to implement the Plan.

### 4. *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent; or (2) the relevant holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

## L. The Liquidating Trust[14]

### 1. *Establishment of the Liquidating Trust.*

On the Effective Date, the Liquidating Trust shall be established for the benefit of the Holders of Allowed General Unsecured Claims (and, to the extent they are paid in full, Subordinated Claims and, thereafter, Equity Interests). Section [ ] of the Plan sets forth certain of the rights, duties, and obligations of the Liquidating Trustee. In the event of any conflict between the terms of this Section and the terms of the Liquidating Trust Agreement, the terms of the Liquidating Trust Agreement shall govern.

### 2. *Trustee.*

The initial Liquidating Trustee of the Liquidating Trust shall be Morris D. Weiss, the current chapter 11 trustee, subject to the approval by the Committee and the Court. The experience and qualifications of Morris D. Weiss are described in **Exhibit B** attached hereto. The Liquidating Trustee would be compensated for services performed.

### 3. *Execution of Liquidating Trust Agreement.*

On the Effective Date, the Liquidating Trust Agreement shall be executed, and all other necessary steps shall be taken to establish the Liquidating Trust and the beneficial interests therein. The form of the Liquidating Trust Agreement and related ancillary documents shall be

---

[14] The summary contained herein is qualified in its entirely with reference to the Liquidating Trust Agreement, which will be included in a Plan Supplement, and is not an exhaustive restatement of the terms thereof. In the event of any inconsistency between the summary contained herein. and the terms of the Liquidating Trust Agreement, the terms of the Liquidating Trust Agreement shall be controlling.

acceptable to the Committee in its sole discretion, subject only to Bankruptcy Court approval at the Confirmation Hearing.

### 4.    *Purpose of the Liquidating Trust.*

The Liquidating Trust shall be established for the sole purpose of liquidating and distributing the Trust Assets to the Holders of interests in the Liquidating Trust, in accordance with Treasury Regulation Section 301.7701-4(d), with no objective to continue or to engage in the conduct of a trade or business. The Liquidating Trust, through the Liquidating Trustee, shall (i) collect and reduce the Trust Assets to Cash, (ii) prosecute, settle and otherwise administer the Assigned Actions, (iii) make Distributions to the beneficiaries of the Liquidating Trust in accordance with the Plan and Liquidating Trust Agreement and (iv) take all such actions as are reasonably necessary to accomplish the purpose hereof, as more fully provided in the Liquidating Trust Agreement.

### 5.    *Trust Assets.*

The Liquidating Trust shall consist of the Trust Assets. On the Effective Date, all Transfers to the Liquidating Trust provided for under the Plan shall be made by the applicable party, including the following: (i) the Trustee shall execute and deliver to the Liquidating Trust all cash, Assigned Claims, and any other remaining assets, less amounts necessary to pay any remaining administrative expenses, any unpaid Secured or Priority Claim, and (ii) the Holders of M&M Lien Claims voting to accept the Plan shall be deemed to have assigned to the Liquidating Trust their M&M Lien Claims to the extent provided in Section [____] of the Plan. On the Effective Date, the Trust Assets, including the Assigned Actions, shall automatically vest in the Liquidating Trust, free and clear of all Liens, Claims and encumbrances.

### 6.    *Governance of the Liquidating Trust.*

The Liquidating Trust shall be governed by the Liquidating Trustee Committee in accordance with the Liquidating Trust Agreement and consistent with the Plan. The members of the Liquidating Trust Committee shall constitute a quorum for voting and approval purposes. Whenever such quorum is present, the vote of a majority of such quorum shall be binding on the Liquidating Trust Committee and the Liquidating Trust.

### 7.    *The Trustee.*

Morris D. Weiss, the current chapter 11 trustee, will serve as the Liquidating Trustee, subject to approval by the Committee and the Court at the Confirmation Hearing. With respect to the Trust Assets, the Liquidating Trustee shall be a representative of the Estate pursuant to Section 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code. The Liquidating Trustee may prosecute, settle and otherwise administer the Assigned Actions on behalf of the Liquidating Trust, without the need for Bankruptcy Court approval or any other notice or approval, except as set forth in the Liquidating Trust Agreement, and shall also have standing and authority to object to any Claims filed against the Debtor's Estate or scheduled by the Debtor that purport to qualify as an Allowed Secured M&M Lien Claim or Allowed General Unsecured Claim under the terms of the Plan, including, without limitation, pursuant to Section 502(d) of the Bankruptcy Code.

The Liquidating Trustee shall be exempt from giving any bond or other security in any jurisdiction.

>    8.    *General Powers of Trustee.*

The Liquidating Trustee, on behalf of the Liquidating Trust, shall have all of the rights, powers and privileges set forth in the Plan, the Confirmation Order, and the Liquidating Trust Agreement. Subject to obtaining the approval of the Liquidating Trust Committee to the extent required by Section [    ] of the Plan, the Liquidating Trustee is authorized and shall have the obligation to take all such actions as in his/her judgment are necessary and appropriate to effectuate the purposes of the Plan, including but not limited to the following:

- Perform the duties, exercise the powers, and assert the rights of a trustee under Sections 704 and 1106 of the Bankruptcy Code with respect to the Trust Assets or Liquidating Trust, including, without limitation, commencing, prosecuting or settling Assigned Actions contributed to the Liquidating Trust, enforcing contracts, and asserting claims, defenses, offsets and privileges;

- Hold legal title to any and all rights of the beneficiaries of the Liquidating Trust in or arising from the Trust Assets, including, without limitation, collecting, receiving any and all money and other property belonging to the Liquidating Trust and the right to vote any claim or interest in a case under the Bankruptcy Code and receive any Distribution therein;

- Make Distributions to the Holders of Allowed Secured M&M Lien Claims and Allowed General Unsecured Claims contemplated under the Plan and Liquidating Trust Agreement;

- Supervise and administer the reconciliation, resolution and settlement of Allowed Secured M&M Lien Claims and Allowed General Unsecured Claims and the Distributions to the Holders of Allowed Secured M&M Lien Claims and Allowed General Unsecured Claims in accordance with the Plan;

- Enter into any agreement on behalf of the Liquidating Trust required by or consistent with the Plan and perform all of the obligations required of the Liquidating Trustee under the Liquidating Trust Agreement or the Plan;

- With the prior approval of the Liquidating Trust Committee, abandon any of the assets of the Liquidating Trust if the Liquidating Trustee concludes that such assets are of no net benefit to Allowed Secured M&M Lien Claims and Allowed General Unsecured Claim Holders;

- Participate in or initiate any proceeding with respect to the Trust Assets before the Bankruptcy Court or any other court appropriate jurisdiction and participate as a party or otherwise in any administrative, arbitrative or other non-judicial proceeding and litigate claims on behalf of the Liquidating Trust, including all Assigned Actions;

- Participate as a party-in-interest in any proceeding with respect to the Trust Assets or the Liquidating Trust before the United States Bankruptcy Court involving the Chapter 11 Case;

- With the prior approval of the Liquidating Trust Committee, participate in or initiate, prosecute and settle an objection to allowance of any General Unsecured Claim or M&M Lien Claim without approval of the Bankruptcy Court;

- Protect and enforce the rights to the Trust Assets by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

- Take actions and exercise remedies (including, but not limited to, those provided under the Plan Implementation Documents) against any Entity that owes an obligation to the Liquidating Trust;

- Subject to the prior approval of the Liquidating Trust Committee, retain and pay such Liquidating Trust Professionals as the Liquidating Trustee may select to assist the Liquidating Trustee in its duties, on such terms as the Liquidating Trustee deems appropriate, without Bankruptcy Court approval. For avoidance of doubt, the engagement of any professionals by the Liquidating Trust must be approved in advance by the Liquidating Trust Committee. Subject to Liquidating Trust Committee approval, the Liquidating Trustee may commit the Liquidating Trust to and shall pay Liquidating Trust Professionals reasonable compensation for services rendered and expenses incurred and may engage counsel on a contingent basis. A law firm or professional shall not be disqualified from serving as a Liquidating Trust Professional solely because of its current or prior retention as counsel or professional to the parties in interest in the Cases;

- Retain and pay such third parties as the Liquidating Trustee may deem necessary or appropriate to assist the Liquidating Trustee in carrying out its powers and duties under the Liquidating Trust Agreement, subject to Liquidating Trust Committee approval. Subject to Liquidating Trust Committee approval, the Liquidating Trustee may commit the Liquidating Trust to and shall pay all such Persons reasonable compensation for services rendered and expenses incurred, as well as commit the Liquidating Trust to indemnify any such parties in connection with the performance of services;

- Employ such employees as the Liquidating Trustee, and as consistent with the purposes of the Liquidating Trust, may deem necessary or appropriate to assist the Liquidating Trustee in carrying out its powers and duties under this Trust Agreement. The Liquidating Trustee may commit the Liquidating Trust to and shall pay all such employees reasonable salary in the amounts it shall determine to be appropriate and any employee benefits it may establish. If the Liquidating Trustee employs employees, the Liquidating Trustee shall establish payroll procedures and pay any and all federal, state or local tax withholding required under applicable law with respect to any such employees, and it will take all other actions it deems necessary;

- Assert or waive any privilege or defense on behalf of the Liquidating Trust or, with respect to the Trust Assets, as provided in the Liquidating Trust Agreement or the Plan;

- Subject to prior approval of the Liquidating Trust Committee, compromise, adjust, arbitrate, sue on or defend, pursue, prosecute, abandon, exercise rights, powers, and privileges with respect to, or otherwise deal with and settle, in accordance with the terms set forth herein, all Causes of Action in favor of or against the Liquidating Trust as the Liquidating Trustee shall deem advisable;

- Execute offsets and assert counterclaims against General Unsecured Claims and Secured M&M Lien Claims as part of an objection to any Secured M&M Lien Claim or General Unsecured Claim, but only up to the amount of the General Unsecured Claim or Secured M&M Lien Claim;

- Invest any moneys held as part of the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement, limited, however, to such investments that are consistent with the Liquidating Trust's status as a Liquidating Trust within the meaning of Treasury Regulations Section 301.7701-4(d);

- Request any appropriate tax determination with respect to the Liquidating Trust, including, without limitation, a determination pursuant to Section 505 of the Bankruptcy Code;

- Take or refrain from taking any and all actions the Liquidating Trustee reasonably deems necessary or convenient for the continuation, protection and maximization of the Trust Assets or to carry out the purposes hereof;

- Assume such other powers as may be vested in or assumed by the Liquidating Trust pursuant to the Plan or Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan or the Liquidating Trust Agreement;

- Establish and maintain such bank accounts to draw checks on such bank accounts and perform such other necessary and appropriate duties with respect to such accounts, or designate individuals as signatories therefore, as the Liquidating Trustee may direct and authorize;

- Invest or reinvest Trust Assets and to cause such investments, or any part thereof, to be registered and held in its name, as Liquidating Trustee, or in the name of nominees;

- Hold any unclaimed Distribution or payment to the Holder of an Allowed General Unsecured Claim or Allowed Secured M&M Lien Claim in accordance with the Plan and the Liquidating Trust Agreement;

- Propose (but not require) any amendment, modification or supplement to the Plan or the Liquidating Trust Agreement with respect to Trust Assets or the Liquidating Trust that is not inconsistent with the Plan;

- File dissolution/termination documents with the appropriate governmental agencies to dissolve the Liquidating Trust;

- Receive, conserve and manage the Trust Assets, and sell, pursuant to 11 U.S.C. § 1123(a)(5) and the Plan, or otherwise dispose of such assets for a price and upon such terms and conditions as the Liquidating Trustee deems most beneficial to the Holders of Allowed General Unsecured Claims and Allowed Secured M&M Lien Claims that are approved by the Liquidating Trust Committee and execute such instruments in connection therewith;

- Pay all taxes, if any, properly payable by the Liquidating Trust, make all tax withholdings and file tax returns and tax information returns with respect to the Liquidating Trust, and make tax elections by and on behalf of the Liquidating Trust;

- Pay all lawful expenses, debts, charges and liabilities of the Liquidating Trust or relating to the Trust Assets;

- Establish such reserves for taxes, assessments and other expenses of administration of the Liquidating Trust as may be necessary and appropriate for the proper operation of matters incident to the affairs of the Liquidating Trust; and

- Exercise such other powers and duties as are necessary or appropriate in the Liquidating Trustee's discretion to accomplish the purposes of the Plan.

### M.    Liquidating Trust Committee

#### 1.    *Formation.*

On the Effective Date, a Liquidating Trust Committee shall be formed. The Liquidating Trust Committee shall be governed by the terms of the Liquidating Trust Agreement. The members of the Liquidating Trust Committee shall appoint representatives as provided for in the Liquidating Trust Agreement. Any member of the Liquidating Trust Committee may designate any other member as proxy for any vote of the Liquidating Trust Committee. Until any vacancy on the Liquidating Trust Committee is filled, the Liquidating Trust Committee shall function in its reduced number.

#### 2.    *Members.*

The initial members of the Liquidating Trust Committee shall be:

- Baker Hughes Oilfield Operations, Inc.

- Three (3) other members to be determined before the Effective Date.

#### 3.    *Powers of the Liquidating Trust Committee.*

The Liquidating Trust Committee shall:

(i)    have the right to review, approve and object to settlements and proposed prosecution, release or abandonment of objections to Secured M&M Lien Claims, General Unsecured Claims and/or Causes of Action by the Liquidating Trustee subject to the terms of the Plan, the Confirmation Order, and the Liquidating Trust Agreement, provided, however, that no member of the Liquidating Trust Committee shall review or have any authority over decisions of the Liquidating Trust Committee or the Liquidating Trustee relating to any Claims or Causes of Action in which that member is a claimant against a Debtor or defendant in an action brought by the Debtor, the Liquidating Trustee or the Liquidating Trust;

(ii)    have the right to review, approve and object to proposed sales and other dispositions of Trust Assets;

(iii)    be vested with authority to remove the Liquidating Trustee, or any successor Liquidating Trustee, appointed pursuant to the Plan, the Confirmation Order, or the Liquidating Trust Agreement;

(iv)    consult with the Liquidating Trustee in connection with any other matters related to the Plan, the Confirmation Order, or the Liquidating Trust Agreement;

(v)    Select a successor member of Liquidating Trust Committee as provided in Section [___] of the Liquidating Trust Agreement;

(vi)    Approve the hiring of each professional by the Liquidating Trustee and the terms under which each such professional is to be compensated;

(vii)    Monitor and receive periodic reports and updates from the Liquidating Trustee regarding the status of the administration of the Liquidating Trust Assets; and

(viii)    perform such additional functions otherwise provided for in the Plan, the Confirmation Order, or the Liquidating Trust Agreement, or are provided for by further order of the Bankruptcy Court entered after the Effective Date.

    4.    *Exculpation.*

The members of the Liquidating Trust Committee shall undertake their duties as specified in the Plan and the Liquidating Trust Agreement. In serving as a member of the Liquidating Trust Committee, such members shall not assume or be deemed to have assumed any liability to Creditors, Holders of Equity Interest, the Debtor, the Trustee, the Liquidating Trust, the Trustee, or any other parties in interest in the Chapter 11 Case and shall not be liable for any acts or omissions while acting in that capacity, except for acts or omissions in bad faith and acts or omissions constituting malfeasance or gross negligence. In addition, the members of the Liquidating Trust Committee shall be entitled to reimbursement from the Liquidating Trust of their reasonable expenses incurred in connection with their duties as members of the Liquidating

Trust Committee. Resignation and removal of Liquidating Trust Committee members, and appointment of their successors, shall be conducted pursuant to the terms of the Liquidating Trust Agreement.

### 5. *Dissolution.*

The Liquidating Trust Committee shall be dissolved at the time the Liquidating Trust is dissolved. Upon dissolution, the members thereof shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from their service as Liquidating Trust Committee members.

### 6. *Indemnification of Liquidating Trust Committee.*

The Liquidating Trust Committee or the individuals comprising the Liquidating Trust Committee, as the case may be, and the Liquidating Trust Committee's agents and professionals, shall not be liable for actions taken or omitted in its capacity as, or on behalf of, the Liquidating Trust Committee, except those acts arising out of its or their own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or ultra vires acts, and each shall be entitled to indemnification and reimbursement from Trust Assets for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Liquidating Trust Committee, except for any actions or inactions involving willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or ultra vires acts. Any indemnification claim of the Liquidating Trust Committee shall be satisfied exclusively from the Trust Assets. The Liquidating Trust Committee shall be entitled to rely, in good faith, on the advice of its retained professionals.

### N. **Committee**

The Committee shall dissolve as of the Effective Date and the members of the Committee shall be released and discharged from all authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Case. For the avoidance of doubt, nothing in Section [ ] of the Plan or anywhere else in the Plan is intended to affect in any manner the Committee's Professionals from applying to the Bankruptcy Court for the allowance of professional fee claims incurred through the Effective Date (but not thereafter).

### O. **Plan Implementation Documents**

All exhibits and documents included in the Plan Implementation Documents are incorporated into and are a part of the Plan as if set forth in full in the Plan. All documents required to be filed with the Plan Implementation Documents shall be filed with the Bankruptcy Court at least seven (7) days prior to the date of the commencement of the Confirmation Hearing. Thereafter, any Person may examine the Plan Implementation Documents in the office of the Clerk of the Bankruptcy Court during normal court hours. Copies of the Plan Implementation Documents may also be obtained without charge by contacting Eric J. Taube or Mark C. Taylor at the Waller address listed below.

**P.**       **Exemption from Certain Transfer Taxes**

Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers from Debtor or its Estate to the Liquidating Trust or any other Person pursuant to the Plan in the United States, including any Liens granted by Debtor or its Estate shall not be taxed under any law imposing a stamp tax, real estate transfer tax, sales or use tax, or other similar tax. Such exemption specifically applies, without limitation, to all documents necessary to evidence and implement distributions under the Plan.

**Q.**       **Office of the United States Trustee**

The Liquidating Trustee shall provide the United States Trustee with financial reports on a quarterly basis in the form of affidavits of disbursements and pay all required fees until such time as a final decree is entered in the Chapter 11 Case.

**R.**       **Claims Objections**

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Trustee reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in <u>Article   </u> of the Plan.

**S.**       **Current and Historical Financial Conditions**

A current listing of the estate's assets are included in the most recent monthly operating report filed with the Court and listed on **Exhibit C.**

**III.**       **SUMMARY OF THE CHAPTER 11 PLAN AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

**A.**       **What is the Purpose of the Chapter 11 Plan?**

As required by Chapter 11 of the Bankruptcy Code, the Plan places Creditors and Holders of Equity Interest in various classes and describes the treatment each class will receive on account of their allowed claim amounts. The Plan also provides whether each class of claims or Holders of Equity Interest is impaired or unimpaired. Unimpaired classes will receive payment in full on their allowed claim amounts. Impaired classes will receive either payment in full under circumstances less advantageous than previously agreed upon between the claim holder and the Trustee or pro rata payment of their allowed claim amounts. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan and will be paid on terms set forth in the Plan, as confirmed.

**B.**       **Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Bankruptcy Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Bankruptcy Code.

1.    *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's Chapter 11 case which are allowed pursuant to § 507(a)(2) of the Bankruptcy Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the Petition Date of July 10, 2015. The Bankruptcy Code requires that all administrative expenses be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's and Trustee's estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | Unknown | Paid in full on the effective date of the Plan, or according to terms of obligation if later. |
| Professional Fees, not yet approved by the Bankruptcy Court: | | Paid in full on the Effective Date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Bankruptcy Court on the effective date of the Plan.  Fees are being paid 80% on a monthly basis (and 100% of costs), with the remaining fees paid quarterly. Accordingly, it is not anticipated that accrued and unpaid fees will be substantial. |
| Other administrative expenses | Unknown | Paid in full on the effective date of the Plan or according to separate written agreement. |
| Office of the United States Trustee Fees | Unknown | Paid in full on the effective date of the Plan. |

2.    *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Bankruptcy Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding five (5) years from the order of relief.

The Trustee anticipates that there will be no § 507(a)(8) priority tax claims.

### C.    Classes of Claims and Equity Interests

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

#### 1.    *Priority Claims.*

Any Allowed Priority Claims shall be paid in full on the Effective Date.

#### 2.    *Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Bankruptcy Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, any deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| Class | Description | Impairment | Description of Treatment |
|-------|-------------|------------|--------------------------|
| Class 2 | Other Secured | Unimpaired | Will retain valid liens on Property until such Claims are paid in full. |
| Class 3 | M&M Liens | Unimpaired | Will retain valid liens on Property until such Claims are paid in full. |

#### 3.    *Class 4 General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Bankruptcy Code.

The following chart identifies the Plan's proposed treatment of general unsecured claims against the Debtor:

| Class | Description | Impairment | Treatment |
|-------|-------------|------------|-----------|
| Class 4 | General Unsecured Claims | Impaired | Class 4 creditors will receive a prorata share of interests in the Liquidating Trust, equivalent to the ratio that their individual Allowed Claim bears to the total of Class 4 Allowed Claims. |

| Class 5 | Subordinated Claims | Impaired | Class 5 creditors will receive a pro rata share of interests in the Liquidating Trust, in the percentage that the dollar amount of their individual Allowed Claim bears to the dollar amount of all Allowed Class 5 Claims, to be calculated and paid only after all senior classes are paid in full. |

####    4.    Class 6 Holders of Equity Interest

Holders of Equity Interest are parties who hold an ownership interest in the Debtor. In a limited liability company, the members of the LLC are Holders of Equity Interest.

The following chart sets forth the Plan's proposed treatment of the class of Holders of Equity Interest:

| Class | Description | Impairment | Treatment |
|-------|-------------|------------|-----------|
| Class 6 | Holders of Equity Interest | Impaired | All Equity Interest shall be cancelled under the Plan. Holders of Class 6 Equity Interests shall receive any remaining funds or assets from the Liquidating Trust in the event all senior classes are paid in full. |

**D.    Means of Implementing the Plan**

All assets of the Estate remaining as of the Effective Date, other than as necessary to pay any Allowed Secured Claims, Allowed Priority  Claims, allowed Administrative Claims, pre-Effective Date U.S Trustee's fees and a reserve for wind down costs shall be transferred to the Liquidating Trust.

**E.    Risk Factors**

Assuming that the Plan is confirmed, the Plan's success is not contingent upon the future operations of the Property since it is being conveyed to the Liquidating Trust hereunder.

**F.    Executory Contracts and Unexpired Leases**

The Plan lists all executory contracts and unexpired leases that the Trustee will assume under the Plan. Assumption means that the Trustee has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any.

If you object to the assumption of your unexpired lease or executory contract, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

All executory contracts and unexpired leases that are not listed as being assumed in the Plan or the subject of a separately filed Motion to Assume or Reject will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

***The deadline for filing a proof of claim based on a claim arising from the rejection of a lease or contract is thirty (30) days after the rejection of any lease or contract, notwithstanding the bar date.*** Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Bankruptcy Court orders otherwise.

### G.     Tax Consequences of Plan

***CREDITORS AND HOLDERS OF EQUITY INTEREST CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.***

To the best of the Trustee's knowledge, the Debtor is current on all of its tax obligations and does not anticipate any additional tax consequences related to its Chapter 11 Case or the implementation of the Plan.  To date, the Debtor has been treated as a pass-through entity for tax purposes.

## IV.      CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmed, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Bankruptcy Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity security interest holder at least as much as the creditor or equity interest holder would receive in a Chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A.     Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Trustee believes that the classes of secured creditors (Class(es) 2 and 3) and unsecured creditors (Class(es) 4 and 5) are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.

The Trustee further believes that the holder of Equity Interest in the Debtor (Class 6) is deemed to reject since such class will not receive or retain any property under the Plan and that holders of such interests in this class, therefore, does not have the right to vote to accept or reject the Plan.

### 1. *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Bankruptcy Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

***The deadline set by the Bankruptcy Court for filing a proof of claim in this case was November 11, 2015.***

***The deadline for filing objections to claims has not been set.***

### 2. *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity security interest has the right to vote only if it is in a class which is *impaired* under the Plan. As provided in § 1124 of the Bankruptcy Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3. *Who is **Not** Entitled to Vote?*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Bankruptcy Court;

- holders of other claims or equity interests that are not "allowed claims" or "allowed equity security interests" (as discussed above), unless they have been "allowed" for voting purposes;

- holders of claims or equity interests in unimpaired classes;

- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Bankruptcy Code;

- holders of claims or equity interests in classes that do not receive or retain any value under the Plan; and

- administrative expenses.

*Even if you are not entitled to vote on the Plan, you have a right to object to the confirmation of the Plan and to the adequacy of the Disclosure Statement.*

### 4.    Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for their claim in each different class.

## B.    Votes Necessary to Confirm the Plan

If impaired classes exist, the Bankruptcy Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by cram down on non-accepting classes.

### 1.    Votes Necessary for a Class to Accept the Plan

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

### 2.    Treatment of Non-Accepting Classes

Even if one or more impaired classes reject the Plan, the Bankruptcy Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner prescribed by § 1129(b) of the Bankruptcy Code. A plan that binds non-accepting classes is commonly referred to as a cram-down plan. The Bankruptcy Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Bankruptcy Code, does not discriminate unfairly, and is fair and equitable toward each impaired class that has not voted to accept the Plan.

*You should consult your own attorney if a cramdown confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.*

## C.    Liquidation Analysis

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Holders of Equity Interest who do not accept the Plan will receive at least as much under the Plan as such Creditors and Holders of Equity Interest would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as **Exhibit D**.

## D.    Feasibility

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 1.    Ability to Fund Plan

The Trustee believes that he will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.  The distributions under the Plan are not contingent upon future operations of the Property.

*You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.*

## V.    EFFECT OF CONFIRMATION OF PLAN

## A.    Binding Effect of Confirmation

In accordance with § 1141(a) of the Bankruptcy Code, the provisions of a confirmed plan bind the Debtor, any entity issuing securities under the Plan, any entity acquiring property under the Plan, and any Creditor, equity security holder, or general partner in the Debtor, whether or not the Claim or Interest of such Creditor, equity security holder or general partner is impaired under the Plan and whether or not such Creditor, equity security holder or general partner has accepted the Plan.

## B.    Modification of Plan

The Trustee may modify the Plan at any time before confirmation of the Plan. However, if the Plan is modified, the Bankruptcy Court may require a new disclosure statement and/or re-voting on the Plan.

The Trustee may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

## C.    Final Decree

Once the Estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Trustee, or such other party as the Bankruptcy Court shall designate in the Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a

final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**

DATED: June 22, 2018

Respectfully submitted,

By: /s/ Morris D. Weiss
    Morris D. Weiss
    In his capacity as Chapter 11 Trustee


-and-

By: /s/ Mark C. Taylor
    Eric J. Taube
    State Bar No. 19679350
    Mark C. Taylor
    State Bar No. 19713225
    WALLER LANSDEN DORTCH & DAVIS, LLP
    100 CONGRESS AVENUE, 18TH FLOOR
    AUSTIN, TX 78701
    Telephone: (512) 685.6400
    Facsimile: (512) 685.6417


ATTORNEYS FOR CHAPTER 11 TRUSTEE

-and-


By: /s/ Kenneth Green
    Kenneth Green
    State Bar No. 24036677
    Blake Hamm
    State Bar No. 24069869
    Carolyn Carollo
    State Bar No. 24083437
    SNOW SPENCE GREEN LLP
    2929 Allen Parkway, Suite 2800
    Houston, TX 77019
    Telephone: (713) 335-4800
    kgreen@snowspencelaw.com
    blakehamm@snowspencelaw.com
    carolyncarollo@snowspencelaw.com

ATTORNEYS FOR OFFICIAL COMMITTEE OF
UNSECURED CREDITORS

031459-61671/4833-6965-2809.8

SIGNATURE PAGE FOR DISCLOSURE STATEMENT

## EXHIBIT A

**Plan**

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| ARABELLA PETROLEUM | § | |
| COMPANY, LLC, | § | CASE NO. 15-70098-TMD |
| Debtor. | § | CHAPTER 11 |

## JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR THE DEBTOR, PROPOSED BY CHAPTER 11 TRUSTEE AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Eric J. Taube
State Bar No. 19679350
Mark C. Taylor
State Bar No. 19713225
WALLER LANSDEN DORTCH & DAVIS, LLP
100 Congress Ave., 18th Floor
Austin, Texas 78701
Telephone: (512) 685-6400
Facsimile: (512) 685-6417
eric.taube@wallerlaw.com
mark.taylor@wallerlaw.com

ATTORNEYS FOR CHAPTER 11 TRUSTEE

-and-

Kenneth Green
State Bar No. 24036677
Blake Hamm
State Bar No. 24069869
Carolyn Carollo
State Bar No. 24083437
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, TX 77019
Telephone: (713) 335-4800
kgreen@snowspencelaw.com
blakehamm@snowspencelaw.com
carolyncarollo@snowspencelaw.com

ATTORNEYS FOR OFFICIAL COMMITTEE OF
UNSECURED CREDITORS

Dated: June 22, 2018

# Table of Contents

**ARTICLE 1. DEFINITIONS, RULES OF INTERPRETATION,  AND COMPUTATION OF TIME** .........................................................................................................6

  1.1     Definitions...............................................................................................................6

  1.2     Scope of Definitions; Rules of Construction; Rules of Interpretation; Computation of Time ....................................................................................................................13

**ARTICLE 2. TREATMENT OF UNCLASSIFIED CLAIMS** ...............................................13

  2.1     Administrative Expenses ........................................................................................14

  2.2     U.S. Trustee Fees...................................................................................................14

  2.3     Priority Tax Claims................................................................................................14

  2.4     Professional Fee Claims.........................................................................................14

**ARTICLE 3. CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS** ...........................................................................................................15

  3.1     Introduction...........................................................................................................15

  3.2     Summary of Classes...............................................................................................15

  3.3     Treatment of Classified Claims and Equity Interests ...............................................15

     a.    Class 1 - Other Priority Claims................................................................................15

     b.    Class 2 - Other Secured Claims. ..............................................................................16

     c.    Class 3 - Secured M & M Lien Claims......................................................................16

     d.    Class 4 -Allowed General Unsecured Claims............................................................16

     e.    Class 5 - Subordinated Claims.................................................................................17

     f.    Class 6 - Equity Interests ........................................................................................17

  3.4     Allowed Claims ....................................................................................................17

  3.5     Special Provision Governing Unimpaired Claims.....................................................17

  3.6     Controversy Concerning Impairment ......................................................................17

**ARTICLE 4. MEANS FOR IMPLEMENTATION OF THIS PLAN** ....................................18

  4.1     General Settlement of Claims and Interests...............................................................18

  4.2     Sources of Cash Consideration for Plan Distributions ..............................................18

  4.3     Continued Corporate Existence ..............................................................................18

  4.4     Assigned Actions ..................................................................................................18

  4.5     Preservation of Rights of Action; Settlement of Litigation Claims - Liquidating Trust18

  4.6     Effectuating Documents; Further Transactions .........................................................19

  4.7     The Liquidating Trust ............................................................................................19

     a.    Establishment of the Liquidating Trust.....................................................................19

     b.    Execution of Trust Agreement.................................................................................19

     c.    Purpose of the Liquidating Trust .............................................................................19

     d.    Trust Assets..........................................................................................................19

     e.    Governance of the Liquidating Trust........................................................................20

     f.    The Liquidating Trustee..........................................................................................20

g. General Powers of Liquidating Trustee .................................................20
h. Reporting Obligations..........................................................................23
i. Accounts ..............................................................................................24
j. Deposit of Trust Proceeds....................................................................24
k. Compensation ......................................................................................24
l. Resignation/Removal of the Liquidating Trustee.................................24
m. Appointment of Successor Liquidating Trustee ...................................24
n. Preservation of Rights and Causes of Action ......................................24
o. Records of the Debtor ..........................................................................24
p. Nontransferability of Liquidating Trust Interests ................................24
q. Distribution of Trust Assets.................................................................24
r. Trust Certificates.................................................................................25
s. Federal Income Tax Treatment of the Liquidating Trust......................25
t. Dissolution ..........................................................................................26
u. Indemnification of Liquidating Trustee ...............................................27
4.8 The Liquidating Trust Committee ........................................................27
a. Formation.............................................................................................27
b. Powers of the Liquidating Trust Committee.........................................27
c. Exculpation .........................................................................................28
d. Dissolution ..........................................................................................28
e. Indemnification of Liquidating Trust Committee..................................28

**ARTICLE 5. PROVISIONS GOVERNING DISTRIBUTIONS ...........................................29**

5.1 Delivery of Distributions; Undeliverable or Unclaimed Distributions.......................29
5.2 Withholding and Reporting Requirements ....................................................29
5.3 Setoffs ...................................................................................................29
5.4 De Minimis Distributions ........................................................................30

**ARTICLE 6. PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS ...............................................................30**

6.1 Procedures Regarding Claims ..................................................................30

**ARTICLE 7. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...............................................................................30**

7.1 Assumed Contracts and Leases.................................................................30
7.2 Payments Related to Assumption of Contracts and Leases ........................31
7.3 Rejected Contracts and Leases..................................................................31
7.4 Claims Based upon Rejection of Executory Contracts or Unexpired Leases.............32

**ARTICLE 8. ACCEPTANCE OR REJECTION OF THIS PLAN .........................................32**

8.1 Classes Entitled to Vote..........................................................................32
8.2 Acceptance by Impaired Classes .............................................................32
8.3 Elimination of Classes ............................................................................32
8.4 Nonconsensual Confirmation...................................................................32

**ARTICLE 9. CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS**................................................................**32**

    9.1    Conditions to Confirmation ................................................32
    9.2    Conditions to Effective Date................................................33

**ARTICLE 10. MODIFICATIONS AND AMENDMENTS; WITHDRAWAL**....................**33**

**ARTICLE 11. RETENTION OF JURISDICTION**....................................................**33**

**ARTICLE 12. MISCELLANEOUS PROVISIONS** ................................................**35**

    12.1    Bar Date for Certain Claims ................................................35
      a.    Administrative Expenses ................................................35
    12.2    Professional Fee Claims................................................35
    12.3    Payment of Statutory Fees ................................................35
    12.4    Nonseverability of Plan Provisions................................................35
    12.5    Successors and Assigns................................................36
    12.6    Discharge of Claims................................................36
    12.7    Injunction ................................................36
    12.8    Exculpation and Limitation of Liability ................................................37
    12.9    Binding Effect................................................37
    12.10    Revocation, Withdrawal, or Non-Consummation ................................................37
    12.11    Committee................................................37
    12.12    Plan Supplements................................................38
    12.13    Miscellaneous ................................................38
    12.14    Notices ................................................38
    12.15    Governing Law ................................................39
    12.16    Section 1125(e) of the Bankruptcy Code................................................39
    12.17    Entire Agreement ................................................39

Morris D. Weiss (the "**Trustee**"), chapter 11 trustee for Arabella Petroleum Company, LLC, the debtor in the above-referenced bankruptcy proceeding ("**APC**," or the "**Debtor**") and the Official Committee of Unsecured Creditors for APC (the "**Committee**"), as co-plan proponents (collectively, the "**Plan Proponents**"), jointly propose the following plan of reorganization under chapter 11 of the Bankruptcy Code.

## ARTICLE 1.
## DEFINITIONS, RULES OF INTERPRETATION,
## AND COMPUTATION OF TIME

1.1    Definitions. The following terms used in the Plan shall have the respective meanings defined below:

"Administrative Expense Claim" means a Claim for payment incurred between the Petition Date and the Effective Date, inclusive of an administrative expense of a kind specified in section 503(b)(4) of the Bankruptcy Code and entitled to priority under section 507(a)(2) of the Bankruptcy Code, but shall not include Professional Fee Claims.

"Administrative Expense Bar Date" means the date that is thirty (30) days after the Effective Date.

"Advisors" means, as to any Entity, each of such Entity's financial advisors, investment bankers, Professionals, accountants, consultants, representatives, attorneys and other professionals and each of their respective employees, members, parent corporations, subsidiaries, Affiliates and partners.

"Affiliate" shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

"Allowed" with respect to a Claim other than an Administrative Expense Claim, or any portion thereof, means such a Claim (a) that has been allowed by a Final Order, (b) that was listed in the Schedules or any amendment thereof as neither disputed, contingent nor unliquidated and for which no timely proof of Claim was filed, (d) for which a proof of Claim in a liquidated amount has been timely filed pursuant to the Bankruptcy Code or any Final Order of the Bankruptcy Court and as to which either (i) no objection to its allowance has been filed on or before the Claim Objection Deadline or within any other period fixed by the Bankruptcy Code or the Bankruptcy Court or (ii) any objection to its allowance has been settled, waived through payment, withdrawn, or denied by a Final Order of the Bankruptcy Court, or (d) that is expressly allowed in a liquidated amount in the Plan. With respect to an Administrative Expense Claim, means an Administrative Expense Claim for which a timely request for payment has been made in accordance with the Plan that has been allowed by a Final Order of the Bankruptcy Court.

"Allowed Claim" means a Claim that has been finally allowed either by an order from the Bankruptcy Court, a claim based on a Proof of Claim to which no objection has been filed, or a claim scheduled in the Debtor's Schedules filed in the Bankruptcy Case and not listed as disputed, contingent or unliquidated.

"Allowed General Unsecured Claim" means an Allowed Claim held by an unsecured creditor.

"Allowed Secured Claim" means Allowed Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.

"Allowed Secured M&M Lien Claim" means an Allowed Claim as to which an M&M Lien was filed to the extent that it is an Allowed Secured Claim.

"Assigned Actions" means all Causes of Action of Debtor (including Avoidance Actions). A list of identified potential Causes of Action will be filed as a Plan Supplement.

"Avoidance Actions" means any actions commenced, or that may be commenced, before or after the Effective Date pursuant to section 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code.

"Ballot" means any ballot for voting to accept or reject the Plan.

"Bankruptcy Code" means The Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, as now in effect or hereafter amended.

"Bankruptcy Court" means the United States Bankruptcy Court for the Western District of Texas, Midland Division, including the United States District Court for the Western District of Texas at any time the reference of the Chapter 11 Case to the United States Bankruptcy Court or any matter or proceeding in the Chapter 11 Case, was or shall be withdrawn.

"Bankruptcy Rules" means collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, the Federal Rules of Civil Procedure, as applicable to the Chapter 11 Case or proceedings therein, and the local rules of the Bankruptcy Court, all as now in effect or hereafter amended.

"Business Day" means any day, excluding Saturdays, Sundays or "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in Austin, Texas.

"Cash" means cash and cash equivalents.

"Causes of Action" means all actions, causes of action (including Avoidance Actions), liabilities, obligations, rights, suits, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims or causes of action whatsoever, whether known or unknown, matured or unmatured, fixed or contingent, liquidated or unliquidated, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date.

"Chapter 11 Case" means the chapter 11 case of the Debtor.

"Claim" means a claim, as defined in section 101(5) of the Bankruptcy Code, against the Debtor.

"Claim Objection Deadline" means the first Business Day that is the latest of (i) 30 days after the Effective Date; or (ii) such other date as may be established by the Bankruptcy Court.

"Class" means one of the classes of Claims or Equity Interests described in the Plan.

"Committee" means the official committee of unsecured creditors appointed in the Chapter 11 Case for Arabella Petroleum Company, LLC on July 24, 2015, as such committee may be reconstituted from time to time and as its role may be expanded by the United States Trustee from time to time.

"Confirmation" means the Bankruptcy Court's entry of the Confirmation Order on the docket in the Chapter 11 Case, in accordance with section 1129 of the Bankruptcy Code and subject to all conditions specified in this Plan.

"Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

"Confirmation Hearing" means the Bankruptcy Court's hearing on Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as it may be adjourned or continued from time to time.

"Confirmation Order" means the Bankruptcy Court's order confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

"Cure" means the payment of Cash by the Debtor, or the Distribution of other property, as necessary to cure a default by the Debtor under an executory contract or unexpired lease of the Debtor and to permit the Debtor to assume such contract or lease under section 365(a) of the Bankruptcy Code.

"Debtor" means Arabella Petroleum Company, LLC on and after the Petition Date.

"Disallowed Claim" means any Disputed Claim against the Debtor that is disallowed, in whole or in part, by Final Order of the Bankruptcy Court, or that has been withdrawn, in whole or in part, by the Holder thereof.

"Disclosure Statement" means the written disclosure statement that relates to the Plan in the form approved by the Bankruptcy Court, as amended, supplemented or modified from time to time.

"Disputed Claim" means a Claim against the Debtor (a) that is listed in the Debtor's Schedules as disputed, contingent, or unliquidated; (b) that is listed in the Debtor's Schedules as undisputed, liquidated, and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; (c) that is not listed in the Schedules but as to which a proof of Claim has been timely, or deemed timely, filed with the Bankruptcy Court; or (d) as to which an objection has been, or may be,

timely filed and has not been overruled by a Final Order. To the extent an objection related to the allowance of only a part of a Claim has been timely filed, such Claim shall be a Disputed Claim only to the extent of the objection.

"Distribution" means any distribution made under the Plan to the Holders of Allowed Claims.

"Distribution Date" means the Effective Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter) or, if not the Effective Date, such date occurring as soon as reasonably practicable after the Effective Date, on which the Liquidating Trust first makes Distributions to Holders of Allowed Claims as provided in the Plan.

"Effective Date" means the date that is the first Business Day after the Confirmation Date on which the (a) conditions to the Plan's consummation set forth herein have been satisfied or waived and (b) no stay of the Confirmation Order is in effect, but in no event less than the first business day after the expiration of fourteen (14) days following entry of the Confirmation Order.

"Entity" shall have the meaning set forth in section 101(15) of the Bankruptcy Code, including all Persons.

"Equity Interests" means any "equity security" (as defined in § 101(16) of the Bankruptcy Code) in Debtor.

"Estate" means the estate of the Debtor in the Chapter 11 Case, as created under section 541 of the Bankruptcy Code.

"Executory Contract" means any prepetition executory contract or unexpired lease governed by section 365 of the Bankruptcy Code.

"Exculpated Party" means each member of the Committee in its capacity as such, counsel for the Committee, the Chapter 11 Trustee, counsel for the Chapter 11 Trustee and the accountant for the Chapter 11 Trustee.

"Face Amount" means when used in reference to (a) a Disputed Claim, the full stated amount claimed by the Holder thereof in any proof of Claim timely filed with the Bankruptcy Court, (b) an Allowed Claim, the Allowed amount thereof, and (c) an Equity Interest, the number of shares evidencing such Equity Interests or the liquidation preference amount, as applicable.

"Final Order" means, as applicable, an order or judgment, entered by the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, that has not been amended, modified or reversed, and as to which (i) no stay is in effect, (ii) the time to seek rehearing, file a notice of appeal or petition for certiorari has expired, (iii) no appeal, request for stay, petition seeking certiorari, or other review has been timely filed and is pending and (iv) any appeal that has been taken, any petition for certiorari, or motion for a new trial, reargument or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided,

however, that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule (whether federal or state) may be but has not then been filed with respect to such order shall not cause such order not to be a Final Order.

"Holder" and, collectively, "Holders," means a Person or Entity legally or beneficially, as applicable, holding a Claim or Equity Interest.

"Impaired" means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"Impaired Claim" means a Claim classified in an Impaired Class.

"Impaired Class" means each of Classes 4, 5, and 6, as set forth in Article 3 of the Plan.

"Joint Operating Agreements" mean the Joint Operating Agreements identified in **Exhibit**   with respect to the indicated Oil and Gas Properties.

"Lien" means any lien, lease, right of first refusal, servitude, claim, pledge, option, charge, hypothecation, easement, security interest, right-of-way, encroachment, mortgage, deed of trust, and/or any other encumbrance, restriction or limitation whatsoever.

"Liquidating Trust" means the "APC Liquidating Trust," which is to be established pursuant to the terms of this Plan.

"Liquidating Trust Agreement" means the trust agreement governing the Liquidating Trust dated as of the Effective Date, substantially in the form included in the Plan Supplements.

"Liquidating Trust Committee" means the four (4) member board established to oversee, review and guide the activities and performance of the Liquidating Trustee. Members of the Liquidating Trust Committee appointed by the Committee are Baker Hughes Oilfield Operations, Inc.; Buckeye, Inc.; Jet Specialty, Inc.; and Crossfire LLC.

"Liquidating Trustee" means the trustee of the Liquidating Trust as set forth in the Liquidating Trust Agreement.

"Liquidating Trust Professionals" means attorneys, accountants or other professionals that may be retained by the Liquidating Trustee.

"M&M Lien" means a lien pursuant to Chapter 56 of the TEX. PROP. CODE to secure payment for services, equipment or materials furnished in connection with mineral activities which is timely filed and properly perfected.

"M&M Lien Claim" means a claim based on an M&M Lien.

"Oil and Gas Properties" mean all of Debtor's right, title and interest in (i) oil and gas mineral leases, (ii) units, (iii) wells, (iv) surface interests, (v) easements, (vi) right of ways, (vii) equipment, inventory, and fixtures used in connection with the leases and wells.

"Other Priority Claim" means a Claim entitled to priority under section 507(a) of the Bankruptcy Code, other than Allowed Priority Tax Claims, Allowed Administrative Expense Claims, and Allowed Professional Fee Claims.

"Other Secured Claim" means a Secured Claim other than an M&M Lien Claim.

"Person" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

"Petition Date" means July 10, 2015, the date on which the Debtor filed its voluntary petition for relief commencing the Chapter 11 Case.

"Plan" or "Plan of Reorganization" means this chapter 11 plan of reorganization, including the exhibits and schedules hereto, as the same may be amended, modified or supplemented from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

"Plan Proponents" means the Trustee and the Committee.

"Plan Supplement" means the compilation of documents and forms of documents, all of which may be amended, modified, replaced and/or supplemented from time to time, to be filed with the Bankruptcy Court on or before the date that is seven (7) days prior to the Confirmation Hearing. Any reference to the Plan Supplement in this Plan shall include each of the documents identified above.

"Priority Tax Claim" means any Claim that is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

"Professional" means a professional Person, as that term is used in sections 327 and 1103 of the Bankruptcy Code.

"Professional Fee Claim" means a Professional's Claim for compensation or reimbursement of costs and expenses under sections 327, 328, 330, 331, 503(b) (other than 503(b)(4)) or 1103 of the Bankruptcy Code for services rendered to the Debtor, the Trustee, the Liquidating Trustee, or the Committee on and after the Petition Date but before and including the Effective Date.

"Pro Rata" means, at any time, with respect to any Class, the proportion that the Face Amount of a Holder's Allowed Claim in such Class bears to the aggregate Face Amount of all Allowed Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class.

"Reinstated" or "Reinstatement" means (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim so as to leave such Claim Unimpaired; or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of a Claim to demand or receive accelerated payment of such Claim after the occurrence of a default: (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) expressly does not require to be cured; (ii) reinstating the maturity (to the extent such maturity has not otherwise accrued by the passage of time) of such Claim as such maturity

existed before such default; (iii) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim arises from a failure to perform a nonmonetary obligation other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(l)(A), compensating the Holder of such Claim (other than a Debtor or an insider) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder.

"Schedules" means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules and statements have been or may be supplemented or amended.

"Secured Claim" means a Claim that is a "secured claim" within the meaning of § 506(a)(l) of the Bankruptcy Code.

"Solicitation" means the solicitation by the Debtor from Holders of Claims entitled to vote on the Plan pursuant to section 1126(b) of the Bankruptcy Code.

"Statement of Financial Affairs" means the Statement of Financial Affairs (and any amendments or supplements thereto) filed in this Bankruptcy Case.

"Subordinated Claim" means a Claim (i) arising in connection with the sale or purchase of a security of the Debtor or an Affiliate of the Debtor, (ii) arising from a rescission of a purchase or sale of a security of the Debtor or an Affiliate of the Debtor, (iii) for reimbursements or contributions allowed under Bankruptcy Code § 502 on account of a Claim disallowed in (i) or (ii) above, (iv) by an insider or an Affiliate of the Debtor (as those terms are defined in the Bankruptcy Code) (other than the Intercompany Claims) or by an Entity of which the Debtor is an insider or an Affiliate, (v) by a prepetition officer or director of the Debtor, (vi) based on fines, penalties, forfeitures or exemplary or punitive damages, or (viii) otherwise subordinated pursuant to 11 U.S.C. § 510.

"Trust Assets" means all property and contract rights and Assigned Actionstransferred to the Liquidating Trust pursuant to the Plan, the Confirmation Order or the Plan Supplements, all of which shall vest in the Liquidating Trust on the Effective Date pursuant to the Plan and in accordance with the Trust Agreement.

"Trust Interests" mean the beneficial interests in the Liquidating Trust as set forth in the Trust Agreement.

"Trust Operating Expense Account" means a separate account established by the Liquidating Trustee at a commercial banking institution.

"Trust Operating Expense Reserve" means a reserve established by the Liquidating Trustee sufficient to pay estimated fees and expenses of the Liquidating Trust for a six (6) month period subsequent to a Distribution to Holders of General Unsecured Claims.

"Unexpired Lease" means any prepetition executory contract or unexpired lease governed by section 365 of the Bankruptcy Code.

"Unimpaired" means, with respect to a Claim (or Class of Claims), a Claim (or Class of Claims) that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

"Unimpaired Class" means Classes 1, 2 and 3, as set forth in Article 3 of the Plan.

"Unsecured Claim" means any Claim that is not (i) a Secured Claim, (ii) an M & M Lien Claim or (iii) entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court and any Claim arising from the rejection of an Executory Contract or Unexpired Lease under section 365 of the Bankruptcy Code.

    1.2    <u>Scope of Definitions; Rules of Construction; Rules of Interpretation; Computation of Time</u>. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter. Unless otherwise specified, all section, article, schedule, or exhibit references in this Plan are to the respective section in, article of, or schedule or exhibit to this Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein. A term used in this Plan that is not defined in this Plan shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to this Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

    a.    In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) will apply. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions. Any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to this Plan. Any reference to an Entity as a Holder of a Claim includes that Entity's legal successors and assigns.

    b.    All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

## ARTICLE 2.
## TREATMENT OF UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(l) of the Bankruptcy Code, Administrative Expense Claims, Priority Tax Claims and Professional Fee Claims are not classified and are not entitled to vote on this Plan.

2.1     Administrative Expenses. Except to the extent that any Entity entitled to payment of any Allowed Administrative Expense Claim agrees to a less favorable treatment, each Holder of an Allowed Administrative Expense Claim shall receive Cash equal to the unpaid portion of its Allowed Administrative Expense Claim, on the latest of (a) the Distribution Date, (b) the date on which its Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or (c) the date on which its Administrative Expense Claim becomes payable under any agreement relating thereto, or as soon thereafter as is reasonably practicable. Notwithstanding the foregoing, (i) all fees of the office of the United States Trustee and (ii) any Allowed Administrative Expense Claim based on a liability incurred by the Debtor in the ordinary course of business during the Chapter 11 Case shall be paid by the Trustee as administrative expenses in the ordinary course of the Debtor's businesses, in accordance with the terms and conditions applied to the United States Trustee fees or of any agreement relating to such other administrative expenses or upon such other terms as may be agreed upon between the Holder of such Claim and the Debtor, without application by or on behalf of any such parties to the Bankruptcy Court, and without notice and a hearing.

Applications for payment of Administrative Expense Claims (including requests for compensation under section 503(b)(3) and (4) of the Bankruptcy Code) must be filed with the Bankruptcy Court and served on the Trustee and Liquidating Trustee no later than the Administrative Expense Bar Date. Applications for payment of Administrative Expense Claims filed after this date shall be discharged, forever barred and shall receive no payment under this Plan. Notwithstanding the foregoing, Holders of Administrative Expense Claims of the type described in clauses (i) and (ii) of the preceding paragraph shall not be required to file applications for payment.

2.2     U.S. Trustee Fees. All fees payable under section 1930 of title 28 of the United States Code shall be paid on or before the Effective Date. All such fees that arise after the Effective Date but before the closing of the Chapter 11 Case shall be paid by the Liquidating Trustee.

2.3     Priority Tax Claims. Except to the extent that a Holder of a Priority Tax Claim agrees to less favorable treatment, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, on the later of (a) the Distribution Date or (b) the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim, (x) Cash equal to the unpaid portion of such Allowed Priority Tax Claim or (y) such other treatment as to which the Trustee and such Holder shall have agreed upon in writing. The Holder of an Allowed Priority Tax Claim will not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the Allowed Priority Tax Claim. Any such Claim or demand for any such penalty will be subject to treatment in Class 4.

2.4     Professional Fee Claims. Unless otherwise ordered by the Bankruptcy Court, the Holders of Professional Fee Claims shall file their respective final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later than the date that is thirty (30) days after the Effective Date. If granted by the Bankruptcy Court, such Claim shall be paid in full in such amount as is Allowed by the Bankruptcy Court on the date such Professional Fee Claim becomes an Allowed

Professional Fee Claim, or as soon as reasonably practicable thereafter. The Trustee shall be responsible for and timely pay one hundred percent (100%) of the Allowed Professional Fee Claims.

## ARTICLE 3.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

3.1     Introduction. This Plan places all Claims and Equity Interests, except unclassified Claims provided for in Article 2, in the Classes listed below. Unless otherwise stated, a Claim or Equity Interest is placed in a particular Class only to the extent that it falls within the description of that Class, and is classified in any other Class to the extent that any portion thereof falls within the description of such other Class.

3.2     Summary of Classes.

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Other Priority Claims | Unimpaired | No (deemed to accept) |
| Class 2 | Allowed Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 3 | Allowed Secured M&M Lien Claims | Unimpaired | No (deemed to accept) |
| Class 4 | Allowed General Unsecured Claims | Impaired | Yes |
| Class 5 | Subordinated Claims | Impaired | Yes |
| Class 6 | Equity Interests | Impaired | Yes |

3.3     Treatment of Classified Claims and Equity Interests.

a.     *Class 1 - Other Priority Claims.*

(i)     Claims in Class: Class 1 consists of all Allowed Other Priority Claims.

(ii)     Treatment: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, each Holder of an unpaid Allowed Other Priority Claim against the Debtor shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Other Priority Claim, Cash equal to the full amount of its Allowed Other Priority Claim by the Trustee, as applicable in the ordinary course of business.

(iii)     Voting: Class 1 is Unimpaired by the Plan. Pursuant to section 1126(f) of the Bankruptcy Code, each Holder of an Allowed Other Priority Claim in Class 1 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

b. *Class 2 - Other Secured Claims.*

(i)    <u>Claims in Class</u>: Class 2 consists of all Allowed Other Secured Claims.

(ii)    <u>Treatment</u>: Except to the extent a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, on the latest of (x) the Effective Date, (y) the date on which an Other Secured Claim becomes an Allowed Other Secured Claim, and (z) such other date as may be ordered by the Bankruptcy Court, or, in each case, as soon as reasonably practicable thereafter, each Allowed Other Secured Claim shall be, at the election of the Debtor: (i) Reinstated, (ii) paid in Cash, in full satisfaction, settlement, release and discharge of such Allowed Other Secured Claim, (iii) satisfied by the Debtor's surrender of the collateral securing such Allowed Other Secured Claim, or (iv) offset against, and to the extent of, the Debtor's claims against the Holder of such Allowed Other Secured Claim.

(iii)    <u>Voting</u>: Class 2 is Unimpaired by the Plan. Pursuant to section 1126(f) of the Bankruptcy Code, each Holder of an Allowed Other Secured Claim in Class 2 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

c. *Class 3 - Secured M & M Lien Claims*

(i)    <u>Claims in Class</u>: Class 3 consists of Allowed Secured M & M Lien Claims.

(ii)    <u>Treatment</u>: Except to the extent a Holder of an Allowed Secured M & M Lien Claim agrees to less favorable treatment, on the latest of (x) the Effective Date, (y) the date on which a Secured M & M Lien Claim becomes an Allowed Secured M & M Lien Claim, and (z) such other date as may be ordered by the Bankruptcy Court, or, in each case, as soon as reasonably practicable thereafter, each Allowed Secured M & M Lien Claim shall be, at the election of the Debtor: (i) Reinstated, (ii) paid in Cash, in full satisfaction, settlement, release and discharge of such Allowed Secured M & M Lien Claim, (iii) satisfied by the Debtor's surrender of the collateral securing such Allowed Secured M & M Secured Claim, or (iv) offset against, and to the extent of, the Debtor's claims against the Holder of such Allowed Secured M & M Lien Claim.

(iii)    <u>Voting</u>: Class 3 is Unimpaired by the Plan. Pursuant to section 1126(f) of the Bankruptcy Code, each Holder of an Allowed M & M Lien Claim in Class 3 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

d. *Class 4 -Allowed General Unsecured Claims.*

(i)    <u>Claims in Class</u>: Class 4 consists of all Allowed General Unsecured Claims against the Debtor.

(ii)     Treatment: Each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of Trust Distributions with other Class 4 creditors in accordance with Article 3 of the Plan and the Trust Agreement.

(iii)     Voting: Class 4 is Impaired by the Plan. Each Holder of an Allowed General Unsecured Claim in Class 4 is entitled to vote on the Plan.

e.     *Class 5 - Subordinated Claims.*

(i)     Claims in Class: Class 5 consists of Subordinated Claims.

(ii)     Treatment: Each Holder of an Allowed Subordinated Claim shall receive its Pro Rata share of Trust Distributions with other Class 5 creditors in accordance with Article 3 of the Plan and the Trust Agreement. No payment or transfer shall be made for or on account of a Subordinated Claim until all obligations under the Plan to Holders of Classes 1 through 4 Claims are satisfied in full.

(iii)     Voting: Class 5 is Impaired by the Plan. Each Holder of a Subordinated Claim in Class 5 is entitled to vote on the Plan.

f.     *Class 6 - Equity Interests.*

(i)     Claims in Class: Class 6 consists of Equity Interests.

(ii)     Treatment:   The Equity Interests will be canceled as of the Effective Date. Each Holders of a Class 6 Equity Interest shall receive its Pro Rata share of Trust Distributions with other Class 6 creditors in accordance with Article 3 of the Plan and the Trust Agreement. No payment or transfer shall be made for or on account of an Equity Interest until all obligations under the Plan to Holders of Classes 1 through 5 Claims are satisfied in full.

(iii)     Voting: Class 6 is Impaired by the Plan. Each Holder of an Equity Interest in Class 6 is entitled to vote on the Plan.

3.4     Allowed Claims. Notwithstanding any provision herein to the contrary, the Trustee shall make all payments with respect to Classes 1, 2 and 3. The Liquidating Trust shall only make Distributions on account of Classes 3 (only to the extent not paid by the Trustee), 4, 5 and 6 Claims.

3.5     Special Provision Governing Unimpaired Claims. Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtor's rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

3.6     Controversy Concerning Impairment. If a controversy arises as to whether any Claims, or any Class of Claims, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE 4.
## MEANS FOR IMPLEMENTATION OF THIS PLAN

4.1 <u>General Settlement of Claims and Interests</u>. Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan. The conveyances by Trustee to the Liquidating Trust pursuant to the Plan shall constitute a sale free and clear of Liens, Claims and encumbrances pursuant to 11 U.S.C. § 363 with any affected Liens, Claims or encumbrances being treated in accordance with the terms of the Plan.

4.2 <u>Sources of Cash Consideration for Plan Distributions</u>. The Trustee shall fund payments under the Plan with Cash on hand. Any Distributions made by the Liquidating Trustee to beneficiaries of the Liquidating Trust shall consist only of Trust Assets in accordance with the Trust Agreement.

4.3 <u>Continued Corporate Existence</u>. Except as otherwise provided in the Plan, the Reorganized Debtor shall be wound up and its corporate existence shall be terminated by the Trustee.

4.4 <u>Assigned Actions</u>. On the Effective Date, the Assigned Actions shall be assigned to the Liquidating Trust.

4.5 <u>Preservation of Rights of Action; Settlement of Litigation Claims - Liquidating Trust</u>. For the avoidance of doubt, and notwithstanding anything to the contrary herein, all Assigned Actions are preserved as they existed immediately before the Effective Date for the Liquidating Trustee to prosecute on behalf of the Liquidating Trust. The Liquidating Trust shall be vested with and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) the Assigned Actions of the Debtor or its Estate against any Entity without further approval of the Bankruptcy Court whether arising before or after the Petition Date and the Liquidating Trust's rights to commence, prosecute, or settle such Assigned Action shall be preserved notwithstanding the occurrence of the Effective Date. The Liquidating Trustee shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Assigned Action and to decline to do any of the foregoing without the consent or approval of any third party (other than the Liquidating Trust Committee to the extent provided in Section _____ or further notice to or action, order, or approval of the Bankruptcy Court. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplements, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtor, the Reorganized Debtor, the Liquidating Trustee or the Liquidating Trust will not pursue any and all Assigned Action against it. The Liquidating Trustee expressly reserves all rights to prosecute any and all Assigned Actions against any Entity.** The Liquidating Trust and Liquidating Trustee expressly reserves all Assigned Actions, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel judicial, equitable, or otherwise), or laches, shall apply to such Assigned Action upon, after, or as a consequence of Confirmation of the Plan. As to the

Assigned Actions contributed to the Liquidating Trust, the Liquidating Trustee shall constitute the representative of the bankruptcy Estate for purposes of retaining, asserting and/or confirming claims or Assigned Actions under Section 1123(b)(3)(b) of the Bankruptcy Code.

      4.6    <u>Effectuating Documents; Further Transactions</u>. On and after the Effective Date, the Trustee or Liquidating Trustee are authorized to and may issue, execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents, including the Plan Supplements, and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

      4.7    <u>The Liquidating Trust</u>.

      a.    *Establishment of the Liquidating Trust.* On the Effective Date, the Liquidating Trust shall be established for the benefit of the Holders of Allowed Secured M&M Lien Claims and Allowed General Unsecured Claims. This Section sets forth certain of the rights, duties, and obligations of the Liquidating Trustee. In the event of any conflict between the terms of this Section and the terms of the Trust Agreement, the terms of the Trust Agreement shall govern.

      b.    *Execution of Trust Agreement.* On the Effective Date, the Trust Agreement shall be executed, and all other necessary steps shall be taken to establish the Liquidating Trust and the beneficial interests therein. The form of the Trust Agreement and related ancillary documents shall be acceptable to the Creditors' Committee in its sole discretion, subject only to Bankruptcy Court approval at the Confirmation Hearing.

      c.    *Purpose of the Liquidating Trust.* The Liquidating Trust shall be established for the sole purpose of liquidating and distributing the Trust Assets to the Holders of Trust Interests in the Liquidating Trust, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or to engage in the conduct of a trade or business. The Liquidating Trust, through the Liquidating Trustee, shall (i) collect and reduce the Trust Assets to Cash, (ii) prosecute, settle and otherwise administer the Assigned Actions, (iii) make Distributions to the beneficiaries of the Liquidating Trust in accordance with the Plan and Trust Agreement and (iv) take all such actions as are reasonably necessary to accomplish the purpose hereof, as more fully provided in the Trust Agreement.

      d.    *Trust Assets.* The Liquidating Trust shall consist of the Trust Assets. On the Effective Date, all Transfers to the Liquidating Trust provided for under this Plan shall be made by the applicable party, including the following (1) cash, less reserves necessary to pay any claims senior to Class 4, accrued administrative expenses, U.S. Trustee fees accrued for the period through the Effective Date and a reserve for wind-down expenses; (ii) all Assigned Actions; and (iii) all other remaining property interests of the Debtor, including, but not limited to, any assumed contracts. On the Effective Date, the Trust Assets, including the Assigned Actions, shall automatically vest in the Liquidating Trust, free and clear of all Liens, Claims and encumbrances.

e. *Governance of the Liquidating Trust.* The Liquidating Trust shall be governed by the Liquidating Trust Committee in accordance with the Trust Agreement and consistent with the Plan. Any three members of the Liquidating Trust Committee shall constitute a quorum for voting and approval purposes. Whenever such quorum is present, the vote of a majority of such quorum shall be binding on the Liquidating Trust Committee and the Liquidating Trust.

f. *The Liquidating Trustee.* The Creditors' Committee shall select the Liquidating Trustee, subject only to Court approval at the Confirmation Hearing. With respect to the Trust Assets, the Liquidating Trustee shall be a representative of the Estate pursuant to section 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code. The Liquidating Trustee may prosecute, settle and otherwise administer the Assigned Actions on behalf of the Liquidating Trust, without the need for Bankruptcy Court approval or any other notice or approval, except as set forth in the Trust Agreement, and shall also have standing and authority to object to any Claims filed against the Debtor's Estate or scheduled by the Debtor that purport to qualify as an Allowed Secured M&M Lien Claim or Allowed General Unsecured Claim under the terms of the Plan, including, without limitation, pursuant to section 502(d) of the Bankruptcy Code. The Liquidating Trustee shall be exempt from giving any bond or other security in any jurisdiction.

g. *General Powers of Liquidating Trustee.* The Liquidating Trustee, on behalf of the Liquidating Trust, shall have all of the rights, powers and privileges set forth in this Plan, the Confirmation Order, and the Trust Agreement. Subject to obtaining the approval of the Liquidating Trust Committee to the extent required by his Plan, the Liquidating Trustee is authorized and shall have the obligation to take all such actions as in his/her judgment are necessary and appropriate to effectuate the purposes of the Plan, including but not limited to the following:

(i) Perform the duties, exercise the powers, and assert the rights of a trustee under Sections 704 and 1106 of the Bankruptcy Code with respect to the Trust Assets or Liquidating Trust, including, without limitation, commencing, prosecuting or settling Assigned Actions contributed to the Liquidating Trust, enforcing contracts, and asserting claims, defenses, offsets and privileges;

(ii) Hold legal title to any and all rights of the beneficiaries of the Liquidating Trust in or arising from the Trust Assets, including, without limitation, collecting, receiving any and all money and other property belonging to the Liquidating Trust and the right to vote any claim or interest in a case under the Bankruptcy Code and receive any Distribution therein;

(iii) Make Distributions to the Holders of Allowed Secured M&M Lien Claims and Allowed General Unsecured Claims contemplated under the Plan and Trust Agreement;

(iv) Supervise and administer the reconciliation, resolution and settlement of Allowed Secured M&M Lien Claims and Allowed General Unsecured Claims and the Distributions to the Holders of Allowed Secured M&M Lien Claims and Allowed General Unsecured Claims in accordance with the Plan;

(v)     Enter into any agreement on behalf of the Liquidating Trust required by or consistent with the Plan and perform all of the obligations required of the Liquidating Trustee under the Trust Agreement or the Plan;

(vi)    With the prior approval of the Liquidating Trust Committee, abandon any of the assets of the Liquidating Trust if the Liquidating Trustee concludes that such assets are of no net benefit to Allowed Secured M&M Lien Claims and Allowed General Unsecured Claim Holders;

(vii)   Participate in or initiate any proceeding with respect to the Trust Assets before the Bankruptcy Court or any other court of appropriate jurisdiction and participate as a party or otherwise in any administrative, arbitrative or other non-judicial proceeding and litigate claims on behalf of the Liquidating Trust, including all Assigned Actions;

(viii)  Participate as a party-in-interest in any proceeding with respect to the Trust Assets or the Liquidating Trust before the United States Bankruptcy Court involving the Chapter 11 Case;

(ix)    With the prior approval of the Liquidating Trust Committee, participate in or initiate, prosecute and settle an objection to allowance of any General Unsecured Claim or M&M Lien Claim without approval of the Bankruptcy Court;

(x)     Protect and enforce the rights to the Trust Assets by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(xi)    Take actions and exercise remedies (including, but not limited to, those provided under the Plan Supplements) against any Entity that owes an obligation to the Liquidating Trust;

(xii)   Subject to the prior approval of the Liquidating Trust Committee, retain and pay such Liquidating Trust Professionals as the Liquidating Trustee may select to assist the Liquidating Trustee in its duties, on such terms as the Liquidating Trustee deems appropriate, without Bankruptcy Court approval. For the avoidance of doubt, the engagement of any professionals by the Liquidating Trust must be approved in advance by the Liquidating Trust Committee. Subject to Liquidating Trust Committee approval, the Liquidating Trustee may commit the Liquidating Trust to and shall pay Liquidating Trust Professionals reasonable compensation for services rendered and expenses incurred and may engage counsel on a contingent basis. A law firm or professional shall not be disqualified from serving as a Liquidating Trust Professional solely because of its current or prior retention as counsel or professional to the parties in interest in the Case;

(xiii)  Retain and pay such third parties as the Liquidating Trustee may deem necessary or appropriate to assist the Liquidating Trustee in carrying out its powers and duties under the Trust Agreement, subject to Liquidating Trust Committee approval. Subject to Liquidating Trust Committee approval, the Liquidating Trustee may commit the Liquidating Trust to and shall pay all such Persons reasonable compensation for services rendered and

expenses incurred, as well as commit the Liquidating Trust to indemnify any such parties in connection with the performance of services;

(xiv)     Employ such employees as the Liquidating Trustee, and as consistent with the purposes of the Liquidating Trust, may deem necessary or appropriate to assist the Liquidating Trustee in carrying out its powers and duties under this Trust Agreement. The Liquidating Trustee may commit the Liquidating Trust to and shall pay all such employees reasonable salary in the amounts it shall determine to be appropriate and any employee benefits it may establish. If the Liquidating Trustee employs employees, the Liquidating Trustee shall establish payroll procedures and pay any and all federal, state or local tax withholding required under applicable law with respect to any such employees, and it will take all other actions it deems necessary;

(xv)     Assert or waive any privilege or defense on behalf of the Liquidating Trust or, with respect to the Trust Assets, as provided in the Trust Agreement or this Plan;

(xvi)     Subject to prior approval by the Liquidating Trust Committee, compromise, adjust, arbitrate, sue on or defend, pursue, prosecute. abandon, exercise rights, powers, and privileges with respect to, or otherwise deal with and settle, in accordance with the terms set forth herein, all Causes of Action in favor of or against the Liquidating Trust as the Liquidating Trustee shall deem advisable;

(xvii)     Execute offsets and assert counterclaims against M&M Lien Claims or General Unsecured Claims as part of an objection to any M&M Lien Claim or General Unsecured Claim, but only up to the amount of the General Unsecured Claim or M&M Lien Claim;

(xviii)     Invest any moneys held as part of the Liquidating Trust in accordance with the terms of the Trust Agreement, limited, however, to such investments that are consistent with the Liquidating Trust's status as a Liquidating Trust within the meaning of Treasury Regulations Section 301.7701-4(d);

(xix)     Request any appropriate tax determination with respect to the Liquidating Trust, including, without limitation, a determination pursuant to section 505 of the Bankruptcy Code;

(xx)     Take or refrain from taking any and all actions the Liquidating Trustee reasonably deems necessary or convenient for the continuation, protection and maximization of the Trust Assets or to carry out the purposes hereof;

(xxi)     Assume such other powers as may be vested in or assumed by the Liquidating Trust pursuant to the Plan or Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan or the Trust Agreement;

(xxii)     Establish and maintain such bank accounts, to draw checks on such bank accounts and perform such other necessary and appropriate duties with respect to such

accounts, or designate individuals as signatories therefore, as the Liquidating Trustee may direct and authorize;

(xxiii)     Invest or reinvest Trust Assets and to cause such investments, or any part thereof, to be registered and held in its name, as Liquidating Trustee, or in the name of nominees;

(xxiv)     Hold any unclaimed Distribution or payment to the Holder of an Allowed General Unsecured Claim or Allowed Secured M&M Lien Claim in accordance with the Plan and the Trust Agreement;

(xxv)     Propose (but not require) any amendment, modification or supplement to the Plan or the Trust Agreement with respect to Trust Assets or the Liquidating Trust that is not inconsistent with the Plan;

(xxvi)     File dissolution/termination documents with the appropriate governmental agencies to dissolve the Liquidating Trust;

(xxvii)     Receive, conserve and manage the Trust Assets, and sell, pursuant to 11 U.S.C. § 1123(a)(5) and the Plan, or otherwise dispose of such assets for a price and upon such terms and conditions as the Liquidating Trustee deems most beneficial to the Holders of Allowed General Unsecured Claims and Allowed Secured M&M Lien Claims that are approved by the Liquidating Trust Committee and execute such instruments in connection therewith;

(xxviii)     Pay all taxes, if any, properly payable by the Liquidating Trust, make all tax withholdings and file tax returns and tax information returns with respect to the Liquidating Trust, and make tax elections by and on behalf of the Liquidating Trust;

(xxix)     Pay all lawful expenses, debts, charges and liabilities of the Liquidating Trust or relating to the Trust Assets;

(xxx)     Establish such reserves for taxes, assessments and other expenses of administration of the Liquidating Trust as may be necessary and appropriate for the proper operation of matters incident to the affairs of the Liquidating Trust; and

(xxxi)     Exercise such other powers ·and duties as are necessary or appropriate in the Liquidating Trustee's discretion to accomplish the purposes of the Plan.

      h.     *Reporting Obligations.*

(i)     The Liquidating Trustee shall cause to be prepared a semi-annual report setting forth (a) receipts and disbursements during the period, (b) a schedule of all asset dispositions, (c) a schedule of Distributions made, and (c) a summary listing of the status of the resolution of objections to General Unsecured Claims and M&M Lien Claims and Assigned Actions. Such semi-annual report shall be distributed to the Liquidating Trust Committee within fifteen (15) Business Days after the end of the relevant report preparation period.

(ii)  The Liquidating Trustee shall maintain records and books of account relating to the Trust Assets, the management thereof and all transactions undertaken by the Liquidating Trustee on behalf of the Liquidating Trust. The Liquidating Trustee shall also maintain records and books of account relating to all Distributions contemplated under the Plan.

i.  *Accounts.* Within five (5) Business Days of the Effective Date, the Liquidating Trustee shall establish the Liquidating Trust bank account(s).

j.  *Deposit of Trust Proceeds.* The Liquidating Trustee shall deposit Cash upon receipt.

k.  *Compensation.* The Liquidating Trustee and the Liquidating Trust Professionals employed by it shall be entitled to payment of their fees and reimbursement of all reasonable expenses on a monthly basis from Trust Assets pursuant to the terms of the Trust Agreement, without Bankruptcy Court approval.

l.  *Resignation/Removal of the Liquidating Trustee.* The Liquidating Trustee may resign at any time by filing a written notice of resignation with the Bankruptcy Court. Any such resignation shall become effective on the earlier to occur of (i) sixty (60) days after the filing date of such notice; and (ii) the appointment of a successor Liquidating Trustee. The Liquidating Trust Committee may remove the Liquidating Trustee at its discretion upon unanimous vote of all members without approval of the Bankruptcy Court, provided, however, that the Liquidating Trust Committee shall provide the Liquidating Trustee with thirty (30) days written notice of its intent to remove the Liquidating Trustee. All fees and expenses incurred by the Liquidating Trustee and the Liquidating Trust Committee in pursuit of the removal or continuation of the Liquidating Trustee shall be paid by the Liquidating Trust.

m.  *Appointment of Successor Liquidating Trustee.* In the event of the death, resignation or removal of the Liquidating Trustee, the Liquidating Trust Committee shall select a successor Liquidating Trustee. Any successor Liquidating Trustee shall execute and file a statement accepting such appointment and agreeing to be bound by the terms of the Plan and upon such filing, the successor Liquidating Trustee shall immediately become vested with all the rights, powers, trusts and duties of the Liquidating Trustee.

n.  *Preservation of Rights and Causes of Action.* In keeping with section 1123(b)(3) of the Bankruptcy Code, the Debtor will retain and transfer to the Liquidating Trust all Assigned Actions.

o.  *Records of the Debtor.* The Liquidating Trustee shall be granted access to the Debtor's books, records and electronically stored information for review and copying.

p.  *Nontransferability of Liquidating Trust Interests.* The beneficial interests in the Liquidating Trust shall not be transferable (except as otherwise provided in the Trust Agreement).

q.  *Distribution of Trust Assets.* The Liquidating Trustee shall distribute Cash to the Liquidating Trust beneficiaries in accordance with the terms of this Plan and the Trust Agreement.

r.      *Trust Certificates*. The Trust Interests shall not be represented by certificates, receipts, or in any other form or manner, except as maintained on the books and records of the Liquidating Trust by the Liquidating Trustee, as set forth in the Trust Agreement.

s.      *Federal Income Tax Treatment of the Liquidating Trust*.

(i)      Trust Assets Treated as Owned by Holders of Allowed General Unsecured Creditors and Allowed Secured M&M Lien Claims. For all federal income tax purposes, all parties (including, without limitation, the Debtor, the Liquidating Trustee, and the holders of beneficial interests in the Liquidating Trust) shall treat the transfer of the Trust Assets to the Liquidating Trust for the benefit of the beneficiaries thereof, whether Allowed on or after the Effective Date as the transfer by such holders to the Liquidating Trust of the Trust Assets in exchange for, beneficial interests in the Liquidating Trust. Accordingly, the Holders of Allowed General Unsecured Claims and Allowed Secured M&M Lien Claims shall be treated for federal income tax purposes as the grantees and owners of their respective shares of the Trust Assets.

(ii)      Tax Reporting.

A.      (i) The Liquidating Trustee shall file income tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation section l.671-4(a) and in accordance with this Section; (ii) the Liquidating Trustee shall annually send to each record holder of a beneficial interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction, or credit and will instruct all such holders to report such items on their federal income tax returns or to forward the appropriate information to the beneficial holders with instructions to report such items on their federal income tax returns; and (iii) the Liquidating Trust's taxable income, gain, loss, deduction, or credit will be allocated among the beneficial holders of the interests in the Liquidating Trust in accordance with each holder's relative beneficial interests in the Liquidating Trust.

B.      As soon as possible after the Effective Date, but in no event later than ninety (90) days after the Effective Date, the Liquidating Trustee shall make a good faith valuation of the Trust Assets. Such valuation shall be made available from time to time, to the extent relevant, and used consistently by all parties for all federal income tax purposes. The Liquidating Trustee shall also file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any governmental unit.

C.      Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee shall treat any Trust Assets allocable to, or retained on account of, Disputed General Unsecured Claims and Disputed M&M Lien Claims as held by one or more discrete trusts for federal income tax purposes (the "**Trust Claims Reserve**"), consisting of separate and independent shares to be established in respect of each Disputed General Unsecured Claim and Disputed M&M Lien Claim, in accordance with the trust provisions of the Tax Code (section 641 et seq.), (ii) treat as taxable income or loss of the Trust Claims Reserve, with respect to any given taxable year, the portion of the taxable income or loss

of the Liquidating Trust that would have been allocated to the Holders of Disputed General Unsecured Claims and Disputed M&M Lien Claims had such Claims been Allowed on the Effective Date (but only for the portion of the taxable year with respect to which such Claims are unresolved), (iii) treat as a Distribution from the Trust Claims Reserve any increased amounts distributed by the Liquidating Trust as a result of any Disputed General Unsecured Claims or Disputed M&M Lien Claims resolved earlier in the taxable year, to the extent such Distributions relate to taxable income or loss of the Trust Claims Reserve determined in accordance with the provisions hereof, and (iv) to the extent permitted by applicable laws report consistent with the foregoing for state and local income tax purposes. All Liquidating Trust beneficiaries shall report, for tax purposes, consistent with the foregoing.

D.     The Liquidating Trustee shall be responsible for payments, out of the Trust Assets, of any taxes imposed on the Liquidating Trust or the Trust Assets, including the Trust Claims Reserve. In the event, and to the extent, any Cash retained on account of Disputed Unsecured Claims or Disputed M&M Lien Claims in the Trust Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Unsecured Claims or Disputed M&M Lien Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed Unsecured Claims or Disputed M&M Lien Claims, or (ii) to the extent such Disputed Unsecured Claims or Disputed M&M Lien Claims have subsequently been resolved, deducted from any amounts distributable by the Liquidating Trustee as a result of the resolutions of such Disputed Unsecured Claims or Disputed M&M Lien Claims.

E.     The Liquidating Trustee may request an expedited determination of taxes of the Liquidating Trust, including the Trust Claims Reserve, under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

t.     *Dissolution.* The Liquidating Trust and the Liquidating Trustee shall be discharged or dissolved, as the case may be, no later than the fifth anniversary of the Effective Date; provided, however, that, on or prior to the date that is ninety (90) days prior to such termination, the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Liquidating Trust if it is necessary to the liquidation of the Trust Assets. Notwithstanding the foregoing, multiple extensions may be obtained so long as Bankruptcy Court approval is obtained not less than ninety (90) days prior to the expiration of each extended term; provided, however, that in no event shall the term of the Liquidating Trust extend past the tenth (10th) anniversary of the Effective Date; provided further that neither the Trust Agreement nor the continued existence of the Liquidating Trust shall prevent the Debtor from closing the Chapter 11 Case pursuant to section 350 of the Bankruptcy Code and obtaining a final decree pursuant to Bankruptcy Rule 3022. The Liquidating Trust may be terminated earlier than its scheduled termination if (i) the Bankruptcy Court has entered a Final Order closing all of or the last of the Chapter 11 Case pursuant to section 350(a) of the Bankruptcy Code and (ii) the Liquidating Trustee has administered all Trust Assets and performed all other duties required by the Plan, the Confirmation Order, the Trust Agreement and the Liquidating Trust. The Liquidating Trustee shall not unduly prolong the duration of the Liquidating Trust and shall at all times endeavor to resolve, settle or otherwise dispose of all claims that constitute Trust Assets and to effect the Distribution of the Trust Assets in accordance with the terms hereof and terminate the

Liquidating Trust as soon as practicable. Prior to and upon termination of the Liquidating Trust, the Trust Assets will be distributed to the beneficiaries of Liquidating Trust, pursuant to the provisions set forth in the Trust Agreement.

If at any time the Liquidating Trustee determines that the expense of administering the Liquidating Trust is likely to exceed the value of the Trust Assets, the Liquidating Trustee shall have the authority to (i) donate any balance to a non-religious charitable organization exempt from federal income tax under section 501(c)(3) of the Tax Code that is unrelated to the Debtor and any insider of the Debtor and (ii) dissolve the Liquidating Trust.

u.     *Indemnification of Liquidating Trustee.* The Liquidating Trustee or the individuals comprising the Liquidating Trustee, as the case may be, and the Liquidating Trustee's agents and professionals, shall not be liable for actions taken or omitted in its capacity as, or on behalf of, the Liquidating Trustee, except those acts arising out of its or their own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or ultra vires acts, and each shall be entitled to indemnification and reimbursement from Trust Assets for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Liquidating Trustee, except for any actions or inactions involving willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or ultra vires acts. Any indemnification claim of the Liquidating Trustee shall be satisfied exclusively from the Trust Assets. The Liquidating Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.

4.8     The Liquidating Trust Committee.

a.     *Formation.* On the Effective Date, a Liquidating Trust Committee shall be formed. The Liquidating Trust Committee shall be governed by the terms of the Trust Agreement. The members of the Liquidating Trust Committee shall appoint representatives as provided for in the Trust Agreement. Any member of the Liquidating Trust Committee may designate any other member as proxy for any vote of the Liquidating Trust Committee. Until any vacancy on the Liquidating Trust Committee is filled, the Liquidating Trust Committee shall function in its reduced number.

b.     *Powers of the Liquidating Trust Committee.* The Liquidating Trust Committee shall:

(i)     have the right to review, approve and object to settlements and proposed prosecution, release or abandonment of objections to M&M Lien Claims, General Unsecured Claims and/or Causes of Action by the Liquidating Trustee subject to the terms of the Plan, the Confirmation Order, and the Trust Agreement, provided, however, that no member of the Liquidating Trust Committee shall review or have any authority over decisions of the Liquidating Trust Committee or the Liquidating Trustee relating to any Claims or Causes of Action in which that member is a claimant against the Debtor or defendant in an action brought by the Liquidating Trust;

(ii)     have the right to review, approve and object to proposed sales and other dispositions of Trust Assets;

(iii)    be vested with authority to remove the Liquidating Trustee, or any successor Liquidating Trustee, appointed pursuant to the Plan, the Confirmation Order, or the Trust Agreement;

(iv)    consult with the Liquidating Trustee in connection with any other matters. related to the Plan, the Confirmation Order, or the Trust Agreement;

(v)    Select a successor member of Liquidating Trust Committee as provided in Section ___of the Trust Agreement;

(vi)    Approve the hiring of each professional by the Liquidating Trustee and the terms under which each such professional is to be compensated;

(vii)    Monitor and receive periodic reports and updates from the Liquidating Trustee regarding the status of the administration of the Liquidating Trust Assets; and

(viii)    perform such additional functions otherwise provided for in the Plan, the Confirmation Order, or the Trust Agreement, or are provided for by further order of the Court entered after the Effective Date.

c.    *Exculpation.* The members of the Liquidating Trust Committee shall undertake their duties as specified in the Plan and the Trust Agreement. In serving as a member of the Liquidating Trust Committee, such members shall not assume or be deemed to have assumed any liability to Creditors, Equity Interest Holders, the Debtor, the Reorganized Debtor, the Liquidating Trust, the Liquidating Trustee, or any other parties in interest in the Chapter 11 Case and shall not be liable for any acts or omissions while acting in that capacity, except for acts or omissions in bad faith and acts or omissions constituting malfeasance or gross negligence. In addition, the members of the Liquidating Trust Committee shall be entitled to reimbursement from the Liquidating Trust of their reasonable expenses incurred in connection with their duties as members of the Liquidating Trust Committee. Resignation and removal of Liquidating Trust Committee members, and appointment of their successors, shall be conducted pursuant to the terms of the Trust Agreement.

d.    *Dissolution.* The Liquidating Trust Committee shall be dissolved at the time the Liquidating Trust is dissolved. Upon dissolution, the members thereof shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from their service as Liquidating Trust Committee members.

e.    *Indemnification of Liquidating Trust Committee.* The Liquidating Trust Committee or the individuals comprising the Liquidating Trust Committee, as the case may be, and the Liquidating Trust Committee's agents and professionals, shall not be liable for actions taken or omitted in its capacity as, or on behalf of, the Liquidating Trust Committee, except those acts arising out of its or their own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or ultra vires acts, and each shall be entitled to indemnification and reimbursement from Trust Assets for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Liquidating Trust Committee, except for any actions or inactions involving willful misconduct, gross negligence, bad faith, self-

dealing, breach of fiduciary duty, or ultra vires acts. Any indemnification claim of the Liquidating Trust Committee shall be satisfied exclusively from the Trust Assets. The Liquidating Trust Committee shall be entitled to rely, in good faith, on the advice of its retained professionals.

## ARTICLE 5.
## PROVISIONS GOVERNING DISTRIBUTIONS

5.1     Delivery of Distributions; Undeliverable or Unclaimed Distributions. Distributions to Holders of Allowed Claims shall be made by BMS or the Liquidating Trustee (with respect to Allowed General Unsecured Claims and Allowed Secured M&M Lien Claims the Liquidating Trustee) as applicable, (a) at the Holder's last known address, or (b) at the address in any written notice of address change delivered to the Reorganized Debtor and the Liquidating Trustee. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made, unless and until the Trustee or (with respect to Allowed General Unsecured Claims and Allowed Secured M&M Lien Claims, the Liquidating Trustee) is notified of such Holder's then current address, at which time all missed Distributions shall be made to such Holder without interest. Amounts in respect of undeliverable Distributions made by the Liquidating Trust to Holders of Allowed Secured M&M Lien Claims and Allowed General Unsecured Claims shall be returned to the Liquidating Trust until such Distributions are claimed. All claims for undeliverable Distributions by the Liquidating Trust must be made on or before the first anniversary of the returned Distribution after which date they will be conclusively deemed forfeited, without need for further order of the Bankruptcy Court and no further Distribution will be made for or on account of said Claim. All forfeited Distributions with respect to Allowed General Unsecured Claims and Allowed Secured M&M Lien Claims (including interest thereon), shall be property of the Liquidating Trust notwithstanding any federal or state escheat laws to the contrary.

5.2     Withholding and Reporting Requirements. The Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions from the Liquidating Trust shall be subject to any such withholding and reporting requirements. Each Holder of an M&M Lien Claim or a General Unsecured Claim shall be required to execute and deliver a W-9 form to the Liquidating Trustee as a condition to any Distribution. Any creditor asserting an M&M Lien Claim or General Unsecured Claim must deliver the executed W-9 form to the Liquidating Trustee on or before the first anniversary of the Effective Date. The rights of any creditor asserting an M&M Lien Claim or a General Unsecured Claim for Distributions from the Liquidating Trust will be conclusively deemed forfeited if an executed W- 9 form is not timely delivered to the Liquidating Trustee. All forfeited Distributions with respect to Allowed General Unsecured Claims and Allowed Secured M&M Lien Claims (including interest thereon) shall be property of the Liquidating Trust notwithstanding any federal or state escheat laws to the contrary.

5.3     Setoffs. The Liquidating Trustee may, but shall not be required to, set off against any Allowed Secured M&M Lien Claim or Allowed General Unsecured Claim, and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature, whatsoever that the Liquidating Trust may have against the Holder of such Claim; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder

shall constitute a waiver or release by the Liquidating Trust of any claim that the Liquidating Trust may have against such Holder. Nothing in this Plan shall be deemed to expand rights to setoff under applicable non-bankruptcy law.

5.4     De Minimis Distributions. Notwithstanding anything herein to the contrary, no Cash payment of less than $25.00 shall be made to the Holder of any Claim on account of its Allowed Claim; any such Holder who would otherwise be entitled to a lesser Distribution shall not receive any Distribution.

# ARTICLE 6.
## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS

6.1     Procedures Regarding Claims. Except as otherwise expressly provided herein, the Trustee, Committee, or the Liquidating Trustee, as applicable, shall have the exclusive authority to file, settle, compromise, withdraw, or litigate to judgment any objections to Claims that are not General Unsecured Claims or M&M Lien Claims. From and after the Effective Date, the Liquidating Trustee shall have the authority to file or object to any General Unsecured Claims or M&M Lien Claims.

The Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether such Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection. In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Liquidating Trust may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. Each of the aforementioned objection, estimation and resolution procedures are cumulative and are not exclusive of one another.

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan.

Unless otherwise set forth herein or ordered by the Bankruptcy Court, any objections to Claims shall be filed on or before the date that is the later of: (a) 120 days after the Effective Date, and (b) the last day of such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to certain Claims. The Bankruptcy Court may extend any deadline to object to Claims upon a motion filed by the Liquidating Trustee.

# ARTICLE 7.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1     Assumed Contracts and Leases. Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in

connection with this Plan, as of the Effective Date, the Debtor shall be deemed to have rejected each executory contract and unexpired lease to which it is a party, unless such contract or lease (a) was previously assumed or rejected by the Debtor, (b) is the subject of a motion to reject filed on or before the Confirmation Date or (c) is set forth in a schedule, as an executory contract or unexpired lease to be rejected, filed as part of the Plan Supplements. The Confirmation Order shall constitute·an order of the Bankruptcy Court under section 365 of the Bankruptcy Code approving the contract and lease assumptions or rejections described above, as of the Effective Date. Each executory contract and unexpired lease assumed pursuant to this Article 7 or by any order of the Bankruptcy Court shall revest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

Unless otherwise provided in the Plan, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases, related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

7.2     <u>Payments Related to Assumption of Contracts and Leases</u>. The Debtor shall file a list of proposed amounts of any Cure for each executory contract and unexpired lease to be assumed with the Plan Supplements and any party to such executory contract or unexpired lease shall have until one business day before the Confirmation Hearing to file an objection to the proposed Cure with the Bankruptcy Court. Any monetary amounts by which any executory contract and unexpired lease to be assumed under the Plan is in default shall be satisfied, under section 365(b)(l) of the Bankruptcy Code, by the applicable Debtor on or before the Effective Date; provided, however, if there is a dispute regarding (i) the nature or amount of any Cure, (ii) the ability of a Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order of the Bankruptcy Court resolving the dispute and approving the assumption or assumption and assignment, as the case may be; provided, however, that the Debtor or the Reorganized Debtor may settle any dispute regarding the amount of any Cure without any further notice to or action, order or approval of the Bankruptcy Court. Failure to timely raise an objection to assumption of any executory contract or unexpired lease, including the proposed amount of any Cure, pursuant to the terms of this Plan shall bar any subsequent objection to assumption of any executory contract or unexpired lease, including any objection to the proposed amount of any Cure.

7.3     <u>Rejected Contracts and Leases</u>. Except for those executory contracts and unexpired leases set forth on a schedule to the Plan Supplements, none of the executory contracts and unexpired leases to which the Debtor is a party shall be rejected under the Plan; provided, however, that the Debtor reserves the right, at any time prior to the Confirmation Date, to seek to reject any executory contract or unexpired lease to which the Debtor is a party.

7.4 <u>Claims Based upon Rejection of Executory Contracts or Unexpired Leases</u>. All Claims arising out of the rejection of executory contracts and unexpired leases must be filed with the Bankruptcy Court and served upon the Debtor and its counsel within thirty (30) days after the earlier of (a) the date of entry of an order of the Bankruptcy Court approving such rejection or (b) the Confirmation Date. Any such Claims not filed within such times shall be forever barred from assertion against the Debtor, its Estate, and property.

## ARTICLE 8.
## ACCEPTANCE OR REJECTION OF THIS PLAN

8.1 <u>Classes Entitled to Vote</u>. Each Holder of an Allowed Claim in Class 4, 5 and 6 is entitled to vote to accept or reject this Plan. Holders of Claims or Equity Interests in Unimpaired Classes shall not be entitled to vote because they are conclusively deemed, by operation of section 1126(f) of the Bankruptcy Code, to have accepted this Plan.

8.2 <u>Acceptance by Impaired Classes</u>. An Impaired Class of Claims shall have accepted this Plan if the Holders of at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in the Class actually voting have voted to accept this Plan, and an Impaired Class of Equity Interests shall have accepted this Plan if the Holders of at least two-thirds (2/3) in amount of the Allowed Equity Interests in the Class actually voting have voted to accept this Plan, in each case not counting the vote of any Holder designated under section 1126(e) of the Bankruptcy Code.

8.3 <u>Elimination of Classes</u>. Any Class that does not contain any Allowed Claims or Equity Interests or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed not included in this Plan for purposes of (i) voting to accept or reject this Plan and (ii) determining whether such Class has accepted or rejected this Plan under section 1129(a)(8) of the Bankruptcy Code.

8.4 <u>Nonconsensual Confirmation</u>. The Bankruptcy Court may confirm this Plan over the dissent of or rejection by any Impaired Class if all of the requirements for consensual confirmation under section 1129(a), other than section 1129(a)(8)(A), of the Bankruptcy Code and for nonconsensual confirmation under section 1129(b) of the Bankruptcy Code have been satisfied.

If a Class does not accept the Plan, the Plan Proponents shall request that the Bankruptcy Court confirm or "cram down" the Plan on a non-consensual basis with respect to each non-accepting Class pursuant to section 1129(b) of the Bankruptcy Code.

## ARTICLE 9.
## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS

9.1 <u>Conditions to Confirmation</u>. It shall be a condition to Confirmation of the Plan that the following conditions shall have been satisfied or waived.

a. The Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably acceptable to the Debtor and the Committee.

b.  The Plan must be in form and substance reasonably acceptable to the Debtor and the Committee.

c.  All Plan Supplements must be in a form and substance reasonably acceptable to the Committee.

9.2  <u>Conditions to Effective Date.</u> The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied:

a.  The Confirmation Order shall have been entered by the Bankruptcy Court in form and substance reasonably acceptable to the Debtor and the Committee.

b.  All other actions, documents, and agreements necessary to implement this Plan shall have been effected or executed, including the final forms of the documents contained in the Plan Supplements, shall have been effected or executed and delivered, as the case may be, to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws.

c.  No Stay of the Confirmation Order shall be in effect.

d.  Each of the conditions precedent to Confirmation are repeated here and shall continue to be satisfied and in full and effect as of the Effective Date.

## ARTICLE 10.
## MODIFICATIONS AND AMENDMENTS; WITHDRAWAL

The Plan Proponents may amend or modify this Plan at any time prior to the Confirmation Date. The Plan Proponents reserve the right to include any amended exhibits in the Plan Supplements, whereupon each such amended exhibit shall be deemed substituted for the original of such exhibit.

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the Solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

## ARTICLE 11.
## RETENTION OF JURISDICTION

Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding this Plan's Confirmation and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of or related to the Chapter 11 Case and this Plan, to the fullest extent permitted by law, including jurisdiction to:

a.  hear and determine any and all objections to the allowance of Claims or Equity Interests;

b.      hear and determine any and all motions to estimate Claims at any time, regardless of whether the Claim to be estimated is the subject of a pending objection, a pending appeal, or otherwise;

c.      hear and determine any and all motions to subordinate Claims at any time and on any basis permitted by applicable law;

d.      hear and determine all Administrative Expenses and Professional Fee Claims;

e.      hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable, including, if necessary, the nature or amount of any Claim or required Cure or the liquidation of any Claims arising therefrom;

f.      hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Case;

g.      enter such orders as may be necessary or appropriate in aid of the implementation hereof and to execute, implement, or consummate the provisions hereof and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

h.      hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan and all contracts, instruments, and other agreements executed in connection with this Plan;

i.      hear and determine any request to modify this Plan or to cure any defect or omission or reconcile any inconsistency herein or any order of the Bankruptcy Court;

j.      issue and enforce injunctions or other orders, or take any other action that may be necessary or appropriate to restrain any interference with or compel action for the implementation, or enforcement hereof or the Confirmation Order;

k.      enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

l.      hear and determine any matters arising in connection with or relating hereto, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

m.      enforce all orders, judgments, injunctions, releases, exculpation, indemnification and rulings entered in connection with the Chapter 11 Case;

n.      recover all assets of the Debtor and property of the Debtor's Estate, wherever located;

o.    hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

p.    hear and determine all disputes involving the existence, nature, or scope of the Debtor's discharge;

q.    hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

r.    enter a final decree closing the Chapter 11 Case.

## ARTICLE 12.
## MISCELLANEOUS PROVISIONS

12.1    <u>Bar Date for Certain Claims</u>.

a.    *Administrative Expenses.* The Confirmation Order shall establish an Administrative Expenses Bar Date for the filing of all Administrative Expenses (other than Administrative Expenses paid in the ordinary course of business pursuant to Article 2 hereof and Claims for United States Trustee fees), which date shall be thirty (30) days after the Effective Date. Holders of such asserted Administrative Expenses must file an application for payment of Administrative Expense with the Bankruptcy Court on or before such Administrative Expenses Bar Date or forever be barred from doing so. The notice of Confirmation shall set forth the Administrative Expenses Bar Date, and the Debtor, the Trustee or Liquidating Trustee, as the case may be, and any other party in interest, shall have twenty-one (21) days following the Administrative Expenses Bar Date to review and object to such Administrative Expenses. All such objections shall be litigated to Final Order; provided, however, that the Trustee or Liquidating Trustee may compromise and settle, withdraw or resolve by any other method, without requirement of Bankruptcy Court approval, any objections to Administrative Expenses.

12.2    <u>Professional Fee Claims</u>. All final applications for Professional Fee Claims must be filed and served on the Trustee and Liquidating Trustee and its counsel no later than thirty (30) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Objections to any such applications must be filed and served on the requesting Professional or other Entity, no later than twenty-one (21) days (or such other period as may be allowed by order of the Bankruptcy Court or as otherwise agreed to between the parties) after the date on which the applicable application for compensation or reimbursement was served.

12.3    <u>Payment of Statutory Fees</u>. All fees payable under section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date. All such fees that arise after the Effective Date but before the closing of the Chapter 11 Case shall be paid by the Liquidating Trustee when they come due.

12.4    <u>Nonseverability of Plan Provisions</u>. If, prior to Confirmation, any term or provision hereof is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor with the consent of the Committee, shall have the

power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions hereof shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision hereof, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12.5    <u>Successors and Assigns</u>. The rights, benefits and obligations of all Entities named or referred to herein shall be binding on, and shall inure to the benefit of, their respective heirs, executors, administrators, personal representatives, successors or assigns.

12.6    <u>Discharge of Claims</u>. Except as otherwise provided herein or in the Confirmation Order, all consideration distributed under this Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims (other than those Claims that are Unimpaired under this Plan) of any nature whatsoever against the Debtor or any of its assets or properties, and regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims. Upon the Effective Date, each of the Debtor and the Reorganized Debtor shall be deemed discharged and released under section 1141(d)(1) of the Bankruptcy Code from any and all Claims (other than those Claims that are not Impaired under this Plan), including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

12.7    <u>Injunction</u>. ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASE PURSUANT TO SECTIONS 105 AND 362 OF THE BANKRUPTCY CODE OR OTHERWISE AND IN EFFECT ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE. EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES THAT HAVE HELD, HOLD OR MAY HOLD CLAIMS OR CAUSES OF ACTION AGAINST THE DEBTOR ARE, AS OF THE EFFECTIVE DATE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST THE LIQUIDATING TRUST OR THE TRUST ASSETS (EXCEPT AS EXPRESSLY PROVIDED IN THE PLAN): (A) COMMENCING, CONDUCTING OR CONTINUING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY SUIT, ACTION OR OTHER PROCEEDING RELATING TO SUCH CLAIM OR CAUSE OF ACTION; (B) ENFORCING, LEVYING, ATTACHING, COLLECTING OR OTHERWISE RECOVERING IN ANY MANNER OR BY ANY MEANS, WHETHER DIRECTLY OR INDIRECTLY, ANY JUDGMENT, AWARD, DECREE OR ORDER RELATING TO SUCH CLAIM OR CAUSE OF ACTION; (C) CREATING, PERFECTING OR ENFORCING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY LIEN RELATING TO SUCH CLAIM OR CAUSE OF ACTION; (D) ASSERTING ANY SETOFF, RIGHT OF SUBROGATION OR RECOUPMENT OF ANY KIND, DIRECTLY OR INDIRECTLY, AGAINST ANY DEBT, LIABILITY OR OBLIGATION DUE TO THE DEBTOR RELATING TO SUCH CLAIM OR CAUSE OF ACTION; AND (E) PROCEEDING IN ANY MANNER IN ANY PLACE WHATSOEVER

THAT DOES NOT CONFORM TO OR COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN OR THE CONFIRMATION ORDER. M&M LIEN CLAIMANTS AND THE LIQUIDATING TRUST AND ANY ALLOWED CLAIMS NOT PAYABLE OUT OF LIQUIDATING TRUST ASSETS ARE ENJOINED POST-PLAN EFFECTIVE DATE FROM THE COMMENCEMENT, CONTINUANCE, PROSECUTION, MAINTENANCE, OR PARTICIPATION IN ANY LAWSUIT, CLAIMS, DEMAND OR PROCEEDING IN ANY JURISDICTION, AND ANY OTHER ATTEMPTS AT COLLECTION, ENFORCEMENT OR ANY ACTION OF ANY KIND AGAINST ANY INTEREST OF DEBTOR.

12.8    <u>Exculpation and Limitation of Liability</u>. The Exculpated Parties shall not have or incur any liability to any Holder of a Claim or an Equity Interest, or any other party-in-interest, or any of their respective agents, employees, equity interest holders, partners, members, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the negotiation, Solicitation, the Plan and Disclosure Statement, the administration of the Chapter 11 Case, the Solicitation of acceptances hereof, the pursuit of Confirmation hereof, the implementation hereof, or the administration hereof or the property to be distributed hereunder, except for their willful misconduct, intentional fraud or criminal conduct, and in all respects they shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities.

12.9    <u>Binding Effect</u>. Upon the occurrence of the Effective Date, this Plan shall be binding upon and inure to the benefit of the Debtor, all present and former Holders of Claims against and Equity Interests in the Debtor, their respective successors and assigns, including the Reorganized Debtor, all other parties-in-interest in the Chapter 11 Case (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.

12.10    <u>Revocation, Withdrawal, or Non-Consummation</u>. The Plan Proponents reserve the right to jointly revoke or withdraw this Plan at any time prior to the Confirmation Date and to file other plans of reorganization. If the Plan Proponents revoke or withdraw this Plan, or if Confirmation or the Effective Date hereof does not occur, then (a) this Plan shall be null and void in all respects, (b) any settlement or compromise embodied herein (including the fixing or limiting to an amount any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void, and (c) nothing contained herein, and no acts taken in preparation for the Effective Date, shall (x) constitute or be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Entity, (y) prejudice in any manner the rights of the Debtor or any Entity in any further proceedings involving the Debtor, or (z) constitute an admission of any sort by the Debtor or any other Entity.

12.11    <u>Committee</u>. The Committee shall dissolve as of the Effective Date and the members of the Committee shall be released and discharged from all authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Case. For the avoidance of doubt, nothing in this Section 12.11 or anywhere else in this Plan is

intended to affect in any manner the Committee's Professionals from applying to the Bankruptcy Court for the Allowance of Professional Fee Claims incurred through the Effective Date (but not thereafter).

12.12   Plan Supplements. All exhibits and documents included in the Plan Supplements are incorporated into and are a part of the Plan as if set forth in full in the Plan. All documents required to be filed with the Plan Supplements shall be filed with the Bankruptcy Court at least seven (7) days prior to the date of the commencement of the Confirmation Hearing. Thereafter, any Person may examine the Plan Supplements in the office of the Clerk of the Bankruptcy Court during normal court hours. Copies of the Plan Supplements may also be obtained without charge by contacting Mark Taylor at Waller Dortch & Davis, LLP at the address listed below.

12.13   Miscellaneous. Closing the Estate - The Reorganized Debtor or Trustee may petition the court to close the Estate upon substantial consummation, however, in no event shall Reorganized Debtor or Trustee seek to close the Estate or seek to obtain a final decree prior to 180 days following the Effective Date.

12.14   Notices. Any notice, request, or demand required or permitted to be made or provided to or upon a Debtor, the Committee, or the Liquidating Trustee hereunder shall be in writing (including by facsimile transmission), and deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

if to the Debtor, to:

Morris D. Weiss, Trustee
100 Congress Avenue, 18th Floor
Austin, Texas 78701
Fax: (512) 685-6417

if to the Liquidating Trustee, to:

Morris D. Weiss
100 Congress Avenue, 18th Floor
Austin, Texas 78701
Fax: (512) 685-6417

with a required copy to:

Eric J. Taube
Mark C. Taylor
Waller Lansden Dortch & Davis, LLP
100 Congress Avenue, 18th Floor
Austin, Texas 78701
Fax: (512) 685-6417

12.15  <u>Governing Law</u>. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of (a) the State of Texas shall govern the construction and implementation hereof and any agreements, documents, and instruments executed in connection with this Plan and (b) the laws of the state of incorporation or organization of the Debtor shall govern corporate or other governance matters with respect to such Debtor, in either case without giving effect to the principles of conflicts of law thereof.

12.16  <u>Section 1125(e) of the Bankruptcy Code</u>. As of the Confirmation Date, the Debtor shall be deemed to have solicited acceptances hereof in good faith and in compliance with the Bankruptcy Code. As of the Confirmation Date, the Debtor, the Committee, and each of their respective affiliates, agents, directors, managing partners, managers, officers, employees, attorneys, and other professionals shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

12.17  <u>Entire Agreement</u>. Except as otherwise indicated, the Plan and the Plan Supplements supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### *REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*

DATED: June  22, 2018

Respectfully submitted,

By:  /s/ Morris D. Weiss
     Morris D. Weiss
     In his capacity as Chapter 11 Trustee


-and-

By:  /s/ Mark C. Taylor
     Eric J. Taube
     State Bar No. 19679350
     Mark C. Taylor
     State Bar No. 19713225
     WALLER LANSDEN DORTCH & DAVIS, LLP
     100 CONGRESS AVENUE, 18TH FLOOR
     AUSTIN, TX 78701
     Telephone: (512) 685.6400
     Facsimile: (512) 685.6417


ATTORNEYS FOR CHAPTER 11 TRUSTEE

-and-


By:  /s/ Kenneth Green
     Kenneth Green
     State Bar No. 24036677
     Blake Hamm
     State Bar No. 24069869
     Carolyn Carollo
     State Bar No. 24083437
     SNOW SPENCE GREEN LLP
     2929 Allen Parkway, Suite 2800
     Houston, TX 77019
     Telephone: (713) 335-4800
     kgreen@snowspencelaw.com
     blakehamm@snowspencelaw.com
     carolyncarollo@snowspencelaw.com

ATTORNEYS FOR OFFICIAL COMMITTEE OF
UNSECURED CREDITORS

031459-61671/4846-6809-4795.5

SIGNATURE PAGE FOR PLAN

## EXHIBIT B

**Resume of Trustee**
**(to be provided)**

## EXHIBIT C

**List of Estate Assets**
**(to be provided)**