# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| ARABELLA PETROLEUM | § | |
| COMPANY, LLC, | § | CASE NO. 15-70098-TMD |
| Debtor. | § | CHAPTER 11 |

## JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR THE DEBTOR, PROPOSED BY CHAPTER 11 TRUSTEE AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Eric J. Taube
State Bar No. 19679350
Mark C. Taylor
State Bar No. 19713225
WALLER LANSDEN DORTCH & DAVIS, LLP
100 Congress Ave., 18th Floor
Austin, Texas 78701
Telephone: (512) 685-6400
Facsimile: (512) 685-6417
eric.taube@wallerlaw.com
mark.taylor@wallerlaw.com

ATTORNEYS FOR CHAPTER 11 TRUSTEE

-and-

Kenneth Green
State Bar No. 24036677
Blake Hamm
State Bar No. 24069869
Carolyn Carollo
State Bar No. 24083437
SNOW SPENCE GREEN LLP
2929 Allen Parkway, Suite 2800
Houston, TX 77019
Telephone: (713) 335-4800
kgreen@snowspencelaw.com
blakehamm@snowspencelaw.com
carolyncarollo@snowspencelaw.com

ATTORNEYS FOR OFFICIAL COMMITTEE OF
UNSECURED CREDITORS

Dated: November 26, 2018

# Table of Contents

**ARTICLE 1. DEFINITIONS, RULES OF INTERPRETATION,  AND COMPUTATION OF TIME** ....................................................................................6

    1.1    Definitions.................................................................................6
    1.2    Scope of Definitions; Rules of Construction; Rules of Interpretation; Computation  of Time ....................................................................................13

**ARTICLE 2. TREATMENT OF UNCLASSIFIED CLAIMS** ..............................................13

    2.1    Administrative Expenses ..........................................................14
    2.2    U.S. Trustee Fees .....................................................................14
    2.3    Priority Tax Claims ..................................................................14
    2.4    Professional Fee Claims...........................................................14

**ARTICLE 3. CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS** ...........................................................................15

    3.1    Introduction ..............................................................................15
    3.2    Summary of Classes.................................................................15
    3.3    Treatment of Classified Claims and Equity Interests ............15
        a.    Class 1 - Other Priority Claims.............................................15
        b.    Class 2 - Other Secured Claims. ............................................16
        c.    Class 3 - Secured M & M Lien Claims...................................16
        d.    Class 4 -Allowed General Unsecured Claims.........................16
        e.    Class 5 - Subordinated Claims ...............................................17
        f.    Class 6 - Equity Interests .......................................................17
    3.4    Allowed Claims .......................................................................17
    3.5    Special Provision Governing Unimpaired Claims...................17
    3.6    Controversy Concerning Impairment ......................................17

**ARTICLE 4. MEANS FOR IMPLEMENTATION OF THIS PLAN** ..................................18

    4.1    General Settlement of Claims and Interests.............................18
    4.2    Sources of Cash Consideration for Plan Distributions ...........18
    4.3    Continued Corporate Existence ...............................................18
    4.4    Assigned Actions .....................................................................18
    4.5    Preservation of Rights of Action; Settlement of Litigation Claims-Liquidating Trust...........18
    4.6    Effectuating Documents; Further Transactions .......................19
    4.7    The Liquidating Trust ..............................................................19
        a.    Establishment of the Liquidating Trust...................................19
        b.    Execution of Trust Agreement ................................................19
        c.    Purpose of the Liquidating Trust ............................................19
        d.    Trust Assets..............................................................................19
        e.    Governance of the Liquidating Trust ......................................20
        f.    The Liquidating Trustee...........................................................20

    g.  General Powers of Liquidating Trustee ........................................................20
    h.  Reporting Obligations...............................................................................23
    i.   Accounts ....................................................................................................24
    j.   Deposit of Trust Proceeds........................................................................24
    k.  Compensation ...........................................................................................24
    l.   Resignation/Removal of the Liquidating Trustee....................................24
    m. Appointment of Successor Liquidating Trustee ......................................24
    n.  Preservation of Rights and Causes of Action .........................................24
    o.  Records of the Debtor ...............................................................................24
    p.  Nontransferability of Liquidating Trust Interests ...................................24
    q.  Distribution of Trust Assets .....................................................................24
    r.   Trust Certificates......................................................................................25
    s.   Federal Income Tax Treatment of the Liquidating Trust.........................25
    t.   Dissolution ...............................................................................................26
    u.  Indemnification of Liquidating Trustee ..................................................27
  4.8     The Liquidating Trust Committee .............................................................27
    a.  Formation..................................................................................................27
    b.  Powers of the Liquidating Trust Committee............................................27
    c.   Exculpation ..............................................................................................28
    d.  Dissolution ...............................................................................................28
    e.   Indemnification of Liquidating Trust Committee....................................28

**ARTICLE 5. PROVISIONS GOVERNING DISTRIBUTIONS** ...........................................29

  5.1     Delivery of Distributions; Undeliverable or Unclaimed Distributions.......29
  5.2     Withholding and Reporting Requirements ..................................................29
  5.3     Setoffs .........................................................................................................29
  5.4     De Minimis Distributions ...........................................................................30

**ARTICLE 6. PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT,  AND UNLIQUIDATED CLAIMS** ...........................................................................30

  6.1     Procedures Regarding Claims......................................................................30

**ARTICLE 7. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ...........................................................................................................30

  7.1     Assumed Contracts and Leases....................................................................30
  7.2     Payments Related to Assumption of Contracts and Leases .........................31
  7.3     Rejected Contracts and Leases.....................................................................31
  7.4     Claims Based upon Rejection of Executory Contracts or Unexpired Leases.............32

**ARTICLE 8. ACCEPTANCE OR REJECTION OF THIS PLAN** .......................................32

  8.1     Classes Entitled to Vote...............................................................................32
  8.2     Acceptance by Impaired Classes .................................................................32
  8.3     Elimination of Classes .................................................................................32
  8.4     Nonconsensual Confirmation.......................................................................32

**ARTICLE 9. CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS** .................................................................................32

 9.1 Conditions to Confirmation ..............................................................32
 9.2 Conditions to Effective Date.............................................................33

**ARTICLE 10. MODIFICATIONS AND AMENDMENTS; WITHDRAWAL** ...................33

**ARTICLE 11. RETENTION OF JURISDICTION** ...................................................33

**ARTICLE 12. MISCELLANEOUS PROVISIONS** ...................................................35

 12.1 Bar Date for Certain Claims .............................................................35
  a. Administrative Expenses ..................................................................35
 12.2 Professional Fee Claims....................................................................35
 12.3 Payment of Statutory Fees ................................................................35
 12.4 Nonseverability of Plan Provisions...................................................35
 12.5 Successors and Assigns......................................................................36
 12.6 Discharge of Claims..........................................................................36
 12.7 Injunction .........................................................................................36
 12.8 Exculpation and Limitation of Liability ............................................37
 12.9 Binding Effect...................................................................................37
 12.10 Revocation, Withdrawal, or Non-Consummation ..............................37
 12.11 Committee.........................................................................................37
 12.12 Plan Supplements..............................................................................38
 12.13 Miscellaneous ...................................................................................38
 12.14 Notices ..............................................................................................38
 12.15 Governing Law .................................................................................39
 12.16 Section 1125(e) of the Bankruptcy Code...........................................39
 12.17 Entire Agreement ..............................................................................39

Morris D. Weiss (the "**Trustee**"), chapter 11 trustee for Arabella Petroleum Company, LLC, the debtor in the above-referenced bankruptcy proceeding ("**APC**," or the "**Debtor**") and the Official Committee of Unsecured Creditors for APC (the "**Committee**"), as co-plan proponents (collectively, the "**Plan Proponents**"), jointly propose the following plan of reorganization under chapter 11 of the Bankruptcy Code.

## ARTICLE 1.
## DEFINITIONS, RULES OF INTERPRETATION,
## AND COMPUTATION OF TIME

1.1 <u>Definitions</u>. The following terms used in the Plan shall have the respective meanings defined below:

"Administrative Expense Claim" means a Claim for payment incurred between the Petition Date and the Effective Date, inclusive of an administrative expense of a kind specified in section 503(b)(4) of the Bankruptcy Code and entitled to priority under section 507(a)(2) of the Bankruptcy Code, but shall not include Professional Fee Claims.

"Administrative Expense Bar Date" means the date that is thirty (30) days after the Effective Date.

"Advisors" means, as to any Entity, each of such Entity's financial advisors, investment bankers, Professionals, accountants, consultants, representatives, attorneys and other professionals and each of their respective employees, members, parent corporations, subsidiaries, Affiliates and partners.

"Affiliate" shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

"Allowed" with respect to a Claim other than an Administrative Expense Claim, or any portion thereof, means such a Claim (a) that has been allowed by a Final Order, (b) that was listed in the Schedules or any amendment thereof as neither disputed, contingent nor unliquidated and for which no timely proof of Claim was filed, (d) for which a proof of Claim in a liquidated amount has been timely filed pursuant to the Bankruptcy Code or any Final Order of the Bankruptcy Court and as to which either (i) no objection to its allowance has been filed on or before the Claim Objection Deadline or within any other period fixed by the Bankruptcy Code or the Bankruptcy Court or (ii) any objection to its allowance has been settled, waived through payment, withdrawn, or denied by a Final Order of the Bankruptcy Court, or (d) that is expressly allowed in a liquidated amount in the Plan. With respect to an Administrative Expense Claim, means an Administrative Expense Claim for which a timely request for payment has been made in accordance with the Plan that has been allowed by a Final Order of the Bankruptcy Court.

"Allowed Claim" means a Claim that has been finally allowed either by an order from the Bankruptcy Court, a claim based on a Proof of Claim to which no objection has been filed, or a claim scheduled in the Debtor's Schedules filed in the Bankruptcy Case and not listed as disputed, contingent or unliquidated.

"Allowed General Unsecured Claim" means an Allowed Claim held by an unsecured creditor.

"Allowed Secured Claim" means Allowed Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.

"Allowed Secured M&M Lien Claim" means an Allowed Claim as to which an M&M Lien was filed to the extent that it is an Allowed Secured Claim.

"Assigned Actions" means all Causes of Action of Debtor (including Avoidance Actions). A list of identified potential Causes of Action will be filed as a Plan Supplement.

"Avoidance Actions" means any actions commenced, or that may be commenced, before or after the Effective Date pursuant to section 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code.

"Ballot" means any ballot for voting to accept or reject the Plan.

"Bankruptcy Code" means The Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, as now in effect or hereafter amended.

"Bankruptcy Court" means the United States Bankruptcy Court for the Western District of Texas, Midland Division, including the United States District Court for the Western District of Texas at any time the reference of the Chapter 11 Case to the United States Bankruptcy Court or any matter or proceeding in the Chapter 11 Case, was or shall be withdrawn.

"Bankruptcy Rules" means collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, the Federal Rules of Civil Procedure, as applicable to the Chapter 11 Case or proceedings therein, and the local rules of the Bankruptcy Court, all as now in effect or hereafter amended.

"Business Day" means any day, excluding Saturdays, Sundays or "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in Austin, Texas.

"Cash" means cash and cash equivalents.

"Causes of Action" means all actions, causes of action (including Avoidance Actions), liabilities, obligations, rights, suits, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims or causes of action whatsoever, whether known or unknown, matured or unmatured, fixed or contingent, liquidated or unliquidated, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date.

"Chapter 11 Case" means the chapter 11 case of the Debtor.

"Claim" means a claim, as defined in section 101(5) of the Bankruptcy Code, against the Debtor.

"Claim Objection Deadline" means the first Business Day that is the latest of (i) 30 days after the Effective Date; or (ii) such other date as may be established by the Bankruptcy Court.

"Class" means one of the classes of Claims or Equity Interests described in the Plan.

"Committee" means the official committee of unsecured creditors appointed in the Chapter 11 Case for Arabella Petroleum Company, LLC on July 24, 2015, as such committee may be reconstituted from time to time and as its role may be expanded by the United States Trustee from time to time.

"Confirmation" means the Bankruptcy Court's entry of the Confirmation Order on the docket in the Chapter 11 Case, in accordance with section 1129 of the Bankruptcy Code and subject to all conditions specified in this Plan.

"Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

"Confirmation Hearing" means the Bankruptcy Court's hearing on Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as it may be adjourned or continued from time to time.

"Confirmation Order" means the Bankruptcy Court's order confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

"Cure" means the payment of Cash by the Debtor, or the Distribution of other property, as necessary to cure a default by the Debtor under an executory contract or unexpired lease of the Debtor and to permit the Debtor to assume such contract or lease under section 365(a) of the Bankruptcy Code.

"Debtor" means Arabella Petroleum Company, LLC on and after the Petition Date.

"Disallowed Claim" means any Disputed Claim against the Debtor that is disallowed, in whole or in part, by Final Order of the Bankruptcy Court, or that has been withdrawn, in whole or in part, by the Holder thereof.

"Disclosure Statement" means the written disclosure statement that relates to the Plan in the form approved by the Bankruptcy Court, as amended, supplemented or modified from time to time.

"Disputed Claim" means a Claim against the Debtor (a) that is listed in the Debtor's Schedules as disputed, contingent, or unliquidated; (b) that is listed in the Debtor's Schedules as undisputed, liquidated, and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; (c) that is not listed in the Schedules but as to which a proof of Claim has been timely, or deemed timely, filed with the Bankruptcy Court; or (d) as to which an objection has been, or may be,

timely filed and has not been overruled by a Final Order. To the extent an objection related to the allowance of only a part of a Claim has been timely filed, such Claim shall be a Disputed Claim only to the extent of the objection.

"Distribution" means any distribution made under the Plan to the Holders of Allowed Claims.

"Distribution Date" means the Effective Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter) or, if not the Effective Date, such date occurring as soon as reasonably practicable after the Effective Date, on which the Liquidating Trust first makes Distributions to Holders of Allowed Claims as provided in the Plan.

"Effective Date" means the date that is the first Business Day after the Confirmation Date on which the (a) conditions to the Plan's consummation set forth herein have been satisfied or waived and (b) no stay of the Confirmation Order is in effect, but in no event less than the first business day after the expiration of fourteen (14) days following entry of the Confirmation Order.

"Entity" shall have the meaning set forth in section 101(15) of the Bankruptcy Code, including all Persons.

"Equity Interests" means any "equity security" (as defined in § 101(16) of the Bankruptcy Code) in Debtor.

"Estate" means the estate of the Debtor in the Chapter 11 Case, as created under section 541 of the Bankruptcy Code.

"Executory Contract" means any prepetition executory contract or unexpired lease governed by section 365 of the Bankruptcy Code.

"Exculpated Party" means each member of the Committee in its capacity as such, counsel for the Committee, the Chapter 11 Trustee, counsel for the Chapter 11 Trustee and the accountant for the Chapter 11 Trustee.

"Face Amount" means when used in reference to (a) a Disputed Claim, the full stated amount claimed by the Holder thereof in any proof of Claim timely filed with the Bankruptcy Court, (b) an Allowed Claim, the Allowed amount thereof, and (c) an Equity Interest, the number of shares evidencing such Equity Interests or the liquidation preference amount, as applicable.

"Final Order" means, as applicable, an order or judgment, entered by the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, that has not been amended, modified or reversed, and as to which (i) no stay is in effect, (ii) the time to seek rehearing, file a notice of appeal or petition for certiorari has expired, (iii) no appeal, request for stay, petition seeking certiorari, or other review has been timely filed and is pending and (iv) any appeal that has been taken, any petition for certiorari, or motion for a new trial, reargument or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided,

however, that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule (whether federal or state) may be but has not then been filed with respect to such order shall not cause such order not to be a Final Order.

"Holder" and, collectively, "Holders," means a Person or Entity legally or beneficially, as applicable, holding a Claim or Equity Interest.

"Impaired" means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"Impaired Claim" means a Claim classified in an Impaired Class.

"Impaired Class" means each of Classes 4, 5, and 6, as set forth in Article 3 of the Plan.

"Lien" means any lien, lease, right of first refusal, servitude, claim, pledge, option, charge, hypothecation, easement, security interest, right-of-way, encroachment, mortgage, deed of trust, and/or any other encumbrance, restriction or limitation whatsoever.

"Liquidating Trust" means the "APC Liquidating Trust," which is to be established pursuant to the terms of this Plan.

"Liquidating Trust Agreement" means the trust agreement governing the Liquidating Trust dated as of the Effective Date, substantially in the form included in the Plan Supplements.

"Liquidating Trust Committee" means the four (4) member board established to oversee, review and guide the activities and performance of the Liquidating Trustee. Members of the Liquidating Trust Committee appointed by the Committee are Baker Hughes Oilfield Operations, Inc.; Buckeye, Inc.; Jet Specialty, Inc.; and Crossfire LLC.

"Liquidating Trustee" means the trustee of the Liquidating Trust as set forth in the Liquidating Trust Agreement.

"Liquidating Trust Professionals" means attorneys, accountants or other professionals that may be retained by the Liquidating Trustee.

"M&M Lien" means a lien pursuant to Chapter 56 of the TEX. PROP. CODE to secure payment for services, equipment or materials furnished in connection with mineral activities which is timely filed and properly perfected.

"M&M Lien Claim" means a claim based on an M&M Lien.

"Oil and Gas Properties" mean all of Debtor's right, title and interest in (i) oil and gas mineral leases, (ii) units, (iii) wells, (iv) surface interests, (v) easements, (vi) right of ways, (vii) equipment, inventory, and fixtures used in connection with the leases and wells.

"Other Priority Claim" means a Claim entitled to priority under section 507(a) of the Bankruptcy Code, other than Allowed Priority Tax Claims, Allowed Administrative Expense Claims, and Allowed Professional Fee Claims.

"Other Secured Claim" means a Secured Claim other than an M&M Lien Claim.

"Person" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

"Petition Date" means July 10, 2015, the date on which the Debtor filed its voluntary petition for relief commencing the Chapter 11 Case.

"Plan" or "Plan of Reorganization" means this chapter 11 plan of reorganization, including the exhibits and schedules hereto, as the same may be amended, modified or supplemented from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

"Plan Proponents" means the Trustee and the Committee.

"Plan Supplement" means the compilation of documents and forms of documents, all of which may be amended, modified, replaced and/or supplemented from time to time, to be filed with the Bankruptcy Court on or before the date that is seven (7) days prior to the Confirmation Hearing. Any reference to the Plan Supplement in this Plan shall include each of the documents identified above.

"Priority Tax Claim" means any Claim that is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

"Professional" means a professional Person, as that term is used in sections 327 and 1103 of the Bankruptcy Code.

"Professional Fee Claim" means a Professional's Claim for compensation or reimbursement of costs and expenses under sections 327, 328, 330, 331, 503(b) (other than 503(b)(4)) or 1103 of the Bankruptcy Code for services rendered to the Debtor, the Trustee, the Liquidating Trustee, or the Committee on and after the Petition Date but before and including the Effective Date.

"Pro Rata" means, at any time, with respect to any Class, the proportion that the Face Amount of a Holder's Allowed Claim in such Class bears to the aggregate Face Amount of all Allowed Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class.

"Reinstated" or "Reinstatement" means (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim so as to leave such Claim Unimpaired; or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of a Claim to demand or receive accelerated payment of such Claim after the occurrence of a default: (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) expressly does not require to be cured; (ii) reinstating the maturity (to the extent such maturity has not otherwise accrued by the passage of time) of such Claim as such maturity

existed before such default; (iii) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim arises from a failure to perform a nonmonetary obligation other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(l)(A), compensating the Holder of such Claim (other than a Debtor or an insider) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder.

"Schedules" means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules and statements have been or may be supplemented or amended.

"Secured Claim" means a Claim that is a "secured claim" within the meaning of § 506(a)(l) of the Bankruptcy Code.

"Solicitation" means the solicitation by the Debtor from Holders of Claims entitled to vote on the Plan pursuant to section 1126(b) of the Bankruptcy Code.

"Statement of Financial Affairs" means the Statement of Financial Affairs (and any amendments or supplements thereto) filed in this Bankruptcy Case.

"Subordinated Claim" means a Claim (i) arising in connection with the sale or purchase of a security of the Debtor or an Affiliate of the Debtor, (ii) arising from a rescission of a purchase or sale of a security of the Debtor or an Affiliate of the Debtor, (iii) for reimbursements or contributions allowed under Bankruptcy Code § 502 on account of a Claim disallowed in (i) or (ii) above, (iv) by an insider or an Affiliate of the Debtor (as those terms are defined in the Bankruptcy Code) (other than the Intercompany Claims) or by an Entity of which the Debtor is an insider or an Affiliate, (v) by a prepetition officer or director of the Debtor, (vi) based on fines, penalties, forfeitures or exemplary or punitive damages, or (viii) otherwise subordinated pursuant to 11 U.S.C. § 510.

"Trust Assets" means all property and contract rights and Assigned Actions transferred to the Liquidating Trust pursuant to the Plan, the Confirmation Order or the Plan Supplements, all of which shall vest in the Liquidating Trust on the Effective Date pursuant to the Plan and in accordance with the Trust Agreement.

"Trust Interests" mean the beneficial interests in the Liquidating Trust as set forth in the Trust Agreement.

"Trust Operating Expense Account" means a separate account established by the Liquidating Trustee at a commercial banking institution.

"Trust Operating Expense Reserve" means a reserve established by the Liquidating Trustee sufficient to pay estimated fees and expenses of the Liquidating Trust for a six (6) month period subsequent to a Distribution to Holders of General Unsecured Claims.

"Unexpired Lease" means any prepetition executory contract or unexpired lease governed by section 365 of the Bankruptcy Code.

"Unimpaired" means, with respect to a Claim (or Class of Claims), a Claim (or Class of Claims) that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

"Unimpaired Class" means Classes 1, 2 and 3, as set forth in Article 3 of the Plan.

"Unsecured Claim" means any Claim that is not (i) a Secured Claim, (ii) an M & M Lien Claim or (iii) entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court and any Claim arising from the rejection of an Executory Contract or Unexpired Lease under section 365 of the Bankruptcy Code.

1.2     <u>Scope of Definitions; Rules of Construction; Rules of Interpretation; Computation of Time</u>. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter. Unless otherwise specified, all section, article, schedule, or exhibit references in this Plan are to the respective section in, article of, or schedule or exhibit to this Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein. A term used in this Plan that is not defined in this Plan shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to this Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

a.     In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) will apply. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions. Any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to this Plan. Any reference to an Entity as a Holder of a Claim includes that Entity's legal successors and assigns.

b.     All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

## ARTICLE 2.
## TREATMENT OF UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(l) of the Bankruptcy Code, Administrative Expense Claims, Priority Tax Claims and Professional Fee Claims are not classified and are not entitled to vote on this Plan.

2.1     Administrative Expenses. Except to the extent that any Entity entitled to payment of any Allowed Administrative Expense Claim agrees to a less favorable treatment, each Holder of an Allowed Administrative Expense Claim shall receive Cash equal to the unpaid portion of its Allowed Administrative Expense Claim, on the latest of (a) the Distribution Date, (b) the date on which its Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or (c) the date on which its Administrative Expense Claim becomes payable under any agreement relating thereto, or as soon thereafter as is reasonably practicable. Notwithstanding the foregoing, (i) all fees of the office of the United States Trustee and (ii) any Allowed Administrative Expense Claim based on a liability incurred by the Debtor in the ordinary course of business during the Chapter 11 Case shall be paid by the Trustee as administrative expenses in the ordinary course of the Debtor's businesses, in accordance with the terms and conditions applied to the United States Trustee fees or of any agreement relating to such other administrative expenses or upon such other terms as may be agreed upon between the Holder of such Claim and the Debtor, without application by or on behalf of any such parties to the Bankruptcy Court, and without notice and a hearing.

Applications for payment of Administrative Expense Claims (including requests for compensation under section 503(b)(3) and (4) of the Bankruptcy Code) must be filed with the Bankruptcy Court and served on the Trustee and Liquidating Trustee no later than the Administrative Expense Bar Date. Applications for payment of Administrative Expense Claims filed after this date shall be discharged, forever barred and shall receive no payment under this Plan. Notwithstanding the foregoing, Holders of Administrative Expense Claims of the type described in clauses (i) and (ii) of the preceding paragraph shall not be required to file applications for payment.

2.2     U.S. Trustee Fees. All fees payable under section 1930 of title 28 of the United States Code shall be paid on or before the Effective Date. All such fees that arise after the Effective Date but before the closing of the Chapter 11 Case shall be paid by the Liquidating Trustee.

2.3     Priority Tax Claims. Except to the extent that a Holder of a Priority Tax Claim agrees to less favorable treatment, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, on the later of (a) the Distribution Date or (b) the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim, (x) Cash equal to the unpaid portion of such Allowed Priority Tax Claim or (y) such other treatment as to which the Trustee and such Holder shall have agreed upon in writing. The Holder of an Allowed Priority Tax Claim will not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the Allowed Priority Tax Claim. Any such Claim or demand for any such penalty will be subject to treatment in Class 4.

2.4     Professional Fee Claims. Unless otherwise ordered by the Bankruptcy Court, the Holders of Professional Fee Claims shall file their respective final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later than the date that is thirty (30) days after the Effective Date. If granted by the Bankruptcy Court, such Claim shall be paid in full in such amount as is Allowed by the Bankruptcy Court on the date such Professional Fee Claim becomes an Allowed

Professional Fee Claim, or as soon as reasonably practicable thereafter. The Trustee shall be responsible for and timely pay one hundred percent (100%) of the Allowed Professional Fee Claims.

## ARTICLE 3.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

3.1    Introduction. This Plan places all Claims and Equity Interests, except unclassified Claims provided for in Article 2, in the Classes listed below. Unless otherwise stated, a Claim or Equity Interest is placed in a particular Class only to the extent that it falls within the description of that Class, and is classified in any other Class to the extent that any portion thereof falls within the description of such other Class.

3.2    Summary of Classes.

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Other Priority Claims | Unimpaired | No (deemed to accept) |
| Class 2 | Allowed Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 3 | Allowed Secured M&M Lien Claims | Unimpaired | No (deemed to accept) |
| Class 4 | Allowed General Unsecured Claims | Impaired | Yes |
| Class 5 | Subordinated Claims | Impaired | Yes |
| Class 6 | Equity Interests | Impaired | Yes |

3.3    Treatment of Classified Claims and Equity Interests.

a.    *Class 1 - Other Priority Claims*.

(i)    Claims in Class: Class 1 consists of all Allowed Other Priority Claims.

(ii)    Treatment: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, each Holder of an unpaid Allowed Other Priority Claim against the Debtor shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Other Priority Claim, Cash equal to the full amount of its Allowed Other Priority Claim by the Trustee, as applicable in the ordinary course of business.

(iii)    Voting: Class 1 is Unimpaired by the Plan. Pursuant to section 1126(f) of the Bankruptcy Code, each Holder of an Allowed Other Priority Claim in Class 1 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

b.  *Class 2 - Other Secured Claims.*

(i)  <u>Claims in Class</u>: Class 2 consists of all Allowed Other Secured Claims.

(ii)  <u>Treatment</u>: Except to the extent a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, on the latest of (x) the Effective Date, (y) the date on which an Other Secured Claim becomes an Allowed Other Secured Claim, and (z) such other date as may be ordered by the Bankruptcy Court, or, in each case, as soon as reasonably practicable thereafter, each Allowed Other Secured Claim shall be, at the election of the Debtor: (i) Reinstated, (ii) paid in Cash, in full satisfaction, settlement, release and discharge of such Allowed Other Secured Claim, (iii) satisfied by the Debtor's surrender of the collateral securing such Allowed Other Secured Claim, or (iv) offset against, and to the extent of, the Debtor's claims against the Holder of such Allowed Other Secured Claim.

(iii)  <u>Voting</u>: Class 2 is Unimpaired by the Plan. Pursuant to section 1126(f) of the Bankruptcy Code, each Holder of an Allowed Other Secured Claim in Class 2 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

c.  *Class 3 - Secured M & M Lien Claims*

(i)  <u>Claims in Class</u>: Class 3 consists of Allowed Secured M & M Lien Claims.

(ii)  <u>Treatment</u>: Except to the extent a Holder of an Allowed Secured M & M Lien Claim agrees to less favorable treatment, on the latest of (x) the Effective Date, (y) the date on which a Secured M & M Lien Claim becomes an Allowed Secured M & M Lien Claim, and (z) such other date as may be ordered by the Bankruptcy Court, or, in each case, as soon as reasonably practicable thereafter, each Allowed Secured M & M Lien Claim shall be, at the election of the Debtor: (i) Reinstated, (ii) paid in Cash, in full satisfaction, settlement, release and discharge of such Allowed Secured M & M Lien Claim, (iii) satisfied by the Debtor's surrender of the collateral securing such Allowed Secured M & M Secured Claim, or (iv) offset against, and to the extent of, the Debtor's claims against the Holder of such Allowed Secured M & M Lien Claim.

(iii)  <u>Voting</u>: Class 3 is Unimpaired by the Plan. Pursuant to section 1126(f) of the Bankruptcy Code, each Holder of an Allowed M & M Lien Claim in Class 3 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

d.  *Class 4 -Allowed General Unsecured Claims.*

(i)  <u>Claims in Class</u>: Class 4 consists of all Allowed General Unsecured Claims against the Debtor.

(ii)     Treatment: Each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of Trust Distributions with other Class 4 creditors in accordance with Article 3 of the Plan and the Trust Agreement.

(iii)     Voting: Class 4 is Impaired by the Plan. Each Holder of an Allowed General Unsecured Claim in Class 4 is entitled to vote on the Plan.

e.     *Class 5 - Subordinated Claims.*

(i)     Claims in Class: Class 5 consists of Subordinated Claims.

(ii)     Treatment: Each Holder of an Allowed Subordinated Claim shall receive its Pro Rata share of Trust Distributions with other Class 5 creditors in accordance with Article 3 of the Plan and the Trust Agreement. No payment or transfer shall be made for or on account of a Subordinated Claim until all obligations under the Plan to Holders of Classes 1 through 4 Claims are satisfied in full.

(iii)     Voting: Class 5 is Impaired by the Plan. Each Holder of a Subordinated Claim in Class 5 is entitled to vote on the Plan.

f.     *Class 6 - Equity Interests.*

(i)     Claims in Class: Class 6 consists of Equity Interests.

(ii)     Treatment:  The Equity Interests will be canceled as of the Effective Date. Each Holders of a Class 6 Equity Interest shall receive its Pro Rata share of Trust Distributions with other Class 6 creditors in accordance with Article 3 of the Plan and the Trust Agreement. No payment or transfer shall be made for or on account of an Equity Interest until all obligations under the Plan to Holders of Classes 1 through 5 Claims are satisfied in full.

(iii)     Voting: Class 6 is Impaired by the Plan. Each Holder of an Equity Interest in Class 6 is entitled to vote on the Plan.

3.4     Allowed Claims. Notwithstanding any provision herein to the contrary, the Trustee shall make all payments with respect to Classes 1, 2 and 3. The Liquidating Trust shall only make Distributions on account of Classes 3 (only to the extent not paid by the Trustee), 4, 5 and 6 Claims.

3.5     Special Provision Governing Unimpaired Claims. Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtor's rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

3.6     Controversy Concerning Impairment. If a controversy arises as to whether any Claims, or any Class of Claims, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE 4.
## MEANS FOR IMPLEMENTATION OF THIS PLAN

4.1     General Settlement of Claims and Interests. Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan. The conveyances by Trustee to the Liquidating Trust pursuant to the Plan shall constitute a sale free and clear of Liens, Claims and encumbrances pursuant to 11 U.S.C. § 363 with any affected Liens, Claims or encumbrances being treated in accordance with the terms of the Plan.

4.2     Sources of Cash Consideration for Plan Distributions. The Trustee shall fund payments under the Plan with Cash on hand. Any Distributions made by the Liquidating Trustee to beneficiaries of the Liquidating Trust shall consist only of Trust Assets in accordance with the Trust Agreement.

4.3     Continued Corporate Existence. Except as otherwise provided in the Plan, the Reorganized Debtor shall be wound up and its corporate existence shall be terminated by the Trustee.

4.4     Assigned Actions. On the Effective Date, the Assigned Actions shall be assigned to the Liquidating Trust.

4.5     Preservation of Rights of Action; Settlement of Litigation Claims - Liquidating Trust. For the avoidance of doubt, and notwithstanding anything to the contrary herein, all Assigned Actions are preserved as they existed immediately before the Effective Date for the Liquidating Trustee to prosecute on behalf of the Liquidating Trust. The Liquidating Trust shall be vested with and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) the Assigned Actions of the Debtor or its Estate against any Entity without further approval of the Bankruptcy Court whether arising before or after the Petition Date and the Liquidating Trust's rights to commence, prosecute, or settle such Assigned Action shall be preserved notwithstanding the occurrence of the Effective Date. The Liquidating Trustee shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Assigned Action and to decline to do any of the foregoing without the consent or approval of any third party (other than the Liquidating Trust Committee to the extent provided herein) or further notice to or action, order, or approval of the Bankruptcy Court. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplements, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtor, the Reorganized Debtor, the Liquidating Trustee or the Liquidating Trust will not pursue any and all Assigned Action against it. The Liquidating Trustee expressly reserves all rights to prosecute any and all Assigned Actions against any Entity.** The Liquidating Trust and Liquidating Trustee expressly reserves all Assigned Actions, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel judicial, equitable, or otherwise), or laches, shall apply to such Assigned Action upon, after, or as a consequence of Confirmation of the Plan. As to the

Assigned Actions contributed to the Liquidating Trust, the Liquidating Trustee shall constitute the representative of the bankruptcy Estate for purposes of retaining, asserting and/or confirming claims or Assigned Actions under Section 1123(b)(3)(b) of the Bankruptcy Code.

4.6     _Effectuating Documents; Further Transactions._ On and after the Effective Date, the Trustee or Liquidating Trustee are authorized to and may issue, execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents, including the Plan Supplements, and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

4.7     _The Liquidating Trust._

a.     _Establishment of the Liquidating Trust._ On the Effective Date, the Liquidating Trust shall be established for the benefit of the Holders of Allowed Secured M&M Lien Claims and Allowed General Unsecured Claims. This Section sets forth certain of the rights, duties, and obligations of the Liquidating Trustee. In the event of any conflict between the terms of this Section and the terms of the Trust Agreement, the terms of the Trust Agreement shall govern.

b.     _Execution of Trust Agreement._ On the Effective Date, the Trust Agreement shall be executed, and all other necessary steps shall be taken to establish the Liquidating Trust and the beneficial interests therein. The form of the Trust Agreement and related ancillary documents shall be acceptable to the Creditors' Committee in its sole discretion, subject only to Bankruptcy Court approval at the Confirmation Hearing.

c.     _Purpose of the Liquidating Trust._ The Liquidating Trust shall be established for the sole purpose of liquidating and distributing the Trust Assets to the Holders of Trust Interests in the Liquidating Trust, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or to engage in the conduct of a trade or business. The Liquidating Trust, through the Liquidating Trustee, shall (i) collect and reduce the Trust Assets to Cash, (ii) prosecute, settle and otherwise administer the Assigned Actions, (iii) make Distributions to the beneficiaries of the Liquidating Trust in accordance with the Plan and Trust Agreement and (iv) take all such actions as are reasonably necessary to accomplish the purpose hereof, as more fully provided in the Trust Agreement.

d.     _Trust Assets._ The Liquidating Trust shall consist of the Trust Assets. On the Effective Date, all Transfers to the Liquidating Trust provided for under this Plan shall be made by the applicable party, including the following (1) cash, less reserves necessary to pay any claims senior to Class 4, accrued administrative expenses, U.S. Trustee fees accrued for the period through the Effective Date and a reserve for wind-down expenses; (ii) all Assigned Actions; and (iii) all other remaining property interests of the Debtor, including, but not limited to, any assumed contracts. On the Effective Date, the Trust Assets, including the Assigned Actions, shall automatically vest in the Liquidating Trust, free and clear of all Liens, Claims and encumbrances.

e.    *Governance of the Liquidating Trust.* The Liquidating Trust shall be governed by the Liquidating Trust Committee in accordance with the Trust Agreement and consistent with the Plan. Any three members of the Liquidating Trust Committee shall constitute a quorum for voting and approval purposes. Whenever such quorum is present, the vote of a majority of such quorum shall be binding on the Liquidating Trust Committee and the Liquidating Trust.

f.    *The Liquidating Trustee.* The Creditors' Committee shall select the Liquidating Trustee, subject only to Court approval at the Confirmation Hearing. With respect to the Trust Assets, the Liquidating Trustee shall be a representative of the Estate pursuant to section 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code. The Liquidating Trustee may prosecute, settle and otherwise administer the Assigned Actions on behalf of the Liquidating Trust, without the need for Bankruptcy Court approval or any other notice or approval, except as set forth in the Trust Agreement, and shall also have standing and authority to object to any Claims filed against the Debtor's Estate or scheduled by the Debtor that purport to qualify as an Allowed Secured M&M Lien Claim or Allowed General Unsecured Claim under the terms of the Plan, including, without limitation, pursuant to section 502(d) of the Bankruptcy Code. The Liquidating Trustee shall be exempt from giving any bond or other security in any jurisdiction.

g.    *General Powers of Liquidating Trustee.* The Liquidating Trustee, on behalf of the Liquidating Trust, shall have all of the rights, powers and privileges set forth in this Plan, the Confirmation Order, and the Trust Agreement. Subject to obtaining the approval of the Liquidating Trust Committee to the extent required by his Plan, the Liquidating Trustee is authorized and shall have the obligation to take all such actions as in his/her judgment are necessary and appropriate to effectuate the purposes of the Plan, including but not limited to the following:

(i)    Perform the duties, exercise the powers, and assert the rights of a trustee under Sections 704 and 1106 of the Bankruptcy Code with respect to the Trust Assets or Liquidating Trust, including, without limitation, commencing, prosecuting or settling Assigned Actions contributed to the Liquidating Trust, enforcing contracts, and asserting claims, defenses, offsets and privileges;

(ii)    Hold legal title to any and all rights of the beneficiaries of the Liquidating Trust in or arising from the Trust Assets, including, without limitation, collecting, receiving any and all money and other property belonging to the Liquidating Trust and the right to vote any claim or interest in a case under the Bankruptcy Code and receive any Distribution therein;

(iii)    Make Distributions to the Holders of Allowed Secured M&M Lien Claims and Allowed General Unsecured Claims contemplated under the Plan and Trust Agreement;

(iv)    Supervise and administer the reconciliation, resolution and settlement of Allowed Secured M&M Lien Claims and Allowed General Unsecured Claims and the Distributions to the Holders of Allowed Secured M&M Lien Claims and Allowed General Unsecured Claims in accordance with the Plan;

(v)          Enter into any agreement on behalf of the Liquidating Trust required by or consistent with the Plan and perform all of the obligations required of the Liquidating Trustee under the Trust Agreement or the Plan;

(vi)         With the prior approval of the Liquidating Trust Committee, abandon any of the assets of the Liquidating Trust if the Liquidating Trustee concludes that such assets are of no net benefit to Allowed Secured M&M Lien Claims and Allowed General Unsecured Claim Holders;

(vii)        Participate in or initiate any proceeding with respect to the Trust Assets before the Bankruptcy Court or any other court of appropriate jurisdiction and participate as a party or otherwise in any administrative, arbitrative or other non-judicial proceeding and litigate claims on behalf of the Liquidating Trust, including all Assigned Actions;

(viii)       Participate as a party-in-interest in any proceeding with respect to the Trust Assets or the Liquidating Trust before the United States Bankruptcy Court involving the Chapter 11 Case;

(ix)         With the prior approval of the Liquidating Trust Committee, participate in or initiate, prosecute and settle an objection to allowance of any General Unsecured Claim or M&M Lien Claim without approval of the Bankruptcy Court;

(x)          Protect and enforce the rights to the Trust Assets by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(xi)         Take actions and exercise remedies (including, but not limited to, those provided under the Plan Supplements) against any Entity that owes an obligation to the Liquidating Trust;

(xii)        Subject to the prior approval of the Liquidating Trust Committee, retain and pay such Liquidating Trust Professionals as the Liquidating Trustee may select to assist the Liquidating Trustee in its duties, on such terms as the Liquidating Trustee deems appropriate, without Bankruptcy Court approval. For the avoidance of doubt, the engagement of any professionals by the Liquidating Trust must be approved in advance by the Liquidating Trust Committee. Subject to Liquidating Trust Committee approval, the Liquidating Trustee may commit the Liquidating Trust to and shall pay Liquidating Trust Professionals reasonable compensation for services rendered and expenses incurred and may engage counsel on a contingent basis. A law firm or professional shall not be disqualified from serving as a Liquidating Trust Professional solely because of its current or prior retention as counsel or professional to the parties in interest in the Case;

(xiii)      Retain and pay such third parties as the Liquidating Trustee may deem necessary or appropriate to assist the Liquidating Trustee in carrying out its powers and duties under the Trust Agreement, subject to Liquidating Trust Committee approval. Subject to Liquidating Trust Committee approval, the Liquidating Trustee may commit the Liquidating Trust to and shall pay all such Persons reasonable compensation for services rendered and

expenses incurred, as well as commit the Liquidating Trust to indemnify any such parties in connection with the performance of services;

(xiv)     Employ such employees as the Liquidating Trustee, and as consistent with the purposes of the Liquidating Trust, may deem necessary or appropriate to assist the Liquidating Trustee in carrying out its powers and duties under this Trust Agreement. The Liquidating Trustee may commit the Liquidating Trust to and shall pay all such employees reasonable salary in the amounts it shall determine to be appropriate and any employee benefits it may establish. If the Liquidating Trustee employs employees, the Liquidating Trustee shall establish payroll procedures and pay any and all federal, state or local tax withholding required under applicable law with respect to any such employees, and it will take all other actions it deems necessary;

(xv)     Assert or waive any privilege or defense on behalf of the Liquidating Trust or, with respect to the Trust Assets, as provided in the Trust Agreement or this Plan;

(xvi)     Subject to prior approval by the Liquidating Trust Committee, compromise, adjust, arbitrate, sue on or defend, pursue, prosecute. abandon, exercise rights, powers, and privileges with respect to, or otherwise deal with and settle, in accordance with the terms set forth herein, all Causes of Action in favor of or against the Liquidating Trust as the Liquidating Trustee shall deem advisable;

(xvii)     Execute offsets and assert counterclaims against M&M Lien Claims or General Unsecured Claims as part of an objection to any M&M Lien Claim or General Unsecured Claim, but only up to the amount of the General Unsecured Claim or M&M Lien Claim;

(xviii)     Invest any moneys held as part of the Liquidating Trust in accordance with the terms of the Trust Agreement, limited, however, to such investments that are consistent with the Liquidating Trust's status as a Liquidating Trust within the meaning of Treasury Regulations Section 301.7701-4(d);

(xix)     Request any appropriate tax determination with respect to the Liquidating Trust, including, without limitation, a determination pursuant to section 505 of the Bankruptcy Code;

(xx)     Take or refrain from taking any and all actions the Liquidating Trustee reasonably deems necessary or convenient for the continuation, protection and maximization of the Trust Assets or to carry out the purposes hereof;

(xxi)     Assume such other powers as may be vested in or assumed by the Liquidating Trust pursuant to the Plan or Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan or the Trust Agreement;

(xxii)     Establish and maintain such bank accounts, to draw checks on such bank accounts and perform such other necessary and appropriate duties with respect to such

accounts, or designate individuals as signatories therefore, as the Liquidating Trustee may direct and authorize;

(xxiii)     Invest or reinvest Trust Assets and to cause such investments, or any part thereof, to be registered and held in its name, as Liquidating Trustee, or in the name of nominees;

(xxiv)     Hold any unclaimed Distribution or payment to the Holder of an Allowed General Unsecured Claim or Allowed Secured M&M Lien Claim in accordance with the Plan and the Trust Agreement;

(xxv)     Propose (but not require) any amendment, modification or supplement to the Plan or the Trust Agreement with respect to Trust Assets or the Liquidating Trust that is not inconsistent with the Plan;

(xxvi)     File dissolution/termination documents with the appropriate governmental agencies to dissolve the Liquidating Trust;

(xxvii)     Receive, conserve and manage the Trust Assets, and sell, pursuant to 11 U.S.C. § 1123(a)(5) and the Plan, or otherwise dispose of such assets for a price and upon such terms and conditions as the Liquidating Trustee deems most beneficial to the Holders of Allowed General Unsecured Claims and Allowed Secured M&M Lien Claims that are approved by the Liquidating Trust Committee and execute such instruments in connection therewith;

(xxviii)     Pay all taxes, if any, properly payable by the Liquidating Trust, make all tax withholdings and file tax returns and tax information returns with respect to the Liquidating Trust, and make tax elections by and on behalf of the Liquidating Trust;

(xxix)     Pay all lawful expenses, debts, charges and liabilities of the Liquidating Trust or relating to the Trust Assets;

(xxx)     Establish such reserves for taxes, assessments and other expenses of administration of the Liquidating Trust as may be necessary and appropriate for the proper operation of matters incident to the affairs of the Liquidating Trust; and

(xxxi)     Exercise such other powers ·and duties as are necessary or appropriate in the Liquidating Trustee's discretion to accomplish the purposes of the Plan.

h.     *Reporting Obligations.*

(i)     The Liquidating Trustee shall cause to be prepared a semi-annual report setting forth (a) receipts and disbursements during the period, (b) a schedule of all asset dispositions, (c) a schedule of Distributions made, and (c) a summary listing of the status of the resolution of objections to General Unsecured Claims and M&M Lien Claims and Assigned Actions. Such semi-annual report shall be distributed to the Liquidating Trust Committee within fifteen (15) Business Days after the end of the relevant report preparation period.

(ii)        The Liquidating Trustee shall maintain records and books of account relating to the Trust Assets, the management thereof and all transactions undertaken by the Liquidating Trustee on behalf of the Liquidating Trust. The Liquidating Trustee shall also maintain records and books of account relating to all Distributions contemplated under the Plan.

i.        *Accounts.* Within five (5) Business Days of the Effective Date, the Liquidating Trustee shall establish the Liquidating Trust bank account(s).

j.        *Deposit of Trust Proceeds.* The Liquidating Trustee shall deposit Cash upon receipt.

k.        *Compensation*. The Liquidating Trustee and the Liquidating Trust Professionals employed by it shall be entitled to payment of their fees and reimbursement of all reasonable expenses on a monthly basis from Trust Assets pursuant to the terms of the Trust Agreement, without Bankruptcy Court approval.

l.        *Resignation/Removal of the Liquidating Trustee*. The Liquidating Trustee may resign at any time by filing a written notice of resignation with the Bankruptcy Court. Any such resignation shall become effective on the earlier to occur of (i) sixty (60) days after the filing date of such notice; and (ii) the appointment of a successor Liquidating Trustee. The Liquidating Trust Committee may remove the Liquidating Trustee at its discretion upon unanimous vote of all members without approval of the Bankruptcy Court, provided, however, that the Liquidating Trust Committee shall provide the Liquidating Trustee with thirty (30) days written notice of its intent to remove the Liquidating Trustee. All fees and expenses incurred by the Liquidating Trustee and the Liquidating Trust Committee in pursuit of the removal or continuation of the Liquidating Trustee shall be paid by the Liquidating Trust.

m.        *Appointment of Successor Liquidating Trustee*. In the event of the death, resignation or removal of the Liquidating Trustee, the Liquidating Trust Committee shall select a successor Liquidating Trustee. Any successor Liquidating Trustee shall execute and file a statement accepting such appointment and agreeing to be bound by the terms of the Plan and upon such filing, the successor Liquidating Trustee shall immediately become vested with all the rights, powers, trusts and duties of the Liquidating Trustee.

n.        *Preservation of Rights and Causes of Action*. In keeping with section 1123(b)(3) of the Bankruptcy Code, the Debtor will retain and transfer to the Liquidating Trust all Assigned Actions.

o.        *Records of the Debtor*. The Liquidating Trustee shall be granted access to the Debtor's books, records and electronically stored information for review and copying.

p.        *Nontransferability of Liquidating Trust Interests*. The beneficial interests in the Liquidating Trust shall not be transferable (except as otherwise provided in the Trust Agreement).

q.        *Distribution of Trust Assets*. The Liquidating Trustee shall distribute Cash to the Liquidating Trust beneficiaries in accordance with the terms of this Plan and the Trust Agreement.

r.    *Trust Certificates*. The Trust Interests shall not be represented by certificates, receipts, or in any other form or manner, except as maintained on the books and records of the Liquidating Trust by the Liquidating Trustee, as set forth in the Trust Agreement.

s.    *Federal Income Tax Treatment of the Liquidating Trust*.

(i)    <u>Trust Assets Treated as Owned by Holders of Allowed General Unsecured Creditors and Allowed Secured M&M Lien Claims</u>. For all federal income tax purposes, all parties (including, without limitation, the Debtor, the Liquidating Trustee, and the holders of beneficial interests in the Liquidating Trust) shall treat the transfer of the Trust Assets to the Liquidating Trust for the benefit of the beneficiaries thereof, whether Allowed on or after the Effective Date as the transfer by such holders to the Liquidating Trust of the Trust Assets in exchange for, beneficial interests in the Liquidating Trust. Accordingly, the Holders of Allowed General Unsecured Claims and Allowed Secured M&M Lien Claims shall be treated for federal income tax purposes as the grantees and owners of their respective shares of the Trust Assets.

(ii)    <u>Tax Reporting</u>.

A.    (i) The Liquidating Trustee shall file income tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation section l.671-4(a) and in accordance with this Section; (ii) the Liquidating Trustee shall annually send to each record holder of a beneficial interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction, or credit and will instruct all such holders to report such items on their federal income tax returns or to forward the appropriate information to the beneficial holders with instructions to report such items on their federal income tax returns; and (iii) the Liquidating Trust's taxable income, gain, loss, deduction, or credit will be allocated among the beneficial holders of the interests in the Liquidating Trust in accordance with each holder's relative beneficial interests in the Liquidating Trust.

B.    As soon as possible after the Effective Date, but in no event later than ninety (90) days after the Effective Date, the Liquidating Trustee shall make a good faith valuation of the Trust Assets. Such valuation shall be made available from time to time, to the extent relevant, and used consistently by all parties for all federal income tax purposes. The Liquidating Trustee shall also file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any governmental unit.

C.    Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee shall treat any Trust Assets allocable to, or retained on account of, Disputed General Unsecured Claims and Disputed M&M Lien Claims as held by one or more discrete trusts for federal income tax purposes (the "**Trust Claims Reserve**"), consisting of separate and independent shares to be established in respect of each Disputed General Unsecured Claim and Disputed M&M Lien Claim, in accordance with the trust provisions of the Tax Code (section 641 et seq.), (ii) treat as taxable income or loss of the Trust Claims Reserve, with respect to any given taxable year, the portion of the taxable income or loss

of the Liquidating Trust that would have been allocated to the Holders of Disputed General Unsecured Claims and Disputed M&M Lien Claims had such Claims been Allowed on the Effective Date (but only for the portion of the taxable year with respect to which such Claims are unresolved), (iii) treat as a Distribution from the Trust Claims Reserve any increased amounts distributed by the Liquidating Trust as a result of any Disputed General Unsecured Claims or Disputed M&M Lien Claims resolved earlier in the taxable year, to the extent such Distributions relate to taxable income or loss of the Trust Claims Reserve determined in accordance with the provisions hereof, and (iv) to the extent permitted by applicable laws report consistent with the foregoing for state and local income tax purposes. All Liquidating Trust beneficiaries shall report, for tax purposes, consistent with the foregoing.

D.     The Liquidating Trustee shall be responsible for payments, out of the Trust Assets, of any taxes imposed on the Liquidating Trust or the Trust Assets, including the Trust Claims Reserve. In the event, and to the extent, any Cash retained on account of Disputed Unsecured Claims or Disputed M&M Lien Claims in the Trust Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Unsecured Claims or Disputed M&M Lien Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed Unsecured Claims or Disputed M&M Lien Claims, or (ii) to the extent such Disputed Unsecured Claims or Disputed M&M Lien Claims have subsequently been resolved, deducted from any amounts distributable by the Liquidating Trustee as a result of the resolutions of such Disputed Unsecured Claims or Disputed M&M Lien Claims.

E.     The Liquidating Trustee may request an expedited determination of taxes of the Liquidating Trust, including the Trust Claims Reserve, under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

t.     *Dissolution.* The Liquidating Trust and the Liquidating Trustee shall be discharged or dissolved, as the case may be, no later than the fifth anniversary of the Effective Date; provided, however, that, on or prior to the date that is ninety (90) days prior to such termination, the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Liquidating Trust if it is necessary to the liquidation of the Trust Assets. Notwithstanding the foregoing, multiple extensions may be obtained so long as Bankruptcy Court approval is obtained not less than ninety (90) days prior to the expiration of each extended term; provided, however, that in no event shall the term of the Liquidating Trust extend past the tenth (10th) anniversary of the Effective Date; provided further that neither the Trust Agreement nor the continued existence of the Liquidating Trust shall prevent the Debtor from closing the Chapter 11 Case pursuant to section 350 of the Bankruptcy Code and obtaining a final decree pursuant to Bankruptcy Rule 3022. The Liquidating Trust may be terminated earlier than its scheduled termination if (i) the Bankruptcy Court has entered a Final Order closing all of or the last of the Chapter 11 Case pursuant to section 350(a) of the Bankruptcy Code and (ii) the Liquidating Trustee has administered all Trust Assets and performed all other duties required by the Plan, the Confirmation Order, the Trust Agreement and the Liquidating Trust. The Liquidating Trustee shall not unduly prolong the duration of the Liquidating Trust and shall at all times endeavor to resolve, settle or otherwise dispose of all claims that constitute Trust Assets and to effect the Distribution of the Trust Assets in accordance with the terms hereof and terminate the

Liquidating Trust as soon as practicable. Prior to and upon termination of the Liquidating Trust, the Trust Assets will be distributed to the beneficiaries of Liquidating Trust, pursuant to the provisions set forth in the Trust Agreement.

If at any time the Liquidating Trustee determines that the expense of administering the Liquidating Trust is likely to exceed the value of the Trust Assets, the Liquidating Trustee shall have the authority to (i) donate any balance to a non-religious charitable organization exempt from federal income tax under section 501(c)(3) of the Tax Code that is unrelated to the Debtor and any insider of the Debtor and (ii) dissolve the Liquidating Trust.

u.    *Indemnification of Liquidating Trustee.* The Liquidating Trustee or the individuals comprising the Liquidating Trustee, as the case may be, and the Liquidating Trustee's agents and professionals, shall not be liable for actions taken or omitted in its capacity as, or on behalf of, the Liquidating Trustee, except those acts arising out of its or their own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or ultra vires acts, and each shall be entitled to indemnification and reimbursement from Trust Assets for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Liquidating Trustee, except for any actions or inactions involving willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or ultra vires acts. Any indemnification claim of the Liquidating Trustee shall be satisfied exclusively from the Trust Assets. The Liquidating Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.

4.8    The Liquidating Trust Committee.

a.    *Formation.* On the Effective Date, a Liquidating Trust Committee shall be formed. The Liquidating Trust Committee shall be governed by the terms of the Trust Agreement. The members of the Liquidating Trust Committee shall appoint representatives as provided for in the Trust Agreement. Any member of the Liquidating Trust Committee may designate any other member as proxy for any vote of the Liquidating Trust Committee. Until any vacancy on the Liquidating Trust Committee is filled, the Liquidating Trust Committee shall function in its reduced number.

b.    *Powers of the Liquidating Trust Committee.* The Liquidating Trust Committee shall:

(i)    have the right to review, approve and object to settlements and proposed prosecution, release or abandonment of objections to M&M Lien Claims, General Unsecured Claims and/or Causes of Action by the Liquidating Trustee subject to the terms of the Plan, the Confirmation Order, and the Trust Agreement, provided, however, that no member of the Liquidating Trust Committee shall review or have any authority over decisions of the Liquidating Trust Committee or the Liquidating Trustee relating to any Claims or Causes of Action in which that member is a claimant against the Debtor or defendant in an action brought by the Liquidating Trust;

(ii)    have the right to review, approve and object to proposed sales and other dispositions of Trust Assets;

(iii)    be vested with authority to remove the Liquidating Trustee, or any successor Liquidating Trustee, appointed pursuant to the Plan, the Confirmation Order, or the Trust Agreement;

(iv)    consult with the Liquidating Trustee in connection with any other matters. related to the Plan, the Confirmation Order, or the Trust Agreement;

(v)    Select a successor member of Liquidating Trust Committee as provided in Section ___of the Trust Agreement;

(vi)    Approve the hiring of each professional by the Liquidating Trustee and the terms under which each such professional is to be compensated;

(vii)    Monitor and receive periodic reports and updates from the Liquidating Trustee regarding the status of the administration of the Liquidating Trust Assets; and

(viii)    perform such additional functions otherwise provided for in the Plan, the Confirmation Order, or the Trust Agreement, or are provided for by further order of the Court entered after the Effective Date.

c.    *Exculpation.* The members of the Liquidating Trust Committee shall undertake their duties as specified in the Plan and the Trust Agreement. In serving as a member of the Liquidating Trust Committee, such members shall not assume or be deemed to have assumed any liability to Creditors, Equity Interest Holders, the Debtor, the Reorganized Debtor, the Liquidating Trust, the Liquidating Trustee, or any other parties in interest in the Chapter 11 Case and shall not be liable for any acts or omissions while acting in that capacity, except for acts or omissions in bad faith and acts or omissions constituting malfeasance or gross negligence. In addition, the members of the Liquidating Trust Committee shall be entitled to reimbursement from the Liquidating Trust of their reasonable expenses incurred in connection with their duties as members of the Liquidating Trust Committee. Resignation and removal of Liquidating Trust Committee members, and appointment of their successors, shall be conducted pursuant to the terms of the Trust Agreement.

d.    *Dissolution.* The Liquidating Trust Committee shall be dissolved at the time the Liquidating Trust is dissolved. Upon dissolution, the members thereof shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from their service as Liquidating Trust Committee members.

e.    *Indemnification of Liquidating Trust Committee.* The Liquidating Trust Committee or the individuals comprising the Liquidating Trust Committee, as the case may be, and the Liquidating Trust Committee's agents and professionals, shall not be liable for actions taken or omitted in its capacity as, or on behalf of, the Liquidating Trust Committee, except those acts arising out of its or their own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or ultra vires acts, and each shall be entitled to indemnification and reimbursement from Trust Assets for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Liquidating Trust Committee, except for any actions or inactions involving willful misconduct, gross negligence, bad faith, self-

dealing, breach of fiduciary duty, or ultra vires acts. Any indemnification claim of the Liquidating Trust Committee shall be satisfied exclusively from the Trust Assets. The Liquidating Trust Committee shall be entitled to rely, in good faith, on the advice of its retained professionals.

## ARTICLE 5.
## PROVISIONS GOVERNING DISTRIBUTIONS

5.1     Delivery of Distributions; Undeliverable or Unclaimed Distributions. Distributions to Holders of Allowed Claims shall be made by BMS or the Liquidating Trustee (with respect to Allowed General Unsecured Claims and Allowed Secured M&M Lien Claims the Liquidating Trustee) as applicable, (a) at the Holder's last known address, or (b) at the address in any written notice of address change delivered to the Reorganized Debtor and the Liquidating Trustee. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made, unless and until the Trustee or (with respect to Allowed General Unsecured Claims and Allowed Secured M&M Lien Claims, the Liquidating Trustee) is notified of such Holder's then current address, at which time all missed Distributions shall be made to such Holder without interest. Amounts in respect of undeliverable Distributions made by the Liquidating Trust to Holders of Allowed Secured M&M Lien Claims and Allowed General Unsecured Claims shall be returned to the Liquidating Trust until such Distributions are claimed. All claims for undeliverable Distributions by the Liquidating Trust must be made on or before the first anniversary of the returned Distribution after which date they will be conclusively deemed forfeited, without need for further order of the Bankruptcy Court and no further Distribution will be made for or on account of said Claim. All forfeited Distributions with respect to Allowed General Unsecured Claims and Allowed Secured M&M Lien Claims (including interest thereon), shall be property of the Liquidating Trust notwithstanding any federal or state escheat laws to the contrary.

5.2     Withholding and Reporting Requirements. The Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions from the Liquidating Trust shall be subject to any such withholding and reporting requirements. Each Holder of an M&M Lien Claim or a General Unsecured Claim shall be required to execute and deliver a W-9 form to the Liquidating Trustee as a condition to any Distribution. Any creditor asserting an M&M Lien Claim or General Unsecured Claim must deliver the executed W-9 form to the Liquidating Trustee on or before the first anniversary of the Effective Date. The rights of any creditor asserting an M&M Lien Claim or a General Unsecured Claim for Distributions from the Liquidating Trust will be conclusively deemed forfeited if an executed W- 9 form is not timely delivered to the Liquidating Trustee. All forfeited Distributions with respect to Allowed General Unsecured Claims and Allowed Secured M&M Lien Claims (including interest thereon) shall be property of the Liquidating Trust notwithstanding any federal or state escheat laws to the contrary.

5.3     Setoffs. The Liquidating Trustee may, but shall not be required to, set off against any Allowed Secured M&M Lien Claim or Allowed General Unsecured Claim, and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature, whatsoever that the Liquidating Trust may have against the Holder of such Claim; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder

shall constitute a waiver or release by the Liquidating Trust of any claim that the Liquidating Trust may have against such Holder. Nothing in this Plan shall be deemed to expand rights to setoff under applicable non-bankruptcy law.

5.4     De Minimis Distributions. Notwithstanding anything herein to the contrary, no Cash payment of less than $25.00 shall be made to the Holder of any Claim on account of its Allowed Claim; any such Holder who would otherwise be entitled to a lesser Distribution shall not receive any Distribution.

# ARTICLE 6.
## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS

6.1     Procedures Regarding Claims. Except as otherwise expressly provided herein, the Trustee, Committee, or the Liquidating Trustee, as applicable, shall have the exclusive authority to file, settle, compromise, withdraw, or litigate to judgment any objections to Claims that are not General Unsecured Claims or M&M Lien Claims. From and after the Effective Date, the Liquidating Trustee shall have the authority to file or object to any General Unsecured Claims or M&M Lien Claims.

The Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether such Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection. In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Liquidating Trust may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. Each of the aforementioned objection, estimation and resolution procedures are cumulative and are not exclusive of one another.

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan.

Unless otherwise set forth herein or ordered by the Bankruptcy Court, any objections to Claims shall be filed on or before the date that is the later of: (a) 120 days after the Effective Date, and (b) the last day of such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to certain Claims. The Bankruptcy Court may extend any deadline to object to Claims upon a motion filed by the Liquidating Trustee.

# ARTICLE 7.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1     Assumed Contracts and Leases. Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in

connection with this Plan, as of the Effective Date, the Debtor shall be deemed to have rejected each executory contract and unexpired lease to which it is a party, unless such contract or lease (a) was previously assumed or rejected by the Debtor, (b) is the subject of a motion to reject filed on or before the Confirmation Date or (c) is set forth in a schedule, as an executory contract or unexpired lease to be rejected, filed as part of the Plan Supplements. The Confirmation Order shall constitute an order of the Bankruptcy Court under section 365 of the Bankruptcy Code approving the contract and lease assumptions or rejections described above, as of the Effective Date. Each executory contract and unexpired lease assumed pursuant to this Article 7 or by any order of the Bankruptcy Court shall revest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

Unless otherwise provided in the Plan, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases, related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

7.2     Payments Related to Assumption of Contracts and Leases. The Debtor shall file a list of proposed amounts of any Cure for each executory contract and unexpired lease to be assumed with the Plan Supplements and any party to such executory contract or unexpired lease shall have until one business day before the Confirmation Hearing to file an objection to the proposed Cure with the Bankruptcy Court. Any monetary amounts by which any executory contract and unexpired lease to be assumed under the Plan is in default shall be satisfied, under section 365(b)(l) of the Bankruptcy Code, by the applicable Debtor on or before the Effective Date; provided, however, if there is a dispute regarding (i) the nature or amount of any Cure, (ii) the ability of a Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order of the Bankruptcy Court resolving the dispute and approving the assumption or assumption and assignment, as the case may be; provided, however, that the Debtor or the Reorganized Debtor may settle any dispute regarding the amount of any Cure without any further notice to or action, order or approval of the Bankruptcy Court. Failure to timely raise an objection to assumption of any executory contract or unexpired lease, including the proposed amount of any Cure, pursuant to the terms of this Plan shall bar any subsequent objection to assumption of any executory contract or unexpired lease, including any objection to the proposed amount of any Cure.

7.3     Rejected Contracts and Leases. Except for those executory contracts and unexpired leases set forth on a schedule to the Plan Supplements, none of the executory contracts and unexpired leases to which the Debtor is a party shall be rejected under the Plan; provided, however, that the Debtor reserves the right, at any time prior to the Confirmation Date, to seek to reject any executory contract or unexpired lease to which the Debtor is a party.

7.4    Claims Based upon Rejection of Executory Contracts or Unexpired Leases. All Claims arising out of the rejection of executory contracts and unexpired leases must be filed with the Bankruptcy Court and served upon the Debtor and its counsel within thirty (30) days after the earlier of (a) the date of entry of an order of the Bankruptcy Court approving such rejection or (b) the Confirmation Date. Any such Claims not filed within such times shall be forever barred from assertion against the Debtor, its Estate, and property.

## ARTICLE 8.
## ACCEPTANCE OR REJECTION OF THIS PLAN

8.1    Classes Entitled to Vote. Each Holder of an Allowed Claim in Class 4, 5 and 6 is entitled to vote to accept or reject this Plan. Holders of Claims or Equity Interests in Unimpaired Classes shall not be entitled to vote because they are conclusively deemed, by operation of section 1126(f) of the Bankruptcy Code, to have accepted this Plan.

8.2    Acceptance by Impaired Classes. An Impaired Class of Claims shall have accepted this Plan if the Holders of at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in the Class actually voting have voted to accept this Plan, and an Impaired Class of Equity Interests shall have accepted this Plan if the Holders of at least two-thirds (2/3) in amount of the Allowed Equity Interests in the Class actually voting have voted to accept this Plan, in each case not counting the vote of any Holder designated under section 1126(e) of the Bankruptcy Code.

8.3    Elimination of Classes. Any Class that does not contain any Allowed Claims or Equity Interests or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed not included in this Plan for purposes of (i) voting to accept or reject this Plan and (ii) determining whether such Class has accepted or rejected this Plan under section 1129(a)(8) of the Bankruptcy Code.

8.4    Nonconsensual Confirmation. The Bankruptcy Court may confirm this Plan over the dissent of or rejection by any Impaired Class if all of the requirements for consensual confirmation under section 1129(a), other than section 1129(a)(8)(A), of the Bankruptcy Code and for nonconsensual confirmation under section 1129(b) of the Bankruptcy Code have been satisfied.

If a Class does not accept the Plan, the Plan Proponents shall request that the Bankruptcy Court confirm or "cram down" the Plan on a non-consensual basis with respect to each non-accepting Class pursuant to section 1129(b) of the Bankruptcy Code.

## ARTICLE 9.
## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS

9.1    Conditions to Confirmation. It shall be a condition to Confirmation of the Plan that the following conditions shall have been satisfied or waived.

a.    The Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably acceptable to the Debtor and the Committee.

b.      The Plan must be in form and substance reasonably acceptable to the Debtor and the Committee.

c.      All Plan Supplements must be in a form and substance reasonably acceptable to the Committee.

9.2      <u>Conditions to Effective Date.</u> The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied:

a.      The Confirmation Order shall have been entered by the Bankruptcy Court in form and substance reasonably acceptable to the Debtor and the Committee.

b.      All other actions, documents, and agreements necessary to implement this Plan shall have been effected or executed, including the final forms of the documents contained in the Plan Supplements, shall have been effected or executed and delivered, as the case may be, to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws.

c.      No Stay of the Confirmation Order shall be in effect.

d.      Each of the conditions precedent to Confirmation are repeated here and shall continue to be satisfied and in full and effect as of the Effective Date.

## ARTICLE 10.
## MODIFICATIONS AND AMENDMENTS; WITHDRAWAL

The Plan Proponents may amend or modify this Plan at any time prior to the Confirmation Date. The Plan Proponents reserve the right to include any amended exhibits in the Plan Supplements, whereupon each such amended exhibit shall be deemed substituted for the original of such exhibit.

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the Solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

## ARTICLE 11.
## RETENTION OF JURISDICTION

Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding this Plan's Confirmation and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of or related to the Chapter 11 Case and this Plan, to the fullest extent permitted by law, including jurisdiction to:

a.      hear and determine any and all objections to the allowance of Claims or Equity Interests;

b.      hear and determine any and all motions to estimate Claims at any time, regardless of whether the Claim to be estimated is the subject of a pending objection, a pending appeal, or otherwise;

c.      hear and determine any and all motions to subordinate Claims at any time and on any basis permitted by applicable law;

d.      hear and determine all Administrative Expenses and Professional Fee Claims;

e.      hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable, including, if necessary, the nature or amount of any Claim or required Cure or the liquidation of any Claims arising therefrom;

f.      hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Case;

g.      enter such orders as may be necessary or appropriate in aid of the implementation hereof and to execute, implement, or consummate the provisions hereof and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

h.      hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan and all contracts, instruments, and other agreements executed in connection with this Plan;

i.      hear and determine any request to modify this Plan or to cure any defect or omission or reconcile any inconsistency herein or any order of the Bankruptcy Court;

j.      issue and enforce injunctions or other orders, or take any other action that may be necessary or appropriate to restrain any interference with or compel action for the implementation, or enforcement hereof or the Confirmation Order;

k.      enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

l.      hear and determine any matters arising in connection with or relating hereto, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

m.      enforce all orders, judgments, injunctions, releases, exculpation, indemnification and rulings entered in connection with the Chapter 11 Case;

n.      recover all assets of the Debtor and property of the Debtor's Estate, wherever located;

o. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

p. hear and determine all disputes involving the existence, nature, or scope of the Debtor's discharge;

q. hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

r. enter a final decree closing the Chapter 11 Case.

## ARTICLE 12.
## MISCELLANEOUS PROVISIONS

12.1 <u>Bar Date for Certain Claims</u>.

a. *Administrative Expenses.* The Confirmation Order shall establish an Administrative Expenses Bar Date for the filing of all Administrative Expenses (other than Administrative Expenses paid in the ordinary course of business pursuant to Article 2 hereof and Claims for United States Trustee fees), which date shall be thirty (30) days after the Effective Date. Holders of such asserted Administrative Expenses must file an application for payment of Administrative Expense with the Bankruptcy Court on or before such Administrative Expenses Bar Date or forever be barred from doing so. The notice of Confirmation shall set forth the Administrative Expenses Bar Date, and the Debtor, the Trustee or Liquidating Trustee, as the case may be, and any other party in interest, shall have twenty-one (21) days following the Administrative Expenses Bar Date to review and object to such Administrative Expenses. All such objections shall be litigated to Final Order; provided, however, that the Trustee or Liquidating Trustee may compromise and settle, withdraw or resolve by any other method, without requirement of Bankruptcy Court approval, any objections to Administrative Expenses.

12.2 <u>Professional Fee Claims</u>. All final applications for Professional Fee Claims must be filed and served on the Trustee and Liquidating Trustee and its counsel no later than thirty (30) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Objections to any such applications must be filed and served on the requesting Professional or other Entity, no later than twenty-one (21) days (or such other period as may be allowed by order of the Bankruptcy Court or as otherwise agreed to between the parties) after the date on which the applicable application for compensation or reimbursement was served.

12.3 <u>Payment of Statutory Fees</u>. All fees payable under section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date. All such fees that arise after the Effective Date but before the closing of the Chapter 11 Case shall be paid by the Liquidating Trustee when they come due.

12.4 <u>Nonseverability of Plan Provisions</u>. If, prior to Confirmation, any term or provision hereof is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor with the consent of the Committee, shall have the

power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions hereof shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision hereof, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12.5 <u>Successors and Assigns</u>. The rights, benefits and obligations of all Entities named or referred to herein shall be binding on, and shall inure to the benefit of, their respective heirs, executors, administrators, personal representatives, successors or assigns.

12.6 <u>Discharge of Claims</u>. Except as otherwise provided herein or in the Confirmation Order, all consideration distributed under this Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims (other than those Claims that are Unimpaired under this Plan) of any nature whatsoever against the Debtor or any of its assets or properties, and regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims. Upon the Effective Date, each of the Debtor and the Reorganized Debtor shall be deemed discharged and released under section 1141(d)(1) of the Bankruptcy Code from any and all Claims (other than those Claims that are not Impaired under this Plan), including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.  Nothing in the Plan or this Order discharges, releases, precludes, or enjoins any liability to a governmental unit on the part of any person or entity other than the Debtors.

12.7 <u>Injunction</u>. ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASE PURSUANT TO SECTIONS 105 AND 362 OF THE BANKRUPTCY CODE OR OTHERWISE AND IN EFFECT ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE. EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES THAT HAVE HELD, HOLD OR MAY HOLD CLAIMS OR CAUSES OF ACTION AGAINST THE DEBTOR ARE, AS OF THE EFFECTIVE DATE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST THE LIQUIDATING TRUST OR THE TRUST ASSETS (EXCEPT AS EXPRESSLY PROVIDED IN THE PLAN): (A) COMMENCING, CONDUCTING OR CONTINUING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY SUIT, ACTION OR OTHER PROCEEDING RELATING TO SUCH CLAIM OR CAUSE OF ACTION; (B) ENFORCING, LEVYING, ATTACHING, COLLECTING OR OTHERWISE RECOVERING IN ANY MANNER OR BY ANY MEANS, WHETHER DIRECTLY OR INDIRECTLY, ANY JUDGMENT, AWARD, DECREE OR ORDER RELATING TO SUCH CLAIM OR CAUSE OF ACTION; (C) CREATING, PERFECTING OR ENFORCING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY LIEN RELATING TO SUCH CLAIM OR CAUSE OF ACTION; (D) ASSERTING ANY SETOFF, RIGHT OF SUBROGATION OR RECOUPMENT OF ANY KIND, DIRECTLY OR INDIRECTLY, AGAINST ANY DEBT, LIABILITY OR OBLIGATION DUE TO THE DEBTOR RELATING TO SUCH CLAIM OR CAUSE OF

ACTION; AND (E) PROCEEDING IN ANY MANNER IN ANY PLACE WHATSOEVER THAT DOES NOT CONFORM TO OR COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN OR THE CONFIRMATION ORDER. M&M LIEN CLAIMANTS AND THE LIQUIDATING TRUST AND ANY ALLOWED CLAIMS NOT PAYABLE OUT OF LIQUIDATING TRUST ASSETS ARE ENJOINED POST-PLAN EFFECTIVE DATE FROM THE COMMENCEMENT, CONTINUANCE, PROSECUTION, MAINTENANCE, OR PARTICIPATION IN ANY LAWSUIT, CLAIMS, DEMAND OR PROCEEDING IN ANY JURISDICTION, AND ANY OTHER ATTEMPTS AT COLLECTION, ENFORCEMENT OR ANY ACTION OF ANY KIND AGAINST ANY INTEREST OF DEBTOR.

12.8     Exculpation and Limitation of Liability. The Exculpated Parties shall not have or incur any liability to any Holder of a Claim or an Equity Interest, or any other party-in-interest, or any of their respective agents, employees, equity interest holders, partners, members, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the negotiation, Solicitation, the Plan and Disclosure Statement, the administration of the Chapter 11 Case, the Solicitation of acceptances hereof, the pursuit of Confirmation hereof, the implementation hereof, or the administration hereof or the property to be distributed hereunder, except for their willful misconduct, intentional fraud or criminal conduct, and in all respects they shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities.

12.9     Binding Effect. Upon the occurrence of the Effective Date, this Plan shall be binding upon and inure to the benefit of the Debtor, all present and former Holders of Claims against and Equity Interests in the Debtor, their respective successors and assigns, including the Reorganized Debtor, all other parties-in-interest in the Chapter 11 Case (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.

12.10     Revocation, Withdrawal, or Non-Consummation. The Plan Proponents reserve the right to jointly revoke or withdraw this Plan at any time prior to the Confirmation Date and to file other plans of reorganization. If the Plan Proponents revoke or withdraw this Plan, or if Confirmation or the Effective Date hereof does not occur, then (a) this Plan shall be null and void in all respects, (b) any settlement or compromise embodied herein (including the fixing or limiting to an amount any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void, and (c) nothing contained herein, and no acts taken in preparation for the Effective Date, shall (x) constitute or be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Entity, (y) prejudice in any manner the rights of the Debtor or any Entity in any further proceedings involving the Debtor, or (z) constitute an admission of any sort by the Debtor or any other Entity.

12.11     Committee. The Committee shall dissolve as of the Effective Date and the members of the Committee shall be released and discharged from all authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11

Case. For the avoidance of doubt, nothing in this Section 12.11 or anywhere else in this Plan is intended to affect in any manner the Committee's Professionals from applying to the Bankruptcy Court for the Allowance of Professional Fee Claims incurred through the Effective Date (but not thereafter).

12.12   Plan Supplements. All exhibits and documents included in the Plan Supplements are incorporated into and are a part of the Plan as if set forth in full in the Plan. All documents required to be filed with the Plan Supplements shall be filed with the Bankruptcy Court at least seven (7) days prior to the date of the commencement of the Confirmation Hearing. Thereafter, any Person may examine the Plan Supplements in the office of the Clerk of the Bankruptcy Court during normal court hours. Copies of the Plan Supplements may also be obtained without charge by contacting Mark Taylor at Waller Dortch & Davis, LLP at the address listed below.

12.13   Miscellaneous. Closing the Estate - The Reorganized Debtor or Trustee may petition the court to close the Estate upon substantial consummation, however, in no event shall Reorganized Debtor or Trustee seek to close the Estate or seek to obtain a final decree prior to 180 days following the Effective Date.

12.14   Notices. Any notice, request, or demand required or permitted to be made or provided to or upon a Debtor, the Committee, or the Liquidating Trustee hereunder shall be in writing (including by facsimile transmission), and deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

if to the Debtor, to:

Morris D. Weiss, Trustee
100 Congress Avenue, 18th Floor
Austin, Texas 78701
Fax: (512) 685-6417

if to the Liquidating Trustee, to:

Morris D. Weiss
100 Congress Avenue, 18th Floor
Austin, Texas 78701
Fax: (512) 685-6417

with a required copy to:

Eric J. Taube
Mark C. Taylor
Waller Lansden Dortch & Davis, LLP
100 Congress Avenue, 18th Floor
Austin, Texas 78701
Fax: (512) 685-6417

12.15 <u>Governing Law</u>. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of (a) the State of Texas shall govern the construction and implementation hereof and any agreements, documents, and instruments executed in connection with this Plan and (b) the laws of the state of incorporation or organization of the Debtor shall govern corporate or other governance matters with respect to such Debtor, in either case without giving effect to the principles of conflicts of law thereof.

12.16 <u>Section 1125(e) of the Bankruptcy Code</u>. As of the Confirmation Date, the Debtor shall be deemed to have solicited acceptances hereof in good faith and in compliance with the Bankruptcy Code. As of the Confirmation Date, the Debtor, the Committee, and each of their respective affiliates, agents, directors, managing partners, managers, officers, employees, attorneys, and other professionals shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

12.17 <u>Entire Agreement</u>. Except as otherwise indicated, the Plan and the Plan Supplements supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### *REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*

DATED: November 26, 2018

Respectfully submitted,

By:  /s/ Morris D. Weiss
    Morris D. Weiss
    In his capacity as Chapter 11 Trustee


-and-

By:  /s/ Mark C. Taylor
    Eric J. Taube
    State Bar No. 19679350
    Mark C. Taylor
    State Bar No. 19713225
    WALLER LANSDEN DORTCH & DAVIS, LLP
    100 CONGRESS AVENUE, 18TH FLOOR
    AUSTIN, TX 78701
    Telephone: (512) 685.6400
    Facsimile: (512) 685.6417


ATTORNEYS FOR CHAPTER 11 TRUSTEE

-and-


By:  /s/ Kenneth Green
    Kenneth Green
    State Bar No. 24036677
    Blake Hamm
    State Bar No. 24069869
    Carolyn Carollo
    State Bar No. 24083437
    SNOW SPENCE GREEN LLP
    2929 Allen Parkway, Suite 2800
    Houston, TX 77019
    Telephone: (713) 335-4800
    kgreen@snowspencelaw.com
    blakehamm@snowspencelaw.com
    carolyncarollo@snowspencelaw.com

    ATTORNEYS FOR OFFICIAL COMMITTEE OF
    UNSECURED CREDITORS

SIGNATURE PAGE FOR PLAN